## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| **IN RE:** ) | **CHAPTER 7** |
| ) | |
| ) | **CASE NO.  09-35324** |
| **SONYA PORRETTO,** ) | |
| ) | |
| **DEBTOR.** ) | |
| ) | |

| | |
|---|---|
| **SONYA PORRETTO,** ) | |
| ) | |
| **PLAINTIFF,** ) | |
| **vs.** ) | **ADVERSARY CASE NO. _____** |
| ) | |
| **THE GALVESTON PARK BOARD OF TRUSTEES, CITY OF GALVESTON, TEXAS GENERAL LAND OFFICE AND GEORGE B. BUSH, LAND COMMISSIONER OF THE TEXAS GENERAL LAND OFFICE,** ) ) ) ) ) ) | |
| ) | |
| **DEFENDANTS.** ) | |

## ORIGINAL COMPLAINT AND APPLICATION FOR WRIT OF MANDAMUS

### I.    NATURE OF THE ACTION

This Complaint is to: 1) stop the Galveston Park Board of Trustees ("Park Board"), City of Galveston ("City"), and Texas General Land Office ("GLO") from continuing to interfere with Ms. Porretto's right to use, enjoy and alienate the Porretto Beach Property and stop the retaliatory actions by the City and Park Board; and, 2) compensate Ms. Porretto for the damages the Defendants have caused to the Porretto Beach Property.

### II.    JURISDICTION AND VENUE

1.    This Court has jurisdiction over this complaint pursuant to 28 U.S.C. § 1334(b) as it arises from or relates to the main bankruptcy case.

2.      This is a core proceeding pursuant to 28 U.S.C. § 157(b).

3.      Pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure and Rule

7008-1 of the Bankruptcy Local Rules for the Southern District of Texas, Ms. Porretto consents to

the entry of final orders or judgment by this Court in connection with this adversary proceeding if

it is determined that, absent consent of the parties, the Court cannot enter final orders or judgments

consistent with Article III of the United States Constitution.

4.      Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

5.      The legislature has waived sovereign immunity for Plaintiff's claims under Article

I §17 of the Texas Constitution.

### III.      PARTIES

6.      Plaintiff is the Debtor in this case, Sonya Porretto who is the owner of the Porretto
Beach Property.

7.      Defendant THE CITY OF GALVESTON PARK BOARD OF TRUSTEES is a
government entity that may be served with process through its Executive Director, Kelly De
Schaun, at 601 Tremont, Galveston, TX, 77550 or wherever said officer may be found.

8.      Defendant THE CITY OF GALVESTON, TEXAS is a government entity that may
be served with process through its Mayor Craig Brown, Clerk, City Secretary or Treasurer at 823
Rosenberg Suite 201 Galveston, TX 77550, or wherever said officers may be found.

9.      Defendant GEORGE P. BUSH IS THE COMMISSIONER OF THE TEXAS
GENERAL LAND OFFICE and is a natural person who may be served with process at his place
of employment at 1700 N. Congress Avenue, Suite 935 Austin, TX 78701, or wherever else he
may be found.

10.     Defendant TEXAS GENERAL LAND OFFICE ("GLO") is an agency of the state
of Texas and can be served by serving its Commissioner, George P. Bush at 1700 N. Congress
Avenue, Suite 935 Austin, TX 78701

### IV.      BRIEF OVERVIEW OF THE CASE

11.     Ms. Porretto spent decades defending against the Defendants' wrongful control and

ownership claims of Porretto Beach. Ms. Porretto was successful in prior litigation with the

Defendants, which resulted in the Texas Supreme Court ruling in Ms. Porretto's favor and a final

judgment on remand was entered and not appealed.  In the pursuit of preserving her family's legacy, Ms. Porretto sacrificed everything and was forced to file bankruptcy to fight off the land grab by the State.[1]

12.     Now, over 12 years after filing bankruptcy and after the Bankruptcy Court approved the abandonment of the Porretto Beach Property by the Chapter 7 Trustee, Ms. Porretto is hit with continued interference by the Defendants disrupting her use, enjoyment, and alienation of the Porretto Beach Property.[2]  However, now, there is no question that the damages the Defendants have caused to the Porretto Beach Property are ripe.

**Stewart Beach Drainage Project Floods Porretto Beach**

13.     The Porretto Beach parking lot for 6th to 10th Street has flooded six times since the Park Board began the May 2021 Stewart Beach Drainage Project. The last time it flooded was the same day as this Complaint, June 25, 2021.[3]  Adding insult to injury, on the morning of June 25, 2021, the City began installing "No Parking after 12pm Saturday" signs along Seawall directly in front of Porretto Beach knowing Porretto Beach's parking lot was flooded. At nearly the same time City crews were posting the "No Parking" signs, a door tag with a 24 hour disconnect notice was hand delivered to the home of Ms. Porretto's 84-year-old mother.  Below is a picture of one of the "No Parking" signs:

---

[1] On information and belief, other property owners subjected to similar land grabs benefitted from Ms. Porretto's sacrifice and were able to quietly reclaim their properties without the need to pursue litigation or being blacklisted like Ms. Porretto.

[2] The Chapter 7 Trustee also was met with continued acts of resistance from the Defendants, in particular the Park Board, who attempted to assert control over the property in violation of the automatic stay. *See e.g.*, **Exhibit 3** *en globo* (communications between Trustee and Park Board counsel).

[3] On June 24, 2021, Mr. Alex Nelson, Ms. Porretto's son, spoke about the flooding issue at the during public comment at the Galveston City Council Meeting. He specifically raised concerns about retaliation against his mother and asked, "What is or will be done in the near term to stop the flooding of nearby property [from Stewart Beach]?"



14.     Porretto Beach has offered parking on site for many years. The parking fee is $10 with "in and out" parking privileges (when the parking lot is not flooded) and free parking for Galveston residents. The Park Board charges $15 for one-time entry.

15.     The Park Board manages the public beaches in Galveston. The Stewart Beach Drainage Project was apparently required to bring the Park Board into compliance and ensure it could qualify for Federal and State beach renourishment and grant funds. On information and belief, the flooding on Stewart Beach was due to the Park Board's years of excavating sand from Stewart Beach under the guise of maintenance.  Further, on information and belief, after the City was advised of potential financial improprieties by the Park Board, the City Manager had City Staff conduct an audit of the Park Board and was aware of the improprieties. Reportedly, an audit was prepared and the City Manager reviewed it but it was subsequently buried from the sunlight.

16.     Ms. Porretto and other residents objected to the Stewart Beach Drainage Project. The City of Galveston approved the Park Board's request for a permit to allow the beachfront construction of the Stewart Beach Drainage Project.[4]

17.     The Stewart Beach Drainage Project redirected the flooding from Stewart Beach to Porretto Beach.  Since the construction of the Stewart Beach Drainage Project, the water from Stewart Beach floods the Porretto Beach parking area interfering with the operation of the beach. It appears as if the project was designed to flood Porretto Beach or the flooding is the result of gross negligence in the design and/or construction of the Stewart Beach Drainage Project.

18.     The flooding has caused Porretto Beach to lose substantial revenue and caused it to incur costs to mitigate damages just months after opening for the first time in many years.  The damages include labor costs, opportunity costs, equipment rental costs to pump the water to the Gulf, and repair costs. In addition, the flooding has and will further impact the topography of Porretto Beach if not remedied.

19.     Ms. Porretto is also limited in the ways she can mitigate the flooding damage from Stewart Beach. While Porretto Beach has sand in other parts of the beach which could be moved to mitigate the flooding in the Porretto Beach parking lot area, a permit would be required to relocate the sand from one party of the property.  The requirement of a permit is problematic because the Defendants adopted false reports with manufactured data. Over the years, they have asserted in various documents that Porretto Beach and other coastal properties were eroding when they were actually accreting.  The false reports and data are then relied upon in the permitting process. This creates a catch-22 for Ms. Porretto. The permit process allows the Defendants to

---

[4] Galveston Mayor Craig Brown is a former member of the Galveston Park Board of Trustees and, on information and belief, is aware of the Park Board's history of improperly removing sand from the beachfront of public and private property.

5

essentially control and indirectly possess the property through the systemically flawed data caused by the Park Board's actions to excavate the shoreline.

20.    If Ms. Porretto applies for a permit knowing that the Defendants used false data and records, she becomes complicit in the scheme to mislead others that certain Galveston beach property is naturally eroding when, in fact, there is natural accretion. In fact, several records used by the Defendants over the years allege Porretto Beach is eroding and refers to all properties from 10th to 61st Street. The false statements that Porretto Beach was eroding are an improper continued taking of the property rights related to Porretto Beach without consent of the property owner.

**History of Removing Sand from Beachfront**

21.    The Park Board apparently removes sand to decrease beachfront elevations.[5] Then, the decreased elevations are measured to support a finding that there is erosion. Once the measurements show erosion, the Park Board qualifies for millions and millions of Federal and State tax dollars for beach renourishment and grant funds -- year after year, decade after decade.

22.    Through the Bankruptcy, Ms. Porretto was able to get the Park Board to stop using their excavators and front-end loaders on the Porretto Beach property. After that occurred, Porretto Beach had substantial accretion of sand.

---

[5] The Park Board's scraping of the sand at the waterline has significant ramifications for all coastal property.  Coastal Area management is subject to 31 Tex. Admin Code Sec. 15.3(s)(4)(D)(i) which requires the use of the University of Texas at Austin, Bureau of Economic Geology ("UTBEG") Shoreline Movement and Beach-Foredune Elevations and Volume, i.e., UTBEG Shoreline Study. The UTBEG Shoreline Study relies on taking a Lidar Test to measure elevation. The Lidar Test is taken at a specific location and is used to determine accretion and erosion rates. On information and belief, the LIDAR tests for the UTBEG analysis were taken at the areas of the shoreline were the Park Board excavated the shoreline creating artificially lower elevation captured in the Lidar Test. On information and belief, the Park Board, City and GLO were aware of the Park Board's excavations and the inherent inaccuracies with the Lidar Test which would show arbitrarily low elevations due to the excavation even if a property was accreting.  The UTBEG Shoreline Study is the basis for various State and Federal actions and funding for coastal property, including but not limited to permitting and use of the property.

23.     The long-term effect of the Park Board's sand removal from Porretto Beach has not been remedied. The removal of the sand reduces the growth of the dry beach, which reduces the property value. Further, sand can be sold and monetized if a private owner has too much sand. Third, the damage caused by removing sand creates the need for projects like the Stewart Beach Drainage Project to mitigate the damage caused over time by improperly removing sand.  The Park Board alleges it was only maintaining the beaches and any sand that was removed with seaweed was minimal. However, there are numerous videos and pictures showing transport of front loaders/excavators full of sand.

24.     The allegations that the Park Board was removing sand are serious[6]. The mismanagement of Galveston beaches impacts all residents, drainage calculations and development in Galveston, not just Porretto Beach. If private property like Porretto Beach shows significant accretion it makes it less plausible that the adjacent Park Board-managed public beaches are naturally eroding.

25.     Ms. Porretto's goal is to have her property reflected correctly in the coastal management documents maintained and used by all Defendants showing it is accreting and not eroding; recognize her property rights to the submerged lands given her deed includes submerged lands and mineral rights under the surface; stop the flooding; enforce the settlement agreement with the Park Board where the Park Board agreed to provide lifeguards and pick up litter on the beachfront; and, to be compensated for the continuing damage the Defendants are causing to Porretto Beach.

---

[6] Ms. Porretto is not the only one who has raised concerns. The Chapter 7 Trustee raised similar concerns to the Park Board. *See,* **Id.**

26.     While the Park Board is in breach of the settlement it entered into with Ms. Porretto in this case[7]  and the Park Board's improper actions continued even when the property was controlled by the Chapter 7 Trustee, Ms. Porretto believes it would behoove all parties to consider a global mediation to try to resolve this saga once and for all without another decade of more litigation.[8]

## V.     ADDITIONAL FACTUAL BACKGROUND

**Where is Porretto Beach?**

27.     Porretto Beach operates along the Galveston East Seawall from 6th-10th, 11th-12th and 26th-27th Streets.  The beach at 6th – 10th Streets has been referred to as Porretto Beach Classic and the beach at 26th to 27th Street has been called Porretto Beach West. Porretto Beach Classic is adjacent to the public beach Stewart Beach and Porretto Beach West is near Pleasure Pier. The Porretto Beach property was appraised in 2008 and valued at close to $10 million.

28.     Porretto Beach, which runs along Galveston's coastline, is one of the rare sections of the Texas coastline that is privately owned. It has been owned by the Porretto family since the 1950s.

29.     Ms. Porretto fought against the General Land Office's claim to ownership of the property. The case ultimately went to the Supreme Court. *See,* Porretto v. Tex. Gen. Land Office, 448 S.W.3d 393 (Tex. 2014).  However, at the time, the Court found that Ms. Porretto's Takings Claims were not ripe.

30.     Below is graphic showing the Porretto Beach locations marked with the red triangles:

---

[7] *See,* Doc. No. 195.
[8] In 2017, the City Council provided more authority to the Park Board to make expenditures than the Charter allowed by the City and increased the amounts where a vote would be required to approve an expenditure.



31. These pictures below show **Porretto Beach Classic** from 6th to 10th Streets –





32. Below are pictures showing **Porretto Beach West:**





**Abandonment of Porretto Beach by Chapter 7 Trustee**

33.     The Chapter 7 Trustee's abandonment of the Porretto Beach property was approved by the Bankruptcy Court on June 25, 2020, and reverted control of Porretto Beach to Ms. Porretto. *See,* Doc. No. 748.

34.     From that point forward, Ms. Porretto worked tirelessly to restore Porretto Beach to a semblance of its former glory targeting Spring Break 2021 for a big reopening. While Ms. Porretto was able to have limited operations in 2020 at Porretto Beach West, the section of Porretto Beach adjacent to Stewart Beach, a public beach, opened for the first time since the abandonment in March 2021 (hereinafter, "Porretto Beach Classic").

35.     The Abandonment Order provides for exclusive jurisdiction in the Bankruptcy Court:

6.    The Court shall retain exclusive jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Order or the Trustee's Abandonment of the Abandoned Property, and to adjudicate, if necessary, any and all disputes concerning or in any way relating to the Abandonment, ~~including without limitation any such claims~~

Doc. No. 748, p. 7.

36.    Upon abandonment, the ownership and control of the Porretto Beach property reverted to Ms. Porretto.  Ms. Porreto is the owner of the Porretto Beach Property and has standing to raise these claims.[9]

**Porretto Beach Resumes Operations**

37.    When Ms. Porretto regained control of Porretto Beach in June 2020, it had not been operated for some time and was in the middle of a global pandemic. She worked quickly to try to clean up the beachfront of Porretto Beach West to be able to continue operations and generate revenue.

38.    Concerned that there could be other land grab efforts because she was told that there has long-standing plan by local players to try to take control of Porretto Beach, she quickly set an appointment with the County Tax Assessor's office to discuss past-due taxes which accrued during the 11 years of bankruptcy.

39.    Ms. Porretto was concerned that certain objectors to the abandonment may have acquiesced because the property could be purchased cheaper at a tax sale.  A glib comment by the City Attorney in a recent internal email obtained through a public information act request seems to support Ms. Porretto's concern was justified.

---

[9] To the extent any claim is deemed not to be abandoned by virtue of abandonment of the real property, Ms. Porretto requests that the Chapter 7 Trustee substitute in for such claims and/or for the Court to provide Ms. Porretto authority to pursue the claims for the Estate.

40.     On January 25, 2021, Ms. Porretto recorded a Notice of Termination of Private Easement by Operation of Law Porretto Beach.  The Notice ratified that the Beach Restoration Easement granted to the City of Galveston in 1993 had terminated by operation of law.

41.     Ms. Porretto successfully opened Porretto Beach Classic for Spring Break 2021 in the last week of March.

42.     Shortly thereafter, a resident sent a complaint to the Mayor Craig Brown about food trucks setting up on Porretto Beach and other property in the City. The Mayor Craig Brown then personally followed up on the complaint several times.

43.     Around this time, Ms. Porretto learned of the Stewart Beach Drainage Project from other residents who have property adjacent to Stewart Beach. They reached out to Ms. Porretto because they were having similar problems with the Park Board and City that they read about in the papers related to Porretto Beach.

44.      On March 31, 2021, Ms. Porretto sent a lengthy letter detailing her concerns with the Stewart Beach Drainage Project and treatment of landowners to a Councilmember.

45.     By April 2, 2021, the Mayor reported to City Staff that Porretto Beach appears to be operating. The Deputy Marshal was then instructed to "Be sure and check this multiple times a day for [food truck] activity."  No such directive was given for any other property that had food trucks.

**Ms. Porretto's Cease and Desist Letter and City Attorney's Response**

46.      On April 16, 2021, Ms. Porretto had the City and Park Board personally served with a Demand to Cease, Desist and Objection ("Cease and Desist Letter"). The Cease and Desist Letter included an objection to the Stewart Beach Drainage Project and the 2021 Seawall Beach Renourishment Project. The allegations set forth in the Cease and Desist Letter are incorporated herein by reference. *See,* **Exhibit 1,** Cease and Desist Letter.

47.     The City Attorney responded to Ms. Porretto's Cease and Desist Letter with numerous non-sequiturs, gas lighting, and patronizing misrepresentations like when he questioned Ms. Porretto's objection to the Stewart Beach Drainage Project stating "Quite to the contrary, Stewart Beach is approximately ½ mile to the east of your property. Can you please state with clarity your objection to a project that will take place nearly ½ mile away from your property?" The City Attorney's lack of knowledge of the Porretto Beach's location and the fact that it is adjacent to Stewart Beach is disconcerting at best.

**Park Board Resumes Harassment -- Litter Letter**

48.     On April 21, 2021, Mr. Nelson was sent a letter from the Park Board's counsel alleging that someone purportedly with Porretto Beach put numerous bags of trash near trash cans managed by the Park Board is littering and may give rise to legal action against "Porretto".  *See,* **Exhibit 2** ("Litter Letter").

49.     The Litter Letter demonstrates the petty level of harassment the Park Board is willing to engage in. The Litter Letter is non-sensical and inappropriate on several levels.  First, it fails to acknowledge the Park Board is responsible for the trash pick-up on Porretto Beach under a Court-approved settlement signed by the very same attorney who sent the Litter Letter. *See,* Doc. No. 195.

50.     The key terms of the settlement are as follows:

**ARTICLE 3.**

**BEACH PATROL**

3.1     The Park Board agrees to perform lifeguarding services through the Galveston Island Beach Patrol on PBDRA in the same manner as it performs lifeguarding services through the Galveston Island Beach Patrol for the other beaches on which it performs such services. In that regards, the Galveston Island Beach Patrol will maintain one guard tower at the 10th street pier during peak season.  In addition, depending on the need and time of the year, the Galveston Island Beach Patrol will maintain an additional guard tower.

**ARTICLE 4.**

**TRASH PICKUP**

4.1     The Park Board agrees to perform trash pickup on Porretto Beach in the same manner as it performs trash pick up on Stewart Beach, including daily pick up during the summer season.  The Park Board will provide sixteen (16) trash cans positioned at the front of the crossties/bollards and continue the use of hand pickers from the shoreline to the crossties/bollards using the same scheduling as used at Stewart Beach.

**ARTICLE 5.**

*Id.* (emphasis added).

51.     Second, the Litter Letter was sent to Mr. Nelson not Ms. Porretto, the owner of the property. As such, it appears the letter is a personal threat that individuals helping Ms. Porretto with operations could get dragged into legal actions.  Third, the Litter Letter alleges "Like any other private entity or person, Porretto is responsible for disposing of its own trash." This statement is simply not true. Trash collection is a core service offered by most municipalities in the Greater Houston area.  Galveston has a Public Works Department - Sanitation Division and people pay for trash service via their water bill. Galveston residents do not have to contract with a private trash company or buy stickers per bag for the trash to be picked up.

52.     Another core service provided by municipalities is police and fire services.  Ms. Porretto does not get fair and equal protection for Porretto Beach. The City police do not act when reports were made about the Park Board, including but not limited to reporting theft of sand.

53.     Finally, the letter escalates quickly from nonsensical to surreal stating:

This behavior is unacceptable, and you are—hereby—given notice that if Porretto does not imme-
diately cease littering and/or dumping its trash onto public property, the Park Board will be forced
to act, including notifying the police and/or the City of Galveston's Code Enforcement Division,
seeking injunctive relief, and pursuing other remedies that might be available to it.

54.     The Park Board failed to honor the settlement agreement it entered into with Ms.
Porretto to pick-up the trash. Then, the Park Board uses its failure to pick-up the trash as a
sledgehammer when someone else dares to pick it up, bag it, and put the bags near the Park Board's
trash receptacles.

### Stewart Beach Drainage Project Floods Porretto Beach

55.     On April 22, 2021, the Galveston City Council held a workshop which dealt
extensively with the Stewart Beach development. There was also an evening Council meeting on
that date. Ms. Porretto, Mr. Nelson and Mr. Martin, among others, raised concerns with Stewart
Beach Drainage Project during the public comment at the Council meeting.

56.     All of the Defendants play a role in approving the Stewart Beach Drainage Project.
The Park Board had to get the GLO to review the project and the City to approve a permit for the
beach construction project.  The City is not supposed to approve a permit without the GLO review.

57.     The Stewart Beach Drainage Project is commenced by the Park Board in May 2021.
Shortly thereafter, Porretto Beach Classic's parking lot begins to flood from runoff coming from
Stewart Beach.

58.     The design of the project includes a catchment which is supposed to catch overflow
but instead during heavy rain the catchment remains full and cannot drain because the elevation of
Porretto Beach is has a higher elevation than Stewart Beach since it has been naturally accreting.
The water then flows to Porretto Beach's parking lot and floods it.



59.     Here is a picture of the June 25, 2021 flooding of the Porretto Beach property from Stewart Beach runoff:



60.     Before the Stewart Beach Drainage Project, the water remained on Stewart Beach in a channel as shown in the picture below:



## VI.    CAUSES OF ACTION

61.    Plaintiff alleges the following causes of action together and in the alternative.

**Count I: Taking of a Flowage Easement Without Just Compensation in Violation of the Fifth Amendment of the United States Constitution**

62.    Plaintiff re-alleges and incorporates by reference the preceding paragraphs.

63.    Plaintiff alleges that the Defendants' taking of a flowage easement for occurred from no later than May 18, 2021 until such date that the Park Board remediates the problem and prevents Porretto from being able to fully use, enjoy, and occupy her land and property.

64.    The Defendants' actions in connection with Stewart Beach Drainage Project violated Plaintiff's protectable property rights. Specifically, Plaintiff owns real property impaired by the Defendants' taking of flowage easement.

65.    The damage is substantial.

66.    The Defendants' actions were a cause in fact and/or proximate cause of the taking. The storage and invasion of waters from Stewart Beach on Porretto Beach was both the intended and the direct, natural and probable result of the Stewart Beach Drainage Project.

67.    The Defendants have not paid just compensation to Ms. Porretto for the public use of her property.

**Count II: The Taking of Other Property Interests Without Just Compensation in Violation of the Fifth Amendment**

68.     Plaintiff re-alleges and incorporates by reference the preceding paragraphs.

69.     As both an intended and a direct, natural, and probable consequence of the Stewart Beach Drainage Project, including the Defendants' use of these projects, Plaintiff's property was subjected to actual flooding on at least six occasions so far and foreseeably in the future whenever there are heavy rains.

70.     The Defendant's actions ran counter to Plaintiff's reasonable investment-backed expectations in the safety and security of her operating beachfront commercial property.

71.     The Defendants have also surreptitiously and continously taken sand from Porretto Beach without compensation and by taking the sand the Defendants also took away Porretto's right to have a proper elevation data record for the property showing the accretion.

72.     The Defendants have also taken away Porretto's property rights

73.     The damage to Plaintiff's protected property interests is severe. Plaintiff cannot use, enjoy, or occupy the Porretto Beach property during high season where the City and local media are reporting high tourism numbers. The Defendants' actions were the cause-in-fact and proximate cause of the taking. The storage and invasion of stormwaters onto Plaintiff's real property was both the intentional and the direct, natural, and probable result of the Defendants' activity.

74.     As a result of the foregoing, and in addition to, or in the alternative to, the other causes of action asserted herein, Plaintiff has been deprived of the full use, occupancy, and enjoyment of her property (including the land, immovable improvements, and personal property), resulting in a taking of their property for a public use, without payment of just compensation.

**Count III: Inverse Condemnation**

75.     Plaintiff re-alleges and incorporates by reference the preceding paragraphs.

76.    By surreptitiously entering the land owned by the Plaintiff, the Defendants failed to compensate the Plaintiff for using her land.  The Defendants intentionally have taken the land owned by the Plaintiff without due process and just compensation. The Defendants' wrongful actions constitute inverse condemnation at Texas common law

**Count IV: Breach of Settlement Agreement**

77.    Plaintiff re-alleges and incorporates by reference the preceding paragraphs.

78.    The Park Board has breached its settlement agreement with Ms. Porretto and should be liable for the cost of the trash pick-up on the Porretto Beach property from June 25, 2021 until present. And, be required to resume collection of the trash pursuant to the terms of the settlement agreement.

79.    The Park Board should also be required to provide a lifeguard on Porretto Beach as required under the settlement agreement.

80.    The Park Board's failure to comply with the terms of the settlement constitute a breach of contract at Texas common law.

**Count V: Tortious Interference, Harassment and Retaliation**

81.    Plaintiff re-alleges and incorporates by reference the preceding paragraphs.

82.    The Park Board and City have interfered with Ms. Porretto's business relationships retaliated against her and harassed her.

83.    These are tort claims for which she should be entitled to fair and just damages.

# PRAYER

Plaintiff prays that the Court:

A. Enter judgment in Plaintiff's favor against the Defendants finding that Plaintiff is entitled to recover just compensation for the takings alleged above and such other appropriate relief as the Court deems just and proper in an amount to be determined by the trier of fact.

B. Award Plaintiffs her reasonable and necessary attorney's fees, litigation expenses, and court costs, including appraisal, expert witness, and engineering fees, pursuant to 42 U.S.C. § 4654(c), plus appropriate interest, compounded), legal interest pursuant to 28 U.S.C. § 1961, 28 U.S.C. § 1920;

C. Enter a Judgment in favor of the Plaintiff on all other Counts and award of atorneys fees, interest and post-judgment interest; and,

D. Award Plaintiff all other general, legal, and equitable relief which this Court is empowered to provide, and to which Plaintiff is entitle

Dated: June 25, 2021.

Respectfully submitted,

*/s/ Deirdre Carey Brown*
Deirdre Carey Brown, pllc
State Bar No. 24049116
FORSHEY & PROSTOK LLP
1990 Post Oak Blvd, Suite 2400
Houston, TX 77056
Telephone: (832) 536-6910
Facsimile:  (832) 310-1172
dbrown@forsheyprostock.com

**ATTORNEY FOR SONYA PORRETTO**