IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| SONYA PORRETTO, | § | |
| | § | |
| PLAINTIFF, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:21-cv-00359 |
| | § | |
| THE GALVESTON PARK BOARD | § | |
| OF TRUSTEES, et al., | § | |
| | § | |
| DEFENDANTS. | § | |

---

**TEXAS GENERAL LAND OFFICE AND GEORGE P. BUSH'S MOTION TO
DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT PURSUANT TO
FED. R. CIV. P. 12(b)(1) AND 12(b)(6)**

---

# TABLE OF CONTENTS

I.    BACKGROUND ................................................................................2

     A.    Factual Background...............................................................2

     B.    Procedural Background ........................................................3

II.    ARGUMENT AND AUTHORITIES ...............................................4

     A.    Plaintiff's claims against GLO should be dismissed under Rule 12(b)(1).................................................................4

         1.    The Court has no bankruptcy jurisdiction over Porretto's claims...........................................................5

         2.    Federal question jurisdiction does not exist because Porretto's claims against GLO are barred by state sovereign immunity. .............................................8

             i.    State sovereign immunity has not been waived...........9

             ii.    No *Ex parte Young* exception applies. ...........10

         3.    Porretto's claim for injunctive relief (Count XI) is barred.................................................................12

         4.    The Court has no jurisdiction pursuant to other laws Porretto cites. .......................................................13

             i.    NEPA provides no basis for jurisdiction. .....................13

             ii.    Porretto's Declaratory Judgment Act "claim" (Count XIII) is barred by res judicata and the Eleventh Amendment......................................14

             iii.    Other miscellaneous laws provide no source of jurisdiction.....................................................15

         5.    Porretto lacks standing to bring her claims against GLO. .................................................................15

             i.    There is no causal connection between Porretto's alleged injuries and GLO's conduct. ..........................16

ii. Porretto has not demonstrated that she has suffered an injury in fact to support Counts II, IV, and VI ......................................................................18

B. Porretto's claims against GLO should be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. .....................................................................19

1. Porretto does not allege any viable physical takings claims. ....................................................................20

i. Porretto has not alleged a viable taking of a flowage easement (Count I). ........................................20

ii. Porretto has not alleged a viable taking through removal of sand and interference with accretion (Counts II and IV) ..............................................22

iii. Porretto has not alleged property deprivation sufficient to give rise to a state takings or inverse condemnation claims (Counts III and V). ..................26

2. Porretto has not pled a viable due process claim (Count VI). .............................................................................27

i. Porretto does not allege a procedural due process violation. ................................................27

ii. Porretto does not allege a substantive due process violation. ................................................28

3. Porretto has not pled a viable claim under the Texas Water Code (Count IX). .........................................29

4. Porretto has not pled a viable claim under the Texas Tort Claims Act (Count XIV). ....................................29

III. CONCLUSION AND PRAYER ......................................30

CERTIFICATE OF SERVICE .........................................................32

Defendants Texas General Land Office and its Commissioner George P. Bush (collectively, "GLO") move to dismiss Plaintiff Sonya Porretto's Third Amended Complaint seeking damages and declaratory and injunctive relief against GLO and the Park Board of Trustees of Galveston and City of Galveston ("Park Board") for various alleged violations under the Fifth and Fourteenth Amendments to the U.S. Constitution; the Texas Constitution; the Texas Water Code; and the Texas Tort Claims Act. Porretto's claims against GLO should be dismissed for lack of subject-matter jurisdiction and failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

After years of litigation were resolved in 2014 by the Texas Supreme Court, Porretto continues to assert a litany of claims against both the GLO and Park Board regarding her beachfront property in Galveston. Some of Porretto's claims echo allegations from the past, while others purport to assert new wrongs and injuries. Regardless, Porretto's claims against GLO are barred in this forum. There is no bankruptcy jurisdiction for her claims, which she first raised in an adversary proceeding to a pending bankruptcy, because the bankruptcy trustee has abandoned the beachfront property, by extension precluding bankruptcy jurisdiction for all claims alleged in the Third Amended Complaint. Additionally, the outcome of this case cannot affect the bankruptcy estate, which is already administered. The Court is also precluded from hearing Porretto's claims against GLO under federal question jurisdiction, as they are barred by state sovereign immunity, and Porretto lacks standing to sue the GLO absent causation or injury stemming from GLO's actions. In the same vein, the lack of any non-conclusory allegation of actions taken by the GLO merits dismissal of Porretto's complaint for failure to state a claim.

1

## I.   BACKGROUND

**A.   Factual Background**

Porretto owns and operates a business on beach-front property on Galveston Island ("Porretto Property"). To the east of the Porretto Property lies Stewart Beach, a public beach and park maintained by the City of Galveston. Porretto's Complaint is based on allegations about activities of the Park Board (not GLO), which fall into two broad categories:[1]

> (1) So-called "sand mining" activities (also called "sand scraping" or "excavation"), which Porretto alleges have prevented accretion (aka buildup) of Porretto Beach, caused erosion,[2] and caused inaccurate erosion data to be collected by a third party;[3] and

> (2) Flooding in May 2021, allegedly caused by the Park Board's drainage improvement project on the neighboring beach ("Stewart Beach Drainage Project").

According to Porretto, GLO's role in these activities is minimal.[4] At most, Porretto vaguely claims GLO was "aware" of the Park Board's supposed efforts to remove sand and make erosion data inaccurate,[5] and that GLO had Porretto Beach surveyed, but does not say when or how. Pl.'s Third Am. Compl. 29, 31.

---

[1] This Motion does not discuss a third category of actions presumably related to Porretto's tortious interference claim that concern interactions between Porretto and the Park Board that she characterizes as "harassment" or "retaliation." Pl.'s Third Am. Compl. 33-37.

[2] Pl.'s Third Am. Compl. 23-27.

[3] Pl.'s Third Am. Compl. 28 n.9 (discussing the collection of erosion data by the University of Texas at Austin Bureau of Economic Geology ("UTBEG")).

[4] Porretto alleges GLO partially funded a 2013 erosion response project based on the Park Board's false erosion data, but this is not apparently alleged in support of one of Porretto's claims. Pl.'s Third Am. Compl. 24.

[5] *Id.* at 29.

Porretto also seemingly protests an ongoing drainage and access project at Stewart Beach[6] (the "Access Project"). Pl.'s Third Am. Compl. 4, 12; *see also* Doc. No. 55, Pl.'s Mot. for TRO. Although it is not discussed in support of any of her claims, the Complaint anticipates the project will "further damage" the Porretto Property. Pl.'s Third Am. Compl. 4, 12.

## B.    Procedural Background

In July, 2009, Porretto filed a voluntary petition for chapter 11 bankruptcy, initiating a case styled *In re Sonya Porretto*, Case No. 09-35324 (the "Bankruptcy Case") in the Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court"). The Bankruptcy Court converted the Bankruptcy Case to chapter 7 and appointed a trustee (the "Bankruptcy Trustee"). During the Bankruptcy Case, ongoing litigation between Porretto and the Bankruptcy Trustee, and the GLO regarding the Porretto Property concluded after the Texas Supreme Court determined that Porretto owned the Porretto Property landward of the mean higher high tide line and rendered a take-nothing judgment on her takings claims. *See Porretto v. Tex. Gen. Land Off.*, 448 S.W.3d 393 (Tex. 2014). Final judgment was issued in April 2015. Attachment 1.

Eleven years after the initial bankruptcy petition was filed, on April 27, 2020, following a failed sale of the Porretto Property, the Bankruptcy Trustee filed a *Notice of Abandonment of Porretto Beach and All Other Beach Front Lots* (Bankruptcy Case Doc. No. 728), advising of the Bankruptcy Trustee's intent to abandon the Porretto Property pursuant to Bankruptcy Code

---

[6] The project, titled "Recovering Access and Restoring Resilience at Stewart Beach at Galveston Island," was the subject of Plaintiff's denied request for a temporary restraining order. *See* Doc Nos. 55, 58-61.

§ 554(a) and Federal Rules of Bankruptcy Procedure 6007. The Bankruptcy Court entered an order approving abandonment of the Property to Porretto. Bankruptcy Case Doc. No. 748.

Porretto then issued an adversary proceeding in the Bankruptcy Court by filing a complaint in cause No. 21-03458 (the "Adversary Proceeding") against the Park Board and GLO. Over the course of several months, from June 30, 2021, to November 2021, Porretto filed a first and second amended complaint and requested leave for a third amended complaint. Defendants moved to dismiss the first and second complaints. The Bankruptcy Court transferred the case to this Court on December 21, 2021. Adversary Proceeding Doc. No. 50.

Porretto moved for a temporary restraining order and order to set a preliminary injunction hearing on February 2, 2022. Doc. No. 55. This Court denied Porretto's motion on March 7, 2022. Doc. No. 61. On the same day, this Court also issued an order acknowledging Porretto's Third Amended Complaint as her live pleading. Doc. No. 62.

## II.    ARGUMENT AND AUTHORITIES

Porretto's fourteen "Counts" are summarized in the demonstrative chart in Attachment 2, along with a description of the grounds for dismissal. This Motion will not address the Counts explicitly alleged only against the Park Board.[7] All claims against the GLO should be dismissed for lack of jurisdiction and/or for failure to state a viable claim.

### A.    Plaintiff's claims against GLO should be dismissed under Rule 12(b)(1).

When the court lacks the statutory or constitutional power to adjudicate a case, the case is properly dismissed for lack of subject-matter jurisdiction. *Hooks v. Landmark Indus., Inc.*, 797

---

[7] These include Count VII (Breach of Settlement Agreement), Count VIII (Tortious Interference), and Count XII (Declaratory Judgment that Right-of-Ways Have Been Abandoned).

F.3d 309, 312 (5th Cir. 2015). Jurisdictional arguments should be addressed before any analysis of the merits. *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). Porretto cites a number of statutes and cases as sources of jurisdiction for her claims, but none of them are availing. Pl.'s Third Am. Compl. 8.

### 1.    The Court has no bankruptcy jurisdiction over Porretto's claims.

Contrary to Porretto's contention that jurisdiction exists under 28 U.S.C § 1334, Porretto lacks a basis for jurisdiction under either 28 U.S.C. § 1334(e) or § 1334(b).[8] Under section 1334(e), the district court in which a bankruptcy case is commenced or pending has exclusive *in rem* jurisdiction over (i) property of the bankruptcy estate, and (ii) property of the debtor as of the commencement of a bankruptcy case. *See* 28 U.S.C. § 1334(e); *In re Brown*, 521 B.R. 205, 216 (Bankr. S.D. Tex. 2014); *Landry v. Exxon Pipeline Co.*, 260 B.R. 769, 781 (Bankr. M.D. La. 2001). Section 1334(e) is read narrowly to apply only to actions that specifically target ownership of, or rights in and to, property of the estate. *See, e.g.*, *Landry*, 260 B.R. at 782; *Loudin v. J.P. Morgan Tr. Co., N.A.*, 481 B.R. 388, 394-95 (S.D.W.Va. 2012); *In re Noletto*, 244 B.R. 845, 854 (Bankr. S.D. Ala. 2000) (section 1334(e)'s limited reach "vests the 'home court' with the exclusive power to control and distribute property of the estate, without requiring it to determine the extent of the property of the estate.") (internal quotation omitted).

---

[8] While the Third Amended Complaint appears only to assert bankruptcy jurisdiction under 28 U.S.C. § 1334(b), *see* Third Am. Compl. 8 (asserting that the Complaint "arises from or relates to the main bankruptcy case."), in consideration of additional jurisdictional arguments made in Porretto's TRO Motion (Doc. No. 55), the GLO will also address 28 U.S.C. § 1334(e).

Subject-matter jurisdiction under section 1334(e) does not exist in this proceeding.[9] First, the Porretto Property and the attendant Third Amended Complaint's claims were abandoned and are no longer property of the bankruptcy estate. *See* Bankruptcy Case Doc. No. 748; Bankruptcy Case Doc. No. 819. Exclusive jurisdiction under 28 U.S.C. § 1334(e)(1) ends when property is abandoned from the bankruptcy estate.[10] *See In re Danley*, 552 B.R. 871, 883 (Bankr. M.D. Ala. 2016) ("[A] bankruptcy court's *in rem* jurisdiction over property only lasts so long as that property remains in the estate . . . ."); *see also In re Sindram*, No. 08-00559, 2010 WL 434341, at *2 (Bankr. D.D.C. Jan. 28, 2010) (once a case is fully administered as to property, the bankruptcy court loses jurisdiction under 28 U.S.C. § 1334(e)). The fact property was returned to Porretto does not change the analysis. *See* 28 U.S.C. § 1334(e) (providing exclusive jurisdiction over property of the debtor "as of the commencement of the case").

---

[9] The Bankruptcy Court recognized that it lacked exclusive jurisdiction over these issues at the hearing on the Bankruptcy Trustee's request to abandon the Porretto Property. The Bankruptcy Court explained:

> If I abandon the property today, it's simply that, abandonment, and the law of abandonment is what will control. Everyone else can go on to fight about this in **another jurisdiction in another court,** and the value is whatever the value is and whoever gets it will not be my concern nor [the Bankruptcy Trustee's] concern at this point.

Doc. No. 59-3, GLO's Resp. to Pl.'s TRO, *Motion to Abandon Hearing Transcript*, June 25, 2020, at 14:15-20 (emphasis added). Further belying Porretto's argument that the district court has exclusive jurisdiction is the fact that issues related to the status of the Porretto Property have been litigated in Texas state courts throughout the Bankruptcy Case. *Porretto v. Tex. Gen. Land Off.*, 448 S.W.3d 393 (Tex. 2014).

[10] The Fifth Circuit has explained that "upon abandonment . . . the trustee is . . . divested of control of the property because it is no longer part of the estate. [Furthermore, abandoned property] reverts to the debtor, and the debtor's rights to the property are treated as if no bankruptcy petition was filed." *Kane v. Nat'l Union Fire Ins. Co.*, 535 F.3d 380, 385 (5th Cir. 2008).

Second, where a proceeding, like this one, does not address *in rem* issues over estate property, the jurisdictional rules for "proceedings" under 28 U.S.C. § 1334(b) apply. *In re Danley*, 552 B.R. at 883-84 (when property is no longer part of the bankruptcy estate, jurisdiction is decided under 28 U.S.C. § 1334(b)); *In re Sindram*, 2010 WL 434341, at *2 (section 1334(e) does not confer exclusive jurisdiction over proceedings which *relate* to property; instead, section 1334(b) controls the issue of jurisdiction over such proceedings).

The Court also lacks subject-matter jurisdiction over this proceeding under 28 U.S.C. § 1334(b), which exists only if the outcome of litigation will affect the estate being administered in bankruptcy. *See, e.g.*, *In re Wood*, 825 F.2d 90, 93-94 (5th Cir. 1987); *In re Bass*, 171 F.3d 1016, 1022-23 (5th Cir. 1999) ("The proceeding must be capable of affecting the bankruptcy estate for it to be 'related to' the bankruptcy."). "[I]t is the relation of dispute to estate, and not of party to estate, that establishes jurisdiction." *In re Bass*, 171 F.3d at 1023.

Here, the outcome of this proceeding will have no conceivable effect on the Bankruptcy Case because the bankruptcy estate already has been fully administered. Any property not administered during the Bankruptcy Case is abandoned to Porretto. *See* Bankruptcy Case Doc. No. 797 ("All scheduled and known assets of the estate have been reduced to cash, released to the debtor as exempt property pursuant to 11 U.S.C. § 552, or have been or will be abandoned pursuant to 11 U.S.C. § 554."); Bankruptcy Case Doc. No. 819 ("[T]he property of the Estate not heretofore administered is deemed abandoned to the Debtor, Sonya Porretto . . . ."). Only Porretto could benefit from relief awarded. Distributions to be made to creditors in the Bankruptcy Case are determined and will not change based on the outcome of this proceeding. *See* Bankruptcy Case Doc. No. 819 ("[T]he Trustee may

proceed to make distributions as provided in the Amended Trustee's Final Report at ECF 797 . . . .").

The Court can summarily dismiss Porretto's allegation that this proceeding is "core" under 28 U.S.C. § 157. Core proceedings are those proceedings that "arise in a bankruptcy case or under Title 11." *Stern v. Marshall*, 564 U.S. 462, 476 (2011). "If the proceeding does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy[,] it is not a core proceeding . . . ." *In re Wood*, 825 F.2d at 97. Here, Porretto's claims are not based on rights created by bankruptcy law. Instead, her claims are based wholly on non-bankruptcy federal and state law that are independent of a bankruptcy filing. Accordingly, this is not a core proceeding under 28 U.S.C. § 157.

Thus, the Court lacks subject-matter jurisdiction under section 28 U.S.C. § 1334.[11]

### 2. Federal question jurisdiction does not exist because Porretto's claims against GLO are barred by state sovereign immunity.

The Court lacks subject-matter jurisdiction over Porretto's claims against GLO because they are barred by state sovereign immunity. Often called Eleventh Amendment immunity,[12] this doctrine "bars an individual from suing a state in federal court unless the state consents to suit or Congress has clearly and validly abrogated the state's sovereign immunity." *U.S. Oil*

---

[11] This Court should disregard Porretto's argument that violations of the automatic stay support bankruptcy jurisdiction. Porretto asserts no cause of action for violation of the automatic stay. Factual allegations unrelated to the relief requested in an adversary proceeding are insufficient to support "related to" jurisdiction. *See In re Wood*, 825 F.2d at 93 (explaining that to support "related to" jurisdiction the *outcome* of a proceeding must conceivably affect the bankruptcy estate).

[12] "While state sovereign immunity is sometimes described as 'Eleventh Amendment immunity,' 'the sovereign immunity of the States neither derives from, nor is limited by, the terms of the Eleventh Amendment.'" *U.S. Oil Recovery Site PRP Grp. v. R.R. Comm'n of Tex.*, 898 F.3d 497, 501-02 (5th Cir. 2018) (quoting *Alden v. Maine*, 527 U.S. 706, 713 (1999)).

*Recovery Site PRP Grp. v. R.R. Comm'n of Tex.*, 898 F.3d 497, 501 (5th Cir. 2018) (internal quotations omitted). State sovereign immunity extends to state agencies as "arms of the state." *Id.* at 502; *see also Welch v. Tex. Dep't of Highways & Pub. Transp.*, 483 U.S. 468 (1987). State sovereign immunity extends both to GLO and its Commissioner. *U.S. Oil Recovery Site PRP Grp.*, 898 F.3d at 501; *John G. & Marie Stella Kenedy Mem'l Found. v. Mauro*, 21 F.3d 667, 671-73 (5th Cir. 1994). Therefore, the GLO and the Commissioner are immune from Porretto's suit.

### i.    State sovereign immunity has not been waived.

Porretto incorrectly claims that the "State has waived sovereign immunity for Plaintiff's claims under Article I § 17 of the Texas Constitution," and that the case *Knick v. Township of Scott*, 139 S.Ct. 2162, 2167 (2019) confers new jurisdiction upon the Court to hear suits against states. Pl.'s Third Am. Compl. 8. The Fifth Circuit, however, has made clear in decisions issued after *Knick* that "even though [Article I § 17] waives immunity for state takings claims brought in state court, waiver of sovereign immunity in state court does not waive Eleventh Amendment immunity from suit in federal court." *Can. Hockey, L.L.C. v. Tex. A&M Univ. Athletic Dep't*, No. 20-20503, 2022 WL 445172, at *9 (5th Cir. Feb. 14, 2022). As the Fifth Circuit affirmed, the holding in *Knick* did not alter the Eleventh Amendment immunity landscape because that case involved a suit against a local government, which is never entitled to the immunity enjoyed by states. *Bay Point Props. Inc. v. Miss. Transp. Comm'n*, 937 F.3d 454, 456 (5th Cir. 2019). Instead, the Fifth Circuit has confirmed that even applying the holding in *Knick*, Eleventh Amendment immunity protects states from both state and federal takings suits in federal court. *Id.* at 457; *Can. Hockey, L.L.C.*, 2022 WL 44172 at *9.

### ii. No *Ex parte Young* exception applies.

Another well-known exception to Eleventh Amendment immunity exists for "suits for prospective relief against state officials acting in violation of federal law." *Tex. Democratic Party v. Abbott*, 961 F.3d 389, 400 (5th Cir. 2020) (quoting *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004)), describing the *Ex parte Young* exception, 209 U.S. 123, 166-68 (1908). But Porretto has not pled that *Ex parte Young* applies. And the exception is not applicable to claims requesting monetary damages, compelling the government to act, or alleging violations of state law.

*Counts I, II, IV, VI, and X all seek monetary remedies; therefore, Ex parte Young does not apply*. When the judgment sought against state officials would "expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting, or to compel it to act," the Eleventh Amendment still bars the suit. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-02 n.11 (1984) (citation omitted). Porretto directly seeks a monetary remedy (compensation) for her federal takings claims (Counts I, II, IV). The same goes for her due process claim (Count VI), which is merely a re-urging of her takings claims[13] because Porretto asks for compensation, not process, acknowledging no process under state or federal law that would satisfy her.[14] Pl.'s

---

[13] Pl.'s Third Am. Compl. 42-43 (echoing the substance of ount I (taking of a flowage easement due to nearby construction), count II (taking of sand affecting elevation and accretion records), count III ("taking" property via inverse condemnation by "surreptitiously entering" land), and count IV (taking due to nearby construction allegedly interfering with accretion levels)).

[14] Moreover, Porretto's Complaint is full of discussion of her many opportunities to be "heard in a meaningful manner." *See* Pl.'s Third Am. Compl. 2, 42 (Porretto indicates she objected to the construction project at Stewart Beach's parking area), 3 (Porretto "complained of Defendants' actions damaging the property during the Bankruptcy" and "raised concerns created [sic] false erosion ratings assisting the Defendants in obtaining . . . funding for beach projects"), 4 (Porretto "submitted an

Third Am. Compl. 42. Similarly, Porretto's demand for "accounting of all funds received for funding requests of any sort which reference any part of Porretto Beach in the application" so Porretto can "receive a pro rata share of the funding" (Count X) is ultimately a request for monetary damages. Pl.'s Third Am. Compl. 44. *Ex parte Young* does not apply to these claims.[15] *Pennhurst State Sch. & Hosp.*, 465 U.S. at 101-02, 101 n.11.

> <u>*Cedar Point Nursery does not save Porretto's takings claims*</u>. Porretto further points to *Cedar Point Nursery v. Hassid*, 141 S.Ct. 2063 (2021) as a source of jurisdiction. Pl.'s Third Am. Compl. 8. That case was a suit for declaratory and injunctive relief under 42 U.S.C. § 1983, which Porretto has not pled. *Cedar Point Nursery v. Shiroma*, 923 F.3d 524 (9th Cir. 2019), *rev'd and remanded sub nom. Cedar Point Nursery v. Hassid*, 141 S.Ct. 2063. But even assuming she had, *Cedar Point Nursery* involved a suit against officials seeking to enjoin future implementation of a regulation granting a continuous right of access to private property. *Id.* In other words, *Cedar Point Nursery* was a suit for prospective relief against state officials for allegations of ongoing violations of federal law—which *Ex parte Young* allows. By contrast, Porretto's claims are based on past events—*i.e.*, prior construction activities that she alleges caused flooding and prior removal of sand interfering with accretion levels. Porretto simply alleges a taking occurred in

---

objection under the NEPA rules"), 14 (Porretto served the City and Park Board with a Cease and Desist Letter including objections to various projects).

[15] Porretto alleges no claim supporting an accounting and reimbursement. Generally, this relief is only available where there is a contractual or fiduciary relationship between the plaintiff and the party from which the plaintiff seeks the accounting. *See, e.g.*, *Hunt Oil Co. v. Moore*, 656 S.W.2d 634, 642 (Tex. App.—Tyler 1983, writ ref'd n.r.e.) (post-lease termination mineral interest grantee was not entitled to accounting when there was no contractual or fiduciary relationship between parties).

the past (Counts I, II, IV), and she assumes future construction activity may also result in a taking. *See* Pl.'s Third Am. Compl. 12, 44-45.[16]

> *Ex parte Young does not apply to alleged violations of state law (Counts III, V, IX, or XIV).*
Porretto's state law claims (Counts III, V, IX, and XIV)[17] are not eligible for exception. *Ex parte Young* does not sanction suits targeted at state-law violations "since state law claims do not implicate federal rights or federal supremacy concerns." *McKinley v. Abbott*, 643 F.3d 403, 405-06 (5th Cir. 2011); *see also Pennhurst State Sch. & Hosp.*, 465 U.S. at 124-25.

### 3. Porretto's claim for injunctive relief (Count XI) is barred.

Porretto's demand to enjoin Defendants from "referring to Porretto Beach as if it is part of the public property," improving Stewart Beach, and providing "false erosion and accretion data" (Count XI)[18] is not a separate claim for prospective relief. Instead, it is a request for injunctive relief based on her claims for past takings, which are barred and not

---

[16] To the extent Porretto implies that the taking of a flowage easement in her count I is a continuing action ("Plaintiff alleges that the Defendants' taking of a flowage easement for flooding which occurred from May 13, 2021 until such date that the Park Board remediates the problem . . . ."), caselaw disagrees. Pl.'s Third Am. Compl. 38. Porretto has not pled that her property continuously floods, or even that it has ever flooded again since May 2021. Courts engage in fact-specific analysis to determine whether government-induced temporary flooding conditions can even amount to a physical taking, and if so, the duration of the flooding marks the duration of the taking. *See Cedar Point Nursery v. Hassid,* 141.S.Ct. 2063, 2078-79 (2021); *Ark. Game & Fish Comm'n v. U.S.,* 133 S.Ct. 511, 519, 522-23 (2012) (holding that government-induced flooding of limited duration may be compensable, depending on the duration and nature of the flooding).

[17] In addition to being barred by Eleventh Amendment immunity, Porretto's Texas Water Code and Torts Claims Act claims (Counts IX, XIV) would also be barred in state court. Porretto points to no provision in the Texas Water Code that waives sovereign immunity for GLO or the Park Board. *See City of Midlothian v. Black*, 271 S.W.3d 791, 798 (Tex. App.—Waco 2008, no pet.) (holding there was no waiver of immunity allowing suit of a city under Texas Water Code § 11.086). For her Torts Act claim, Porretto points to a waiver of immunity specifically for municipalities. Tex. Civ. Prac. & Rem. Code § 101.0215(a). She points to no such waiver for the State and has not shown that the statute's only other waiver of immunity applies. *See id.* § 101.201.

[18] Pl.'s Third Am. Compl. 44-45.

subject to exception. Furthermore, equitable relief is unavailable for takings claims where, as identified by the Court in response to Porretto's request for temporary injunction, compensation remedies are available. Doc. No. 62; *see also Knick*, 139 S. Ct. at 2168; *see also Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1016 (1984).

### 4.    The Court has no jurisdiction pursuant to other laws Porretto cites.

Porretto's passing references to various other claims and federal statutes also do not establish jurisdiction. Pl.'s Third Am. Compl. 8.

### i.    NEPA provides no basis for jurisdiction.

To the extent Porretto relies on the National Environmental Policy Act ("NEPA")[19] as a jurisdictional hook, this effort fails. Pl.'s Third Am. Compl. 8. NEPA confers no private right of action and can only be challenged through the federal Administrative Procedure Act, which Porretto has not pled and which applies only to federal agencies in any case. *See Coliseum Square Ass'n v. Jackson*, 465 F.3d 215, 249 (5th Cir. 2006) (the APA "does not provide plaintiffs a route for reviewing the actions of nonfederal defendants such as [the Housing Authority of New Orleans]"). Further, NEPA only applies to nonfederal actors when their actions have "effects that may be major and which are potentially subject to Federal control and responsibility." *Save Barton Creek Ass'n v. Fed. Highway Admin. (FHWA)*, 950 F.2d 1129, 1134 (5th Cir. 1992) (citations omitted). A federal agency's "actual power to control the nonfederal activity" is a distinguishing feature of federal control. *Id.* at 1134-35. Porretto has alleged no viable federal nexus with any of the activities that are the subject of her Complaint.

---

[19] 42 U.S.C. § 4321 *et seq.*

### ii. Porretto's Declaratory Judgment Act "claim" (Count XIII) is barred by res judicata and the Eleventh Amendment.

Porretto's request for declaratory judgment recognizing property rights including mineral interests and submerged lands (Count XIII), apparently under the Declaratory Judgment Act, is also jurisdictionally barred. The Declaratory Judgment Act does not create an independent basis for federal jurisdiction[20]; relief is only available "[i]n a case of actual controversy within [the Court's] jurisdiction." 28 U.S.C. § 2201(a). No such controversy exists here because the very question Porretto poses—"what property the Porrettos' own"—was addressed by the Texas Supreme Court in 2014. *Porretto*, 448 S.W.3d at 399-400. After determining that "the Porrettos own the property . . . that lies landward of the [mean higher high tide line]," a boundary determination was rendered in the final judgment. *Id.*; *see also* Att. 1. Because Porretto's and the State's property interests have already been litigated, Porretto's requested relief is barred by res judicata.[21]

Moreover, even if Porretto had alleged new disputes about her property boundary, she still cannot invoke federal court jurisdiction to quiet title to sovereign lands or interests, because the Eleventh Amendment bars such claims. *Mauro*, 21 F.3d at 671; *Ysleta Del Sur Pueblo v. Laney*, 199 F.3d 281, 289 (5th Cir. 2000). Suits to determine boundaries and title to

---

[20] *See Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 571 U.S. 191, 197 (2014); *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671-72 (1950*); In re B-727 Aircraft Serial No. 21010*, 272 F.3d 264, 270 (5th Cir. 2001).

[21] *Taylor v. Maple Ave. Econ. Dev. Corp.*, No. Civ.A. 302CV0791D, 2002 WL 1758189, at *4 (N.D. Tex. July 26, 2002) (res judicata bars "litigation of any issue connected with a cause of action or defense that, in the use of diligence, a party might have tried or actually did try").

submerged property are, by their nature, suits to quiet title against the state,[22] *Mauro*, 21 F.3d at 671, and federal courts cannot adjudicate a state's interest in property without the state's consent. *See id.*; *see also Ysleta Del Sur Pueblo*, 199 F.3d at 289. That consent is absent here. *Mauro*, 21 F.3d at 671-73 (declaratory and injunctive relief claims against Land Commissioner for title to submerged land were barred by Eleventh Amendment).

### iii.   Other miscellaneous laws provide no source of jurisdiction.

Porretto cites to, but does not actually assert, claims under the federal Clean Water Act, 33 U.S.C. §§ 1251-1389, and the Coastal Barrier Resources Act, 16 U.S.C. §§ 3501-3510. She has not met her burden to show how the Court has jurisdiction over any of the claims she has pled pursuant to these statutes.

### 5.   Porretto lacks standing to bring her claims against GLO.

Every party before a federal court must establish standing to pursue its claims. *Cibolo Waste, Inc. v. City of San Antonio*, 718 F.3d 469, 473 (5th Cir. 2013). To establish standing, Porretto must demonstrate that she has suffered an "injury in fact" traceable to the actions of the Defendants, which requires showing an invasion of a legally protected interest that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). There must also be "a causal connection between the injury and the conduct complained of"—the injury cannot be the result of the independent action of some third party not before the Court. *Id.* Finally, it must be "likely" as opposed to merely "speculative" that the injury will be redressed by a favorable decision. *Id.*

---

[22] Porretto's request to enjoin the GLO Defendants from referring to certain property as if it were public property, or alternatively, require them to "depict that the disputed land is privately owned," is similarly barred. *See Mauro*, 21 F.3d at 671.

at 561. The plaintiff must "clearly allege facts demonstrating each element." *Spokeo, Inc. v. Robins*, 587 U.S. 330, 338 (2016) (internal quotation omitted). Porretto has not met her burden.

> ### i.   There is no causal connection between Porretto's alleged injuries and GLO's conduct.

Porretto has not alleged a single action by the GLO to support her claims. Count I asserts that the Park Board's activities—not GLO's—at Stewart Beach caused the taking of a flowage easement on the Porretto Property, and even those allegations do not support a causal connection between construction and flooding. Pl.'s Third Am. Compl. 38-39.

As to Count I, Porretto alleges that construction at Stewart Beach, which is at a lower elevation than Porretto Beach, caused stormwater to flow against gravity to her property. *Id.* at 15-16. She references photographs supposedly showing water "flowing" toward Porretto Beach. *Id.* at 19. Yet, her only allegation about the nature of the construction is in a caption that purports to depict "removing Seaweed and sand stockpiles from beachfront and placed [sic] on Stewart Beach parking lot to fill in flooding." *Id.* at 17. Porretto concludes, "Water trenches/ditches and swales created slanting the [sic] elevation of Stewart towards the west to Porretto Beach." *Id.* Absent is any allegation that the GLO removed seaweed or stockpiled sand or that removing seaweed and stockpiles created the "[w]ater trenches/ditches and swales" that caused slanting elevation.

Porretto also does not explain how removing material from one portion of a low-elevation beach and filling in a hole in another portion of the same low-elevation beach would cause stormwater to flow uphill toward a beach of higher elevation. In any case, Porretto does not allege what role, if any, GLO played in the Stewart Beach Drainage Project. Without a

causal connection between an act of GLO and the alleged taking in her count I, Porretto lacks standing to bring her claim. *Lujan*, 504 U.S. at 560.

Counts II and IV are takings claims about the alleged removal of sand from Porretto Beach by the Park Board and supposed interference with accretion and erosion caused by this alleged removal. Pl.'s Third Am. Compl. 39-41. Again, Porretto does not allege GLO took part in these activities. That Porretto alleges GLO "knew" of the Park Board's removal of sand from Porretto Beach is immaterial. *Id.* at 31. She must be able to trace her alleged injury to an *action* of the GLO to have standing. *Lujan*, 504 U.S. at 560.

Porretto's state takings claim (Count V), based on the same allegations as her federal takings claims, does not involve actions by GLO. Similarly, Porretto's inverse condemnation claim (Count III) is really another takings claim, supported only by a conclusory statement that Defendants "surreptitiously ente[red]" her property. Pl.'s Third Am. Compl. 40. Porretto pleads no facts about GLO's entry. Her only related factual allegation is her claim that "[o]n information and belief," GLO "improperly had Porretto Beach surveyed." *Id.* at 29. But surveys can be performed outside a property boundary, and Porretto does not include any factual allegations about when or how the survey was performed. Porretto's due process claim (Count VI), which alleges the same conduct as her takings claims, suffers from the same lack of traceability to GLO.

For Count IX (Texas Water Code), Porretto alleges no facts in support of her conclusion that "Defendants acted in concert to approve modifications to public property to divert and impound the natural flow of surface waters from and around the ground . . . to Porretto Beach." *Id.* at 44. Thus, she has not traced her injury to an act of the GLO. Likewise,

Porretto's Tort Claims Act claim (Count XIV) is based on a theory of negligence, seemingly borrowing factual allegations from her other claims. *Id.* at 46. She fails to trace her denial of use and enjoyment, diminution in market value, and damage to land to any GLO act.

Because she has no standing to sue GLO under any of her claims, Porretto also cannot succeed in her requests for relief for these claims (Count XI [injunctive relief]; Count X [accounting and reimbursement]; or Count XIII [declaratory judgment]).

> ### ii.   Porretto has not demonstrated that she has suffered an injury in fact to support Counts II, IV, and VI.

Count II is based on allegations that the Park Board mined sand from the "wet beach." Pl.'s Third Am. Compl. 24-25. But Porretto has no protected interest in sand on submerged land. Under the Texas Supreme Court's opinion, Porretto only owns the Porretto Property landward of the mean higher high tide line—the boundary between private property and state-owned submerged land. *See Porretto*, 448 S.W.3d at 400. The Park Board's alleged sand removal is therefore not an invasion of a legally protected interest establishing an "injury in fact" conferring standing. *Lujan*, 504 U.S. at 560. And sand mining activities alleged against the Park Board do not plead an injury attributable to the GLO.

As to Count IV, Porretto does not have an interest in particular accretion and erosion levels and cites no authority saying otherwise. Her unsupported allegation that UTBEG "[o]n information and belief," took elevation measurements "at the areas of the shoreline where the Park Board excavated the shoreline creating artificially lower elevation,"[23] is also entirely conjectural and hypothetical. *Lujan*, 504 U.S. at 560. Confusingly, Porretto also throws into

---

[23] Pl.'s Third Am. Compl. 28 n.9.

doubt her own allegation that erosion data has even been effected, saying "*if* the erosion data is false or manufactured, it could be relied on by others." *Id.* at 25. Regardless, her allegations about accretion and erosion levels taken by a third-party do not establish an injury that can give her standing to sue the GLO.

Finally, Porretto's due process claim (Count VI) is based on the Park Board's alleged trespass and removal of sand and interference with accretion.[24] But because Porretto has no vested interest in either the sand under state-owned submerged land or in erosion data, Porretto has not suffered an injury that gives her standing to bring a due process claim.

**B.     Porretto's claims against GLO should be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.**

Porretto's claims against GLO, which include Counts I, II, III, IV, V, VI, IX, X, XI, XIII, and XIV, must be dismissed for lack of jurisdiction. But Porretto's claims have problems beyond their jurisdictional defects. She has also failed to plead any viable claims, despite having many opportunities to revise her complaint. *See, e.g.*, Doc. No. 62.

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* This standard asks for more than a "sheer possibility that a defendant

---

[24] Pl.'s Third Am. Compl. 42-43 ("Ms. Porretto does not have the opportunity to have her claims heard in a meaningful manner because the process provided under Texas and Federal law is not constitutionally adequate to deal with inverse condemnation claims, false erosion data, and Defendants' manipulation of the land changing the whole beach topography impacting other private property.").

has acted unlawfully." *Id.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it falls short of achieving the requisite facial plausibility. *Id.* Although assertions of fact are entitled to credit and an assumption of truth, conclusory statements and legal conclusions are not. *Id.* at 678-79. None of Porretto's claims are facially plausible.

### 1.   Porretto does not allege any viable physical takings claims.

Porretto makes many conclusory statements but does not allege factual content to support her claims. Thus, her allegations that the "Defendants" enacted a physical taking of her property by (1) conducting construction activities that caused her property to flood; (2) excavating and/or removing sand from the wet beach near her property; and (3) interfering with accretion and erosion levels through the sand mining activities, are not plausible.

### i.   Porretto has not alleged a viable taking of a flowage easement (Count I).

A government-induced temporary flooding may constitute a taking. Porretto has alleged a one-time flooding event for an unspecified number of days in May 2021. Pl.'s Third Am. Compl. 38-39. She does not allege any other flooding events have taken place. The Supreme Court has made clear that "[i]solated physical invasions, not undertaken pursuant to a granted right of access, are properly assessed as individual torts rather than appropriations of a property right." *Cedar Point Nursery*, 141 S. Ct. at 2078.

Additionally, Porretto has not alleged that GLO played any role in the flooding that occurred on her property in 2021. Her litany of "facts" regarding flooding allegedly caused by the Stewart Beach Drainage Project spans *thirteen* pages—yet she does not mention GLO once. Pl.'s Third Am. Compl. 14-27. For the same reasons that Porretto failed to show standing, she also has not stated a viable claim against GLO due to the lack of traceability between her injury

and an act of the GLO. *See infra* Section A.5.i. She further alleges no facts to support a causal connection between the Park Board's actions, as opposed to a rainfall event, and the alleged injury. *Id.* Without this, Porretto has not alleged a plausible temporary government-induced flooding that could give rise to a physical taking.

But even if she had shown flooding was induced by the Park Board, Porretto has not pled sufficient facts supporting any of the other factors that would help a court determine that the flooding qualified as a taking. *Ark. Game & Fish Comm'n*, 568 U.S. at 38-39. She includes conclusory language that the Park Board "deliberately" caused the flooding or knew it would occur.[25] Porretto's cease and desist letter and the City's purported response contain the only factual allegations underpinning her claim that the Park Board "knew" flooding would occur.[26] Pl.'s Third Am. Compl. Ex. 1. Far from establishing the Park Board's knowledge that flooding would occur in 2021 and intention to make it happen, Porretto's letter simply lodges complaints about hypothetical harms.[27] And neither the allegations nor the letter indicate that GLO knew of or intended any flooding.

---

[25] *See, e.g.*, Pl.'s Third Am. Compl. 2 ("deliberately flooding the Porretto Beach parking area in May 2021"), 13 ("deliberately flood . . . the parking area"), 36 ("The Park Board deliberately flooded the property with construction at Stewart Beach.").

[26] *See, e.g.*, Pl.'s Third Am. Compl. 22 ("All of which could have been prevented but City and Park Board ignored citizen pleas not to proceed because it would cause damage").

[27] Porretto also includes an unsupported statement that Park Board discussions at a public meeting "showed that they knew elevating Stewart Beach would require specific engineering to ensure that surface water did not flow to Porretto Beach." Pl.'s Third Am. Compl. 26. She does not include the date of this alleged public meeting or any other means of verifying this statement, but assuming these discussions took place, they tend to discredit her claim that the flooding was deliberate. If anything, they show the Park Board's concerted effort to avoid flooding.

Any alleged effects from the flooding are also facially unsupported. Porretto concludes that the flooding event caused damage to "market value, potential wetlands issues,[28] erosion, decreased accretion, and diminution in value,"[29] but includes no factual allegations to support these statements.[30] Her proclamation about market value is contradicted, since she claims Porretto Beach's value has increased. Pl.'s Third Am. Compl. 32 ("The Porretto Beach property was appraised in 2008 and valued at close to $10 million. It is worth far more today.")

>       ii.    **Porretto has not alleged a viable taking through removal of sand and interference with accretion (Counts II and IV).**

To state a claim for takings due to erosion or loss of accretion, Porretto must do more than simply recite that those forces exist. Otherwise, she is simply describing the "ordinary hazard of owning littoral property" recognized by the Texas Supreme Court. *Severance v. Patterson*, 370 S.W.3d 705, 723 (Tex. 2012) ("Property along the Gulf of Mexico is subjected to hurricanes and tropical storms, on top of the everyday natural forces of wind, rain, and tidal ebbs and flows that affect coastal properties and shift sand and the vegetation line.").

Counts II and IV are essentially the same claim—both allege that the Park Board's sand mining activities caused a physical taking by way of (1) creating false erosion data, (2) causing erosion, and (3) reducing natural beach accretion. Pl.'s Third Am. Compl. 39, 41. Specifically,

---

[28] Porretto discusses a wetlands determination under Count II, alleging takings caused by sand mining. Pl.'s Third Am. Compl. 6. Aside from this conclusory statement, she provides no factual allegations that the 2021 flooding event had any impact on wetlands.

[29] *Id.* at 39.

[30] Similarly, Porretto's claims that the flooding "caused Porretto Beach to lose substantial revenue and caused it to incur costs to mitigate damages just months after Ms. Porretto was able to reopen since the Trustee abandoned the property," and her claims that "damages include labor costs, opportunity costs, equipment rental costs to pump the water to the Gulf, and repair costs" are not supported by any facts. *Id.* at 26.

Porretto alleges that the Park Board conducted sand mining along the "wet beach" in 2012, 2013, and 2017. Pl.'s Third Am. Compl. 23-25. Because the "wet beach" is where measurements are taken for erosion studies, Porretto claims that the Park Board's sand mining activities "have caused false erosion data for years,"[31] the result of which is to deprive her of "a proper elevation data record for the property showing the accretion." *Id.* at 39. This elevation data, Porretto contends, "impacts the development opportunities and value of the property." *Id.* She also alleges that sand mining has caused erosion by preventing the "natural easterly littoral flow of sand" that "would have provided regular, natural replenishment of sand" to Porretto Beach. *Id.* at 41.

At the outset, Porretto fails to state a claim against GLO. She does not allege that GLO participated in any sand mining activities and explicitly acknowledges that she cannot make this allegation. *Id.* at 29 (admitting that discovery would be necessary to determine whether GLO "knew the measurements have been manufactured by scraping the land and acted in concert, was complicit and/or was kept in the dark.").[32]

Beyond this, Porretto has not stated that she has been deprived of a "proper elevation data record for the property showing the accretion and proper elevation for neighboring properties." *Id.* at 39. Leaving aside that she has no vested right in coastal elevation data, Porretto also does not allege that elevation levels were taken at her property in the area where the Park Board allegedly mined sand. *Id.* at 28 n.9. She blithely concludes, without support,

---

[31] *Id.* at 23-24, 28-29.

[32] Porretto also claims that GLO "knew of" or "should have known" about the sand removal since she raised these allegations in the Bankruptcy Court, but knowledge of allegations is not action or participation. *Id.* at 31.

that tests "were taken at the areas of the shoreline where the Park Board excavated the shoreline," without factual content that allows a reasonable inference of Defendants' liability. *Id.* This allegation is not even "consistent with" the Park Board's liability, let alone the GLO's, so it falls short of achieving facial plausibility to avoid dismissal. *Iqbal*, 556 U.S. at 678.

Porretto also has not stated a claim for takings via erosion or reduction in accretion. Throughout her Complaint, Porretto contradicts her grievance that the Park Board is causing erosion by insisting that her property is accreting, not eroding.[33] She pleads no factual allegation, beyond contradictory conclusory statements, that erosion caused a loss of her property or that this erosion was caused by sand mining. Further, if Porretto's conspiracy about the purpose of the sand mining is to be believed, the Park Board mines sand for the purposes of obtaining funding to conduct beach nourishment activities,[34] the whole purpose of which is to add sand to the coast and expand the beach. *See Porretto*, 448 S.W.3d at 400 (noting that purpose of renourishment is to push the mean higher high tide line farther seaward). Porretto's claim of loss from erosion is not plausible on its face.

In this way, her Complaint is distinguishable from the cases cited in support of her contention that erosion can give rise to a taking. Pl.'s Third Am. Compl. 41. In most of those cases, the plaintiffs pled or proved facts showing that erosion had occurred because of the government's action and had damaged their properties. *See United States v. Dickinson*, 331 U.S. 745, 750 (1947) (when a government took property by permanent flooding, the land that

---

[33] Pl.'s Third Am. Compl. 26 ("Over the years, they have asserted in various documents that Porretto Beach and other coastal properties were eroding when they were accreting"), 31 ("Ms. Porretto seeks to have Porretto Beach correctly reflected in the coastal management documents maintained and used by all Defendants showing it is accreting and not eroding.").

[34] Pl.'s Third Am. Compl. 27-28.

indisputably washed away with the new water line was also part of the taking); *Owen v. United States*, 851 F.2d 1404, 1406 (Fed. Cir. 1988) (a viable takings was pled where the government expanded a river and a downstream landowner's house collapsed into the waterway due to erosion because of the expansion); *Tri-State Materials Corp. v. United States*, 550 F.2d 1, 3-4 (1977) (plaintiff was due summary judgment where a government's dam project caused permanent flooding and an undisputed permanent rise in water level that created subterranean flooding impaired the ability to extract sand from a gravel mine).

There are no allegations of permanent flooding here, and Porretto has not stated a viable claim for temporary flooding that could support a takings claim from resulting erosion. Further, the *Owen* Court's discussion of erosion illuminates why Porretto cannot succeed in her takings claim. 851 F.2d at 1411. That court distinguished its conclusion that a viable takings claim had been pled from a situation where a government undertook construction to prevent further erosion along the Mississippi River, building revetments that a downstream landowner claimed resulted in more erosion to the property than it would have experienced without the government's action. *Id.* (citing *Bedford v. United States*, 192 U.S. 217 (1904)). Because the government in *Bedford* was acting to preserve the natural course of the river instead of altering the natural flow like the government in *Owen*, and because the *Bedford* landowner's claims of increased injury were conjectural and only incidental to the government's work, the pleadings did not survive dismissal. *Id.* Porretto's pleadings fall short of those in the *Bedford* case. She has not pled that she has lost land to erosion, and her allegations about the accretion Porretto Beach *would have* enjoyed are, like the claims in the *Bedford* case, purely conjectural. Counts II and IV must be dismissed.

### iii.     Porretto has not alleged property deprivation sufficient to give rise to a state takings or inverse condemnation claims (Counts III and V).

Porretto fails to state a claim either for inverse condemnation[35] or for takings under the Texas Constitution Art. 1 § 17. To invoke the trial court's jurisdiction against a governmental entity under the takings clause, a plaintiff must plead a facially valid takings claim. *Hearts Bluff Game Ranch, Inc. v. State*, 381 S.W.3d 468, 476 (Tex. 2012) ("In the absence of a properly pled takings claim, the state retains immunity."). To assert a valid takings claim under the Texas Constitution, plaintiffs must plead facts showing the government "intentionally took or damaged their property for public use" or "was substantially certain that would be the result." *Harris Cnty. Flood Control Dist. v. Kerr*, 499 S.W.3d 793, 799 (Tex. 2016).

Porretto supports her inverse condemnation claim by alleging Defendants have "surreptitiously enter[ed]" her land. Pl.'s Third Am. Compl. 40. Porretto supports this by claiming "[F]rom March 2015 to May 2015, the Park Board was occupying Porretto Beach without authority." *Id.* at 24. Presumably, Porretto's "sand mining" factual allegations are also supportive of her inverse condemnation claim. *See, e.g.*, *id.* at 23-25. She includes no allegations that GLO entered her property, beyond alleging the GLO and City had Porretto Beach surveyed, "potentially after this case was filed." *Id.* at 29. But as discussed, this conclusory allegation does not provide factual support that GLO entered—let alone took—her property.

---

[35] Inverse condemnation is "a cause of action against a governmental defendant to recover the value of property which has been taken in fact by the governmental defendant, even though no formal exercise of the power of eminent domain has been attempted by the taking agency." *Hearts Bluff Game Ranch*, 381 S.W.3d at 476 (quoting *United States v. Clark*, 445 U.S. 253, 257 (1980)). A property owner whose property is taken, damaged or destroyed for, or applied to public use without adequate compensation may bring an inverse condemnation action pursuant to article 1, section 17 of the Texas Constitution.

*Infra* Section A.5.i. Thus, Porretto has not stated a viable claim for inverse condemnation against GLO.

Porretto's state takings claims, like her federal takings claims, are based on allegations that the Stewart Beach Drainage Project and prior "sand mining" caused damage via flooding and false erosion data. *Id.* at 42. Again, none of these activities were conducted by GLO. Further, Porretto's pleadings lack facts showing the requisite intent on behalf of the GLO or Park Board to cause harm to Porretto Beach by conducting the Stewart Beach Drainage Project and beach nourishment activities. She provides nothing more than legal conclusions about intent; no factual allegations support her contentions.

Because Porretto has failed to state a facially valid claim for inverse condemnation and taking under Texas Constitution Art. 1, § 17, no court has jurisdiction over her state takings claims and they must be dismissed. *Hearts Bluff*, 381 S.W.3d at 476.

**2.     Porretto has not pled a viable due process claim (Count VI).**

**i.     Porretto does not allege a procedural due process violation.**

Porretto's due process claim[36] is a re-urging of her takings claims about false erosion data, sand mining, and flooding, so for the same reasons she has failed to plead viable takings claims, she has also failed to plead property deprivation that could give rise to a due process claim. But even if she had pled a property deprivation, she is not entitled to "pre-deprivation process before false data is collected, sand mining, or construction undertaken." Pl.'s Third Am. Compl. 43. The only process due to Porretto would be meaningful post-deprivation procedures to recover just compensation. *Williamson Cnty. Reg'l Planning Comm'n v. Hamilton*

---

[36] Pl.'s Third Am. Compl. 42.

*Bank of Johnson City*, 473 U.S. 172, 195 n.14 (1985), *overruled on other grounds by Knick*, 139 S. Ct. 2162 ("Unlike the Due Process Clause . . . the Just Compensation Clause has never been held to require pretaking process or compensation.").[37] No notice or hearing is required before the government takes private property for public use.[38]

### ii. Porretto does not allege a substantive due process violation.

Because no physical taking has occurred, Porretto has failed to state a viable claim for substantive due process, which is appropriate only when (1) the government has deprived the plaintiff of its property, and (2) the government act that caused the deprivation was arbitrary and has no rational relationship to a legitimate government interest. *Simi Inv. Co. v. Harris Cnty.*, 236 F.3d 240, 249 (5th Cir. 2020). "If the question is at least debatable, there is no substantive due process violation." *FM Props. Operating Co. v. City of Austin*, 93 F.3d 167, 175 (5th Cir. 1996). Both the Stewart Beach Drainage Project and beach nourishment along the coast are related to the legislatively recognized governmental interest in maintaining the coastal dune system and beaches. *See generally* the Dune Protection Act, Tex. Nat. Res. Code §§ 63.001-.1814. Porretto does not claim otherwise. In fact, she does not allege that any of the Park Board's activities are arbitrary or not related to a legitimate government interest. Substantive due process is therefore satisfied.

---

[37] *See also Presley v. City of Charlottesville*, 464 F.3d 480, 489 (4th Cir. 2006) (dismissing procedural due process count from a Fourth and Fifth Amendment claim); *Ladd v. Marchbanks*, 971 F.3d 574, 582 (6th Cir. 2020), *cert. denied*, 141 S. Ct. 1390 (2021) (affirming that when a taking is alleged, due process is satisfied when a mechanism exists to obtain just compensation).

[38] *Presley*, 464 F.3d at 489.

### 3.   Porretto has not pled a viable claim under the Texas Water Code (Count IX).

Porretto's claim under the Water Code alleges that Defendants "failed to construct, erect or install sufficient barriers to prevent surface water from being diverted and impounded on Porretto Beach" and that they "acted in concert to approve modifications to public property to divert and impound the natural flow of surface waters from and around the ground and streets" on adjacent property. Pl.'s Third Am. Compl. 44. Texas Water Code section 11.086 does not impose an obligation to "construct, erect, or install . . . barriers." Porretto cannot support her claim with this allegation. Further, her conclusory statement that the Defendants acted "in concert" to impound and direct surface water is not supported by a single factual allegation and is not plausible on its face. In any case, GLO does not permit beachfront construction projects. It merely receives proposed development plans and submits comments on them, which local governments will consider in making decisions to approve or deny the application.[39] Porretto's Texas Water Code claim must be dismissed.

### 4.   Porretto has not pled a viable claim under the Texas Tort Claims Act (Count XIV).

Porretto points to "Defendants['] actions, including negligence" as the basis for her tort claim. Pl.'s Third Am. Compl. 46. She cites section 101.0215 of the Tort Claims Act in support, which is a section governing liability of municipalities that does not apply to GLO. *Id.* Porretto pleads no facts to support the only tort claim that could apply to GLO—"property damage, personal injury, and death proximately caused by the wrongful act or omission or the

---

[39] Tex. Nat. Res. Code §§ 61.015(c), (g), 63.054(a), 63.056(b); 31 Tex. Admin. Code § 15.3(s)(6)–(7); *see also Tex. Gen. Land Off. v. La Concha Condo. Ass'n*, No. 13-19-00357-CV, 2020 WL 2610934, at *9 (Tex. App.—Corpus Christi May 21, 2020, no pet.).

negligence of an employee acting within its scope of employment" that arose from the operation of a motor-driven vehicle. Tex. Civ. Prac. & Rem. Code § 101.021(1). She also has not claimed that GLO has caused personal injury and death caused by a condition or use of tangible personal or real property. *Id.* at § 101.021(2). Count XIV must be dismissed.

## III.  CONCLUSION AND PRAYER

Plaintiff's Complaint is fatally deficient for lack of subject-matter jurisdiction and failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). The Texas General Land Office and Land Commissioner George P. Bush respectfully request that this Court grant this motion and dismiss Plaintiff's claims against them  in their entirety.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

GRANT DORFMAN
Deputy First Assistant Attorney General

SHAWN COWLES
Deputy Attorney General for Civil Litigation

PRISCILLA M. HUBENAK
Chief, Environmental Protection Division

*/s/ Shelly M. Doggett*
SHELLY M. DOGGETT
Assistant Attorney General
Attorney-in-Charge
State Bar No. 24069619
Southern District No. 3008051
Shelly.Doggett@oag.texas.gov

J. AMBER AHMED
Assistant Attorney General
State Bar No. 24080756
Southern District No. 3135176
Amber.Ahmed@oag.texas.gov

KATIE B. HOBSON
Assistant Attorney General
State Bar No. 24082680
Southern District No. 2917009
Katie.Hobson@oag.texas.gov

JASON B. BINFORD
Assistant Attorney General
State Bar No.: 24045499
Southern District ID: 574720
Jason.Binford@oag.texas.gov

AUTUMN D. HIGHSMITH
Assistant Attorney General
State Bar No.: 24048806
Southern District ID: 597383
Autumn.Highsmith@oag.texas.gov

OFFICE OF THE ATTORNEY GENERAL OF TEXAS
ENVIRONMENTAL PROTECTION DIVISION
P.O. Box 12548 (MC-066)
Austin, Texas 78711-2548
Tel: (512) 463-2012
Fax: (512) 320-0911

**Attorneys for Defendants Texas General Land Office and George P. Bush, in his official capacity as Commissioner of the Texas General Land Office**

31

## CERTIFICATE OF SERVICE

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on April 22, 2022, and that all counsel of record were served by CM/ECF.

/s/ Shelly M. Doggett
SHELLY M. DOGGETT