**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

| | | |
|---|---|---|
| **SONYA PORRETTO,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | **CIVIL ACTION NO. 3:21-cv-00359** |
| | § | |
| **THE GALVESTON PARK BOARD** | § | |
| **OF TRUSTEES, et al.,** | § | |
| | § | |
| **Defendants.** | § | |

---

**TEXAS GENERAL LAND OFFICE AND GEORGE P. BUSH'S REPLY IN
SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S THIRD
AMENDED COMPLAINT PURSUANT TO
FED. R. CIV. P. 12(b)(1) AND 12(b)(6)**

---

# TABLE OF CONTENTS

I.    The Court lacks jurisdiction under 28 U.S.C. § 1334(e). ...................................................1

    a.    28 U.S.C. § 1334(e)(1) does not apply to the Porretto Property.
    .......................................................................................................................1

    b.    28 U.S.C. § 1334(e) is limited to the exercise in *in rem* jurisdiction.............................................................................................2

II.   The Court lacks jurisdiction under 28 U.S.C. § 1334(b). ..................................................3

III.  The Court lacks jurisdiction under 28 U.S.C. § 1331.......................................................5

IV.   GLO has not waived Eleventh Amendment immunity. ...................................................8

    a.    Eleventh Amendment immunity was not waived by 11 U.S.C. § 106. .............................................................................................................8

    b.    Submitting a Joint Discovery Plan in the adversary proceeding did not waive immunity. ....................................................................10

    c.    GLO is immune from claims under the Tort Claims Act. ...............................10

    d.    Porretto has alleged no federal funding source or legislation providing a waiver of immunity as to her claims. ................................11

V.    Porretto's Complaint should be dismissed for failure to state a claim. ........................11

VI.   The Court should not allow Porretto to replead (again). ................................................15

CERTIFICATE OF SERVICE ................................................................................................18

Defendants Texas General Land Office and its Commissioner George P. Bush (collectively, "GLO") file this reply in support of their motion to dismiss Plaintiff Sonya Porretto's Third Amended Complaint.

## I.    The Court lacks jurisdiction under 28 U.S.C. § 1334(e).

Porretto contends that 28 U.S.C. § 1334(e) gives a bankruptcy court *exclusive* jurisdiction over a debtor's property long after that property is abandoned and after that estate is fully administered. And even more puzzling, she insists that *exclusive* jurisdiction exists over all actions related to the debtor's property, whether *in rem* or *in personam*. This illogically broad analysis is inconsistent with other provisions of title 28 of the United States Code and, if true, would gridlock bankruptcy courts. Instead, this Court should recognize that *exclusive* jurisdiction terminates when property of the estate is abandoned to the debtor.

### a.    28 U.S.C. § 1334(e)(1) does not apply to the Porretto Property.

"When a trustee abandons property to the debtor, there is no remaining basis for bankruptcy court jurisdiction." *LifeUSA Ins. Co. v. Green (In re Green)*, 241 B.R. 187, 197 (Bankr. N.D. Ill. 1999); *see Newkirk v. Wasden (In re Bray)*, 288 B.R. 305, 307-08 (Bankr. S.D. Ga. 2001) (bankruptcy court lacked jurisdiction over property abandoned to a debtor).[1] Porretto ignores

---

[1] All but one of the cases Porretto cites in support of her § 1334(e) argument involve claims related to property exempt under Bankruptcy Code § 522. *See Ramos v. Negron (In re Ramos)*, 498 B.R. 401, 404 (B.A.P. 1st Cir. 2013) (addressing § 522); *In re Lafoon*, 278 B.R. 767, 772 (Bankr. E.D. Tenn. 2002) (distinguishing § 522 proceedings); *In re Sills*, 126 B.R. 974, 976 (Bankr. S.D. Ohio 1991) (addressing § 522); *Bennett v. Com. Credit Plan (In re Bennett)*, 13 B.R. 643, 644-45 (Bankr. W.D. Mich. 1981) (addressing § 522). Porretto conflates the nature of exempt property and abandoned estate property. *See In re Ramos*, 498 B.R. at 404-05 ("Because property of the estate is not implicated under § 522(f), a bankruptcy court's jurisdiction to determine a request under that provision does not lapse upon the trustee's abandonment of the affected property."). While the court in *In re Fong* applies § 1334(e)(1) to abandoned estate property, it ignores the temporal limit in § 1334(e)(1). *See* No. 01-00242, 2005 WL 3964429

statutory language limiting § 1334(e)(1) to "property . . . of the debtor _**as of the commencement of such case**_." 28 U.S.C. § 1334(e)(1) (emphasis added). Once debtor property becomes estate property, § 1334(e)(1) no longer applies, and estate property is governed by § 1334(e)(2). When estate property is then abandoned, § 1334(e)(1) does not revive exclusive jurisdiction. But even absent that limitation, there must be some temporal limit on the duration of exclusive jurisdiction under § 1334(e)(1). _See In re Sindram_, No. 08-00559, 2010 WL 434341, at *2 (Bankr. D.D.C. Jan. 28, 2010) (having been a debtor does not create bankruptcy jurisdiction in perpetuity). Here, where the bankruptcy estate was fully administered and the estate retains no interest in property, § 1334(e) should no longer apply.

Further, as detailed in GLO's Motion to Dismiss, the history of the Bankruptcy Case belies Porretto's argument that exclusive jurisdiction exists over the claims in this proceeding.[2] _See_ Doc. 70 at 6 n.9.

**b.      28 U.S.C. § 1334(e) is limited to the exercise in _in rem_ jurisdiction.**

Porretto further stretches her interpretation of § 1334(e) by arguing that it applies to both _in rem_ and _in personam_ actions involving property of the debtor. This expansive interpretation, which has been rejected by numerous courts, is inconsistent with several other provisions of title 28—specifically 28 U.S.C. §§ 1334(c) (abstention), 1409 (venue), and 1452 (removal)—and would even prevent a bankruptcy court from granting widely accepted

---

(Bankr. D. Haw. Nov. 18, 2005). Moreover, unlike here, the bankruptcy court in Porretto's selection of cases had "arising in" or "related to" jurisdiction.

[2] Porretto also misrepresents the ruling transferring this proceeding to this Court. The Bankruptcy Court did not "decline to abstain" from hearing issues. Instead, the Bankruptcy Court transferred this matter because, among other reasons, the Bankruptcy Court believed "there is a real jurisdictional issue . . . based upon the abandonment issue." _See_ Adversary Proceeding Docs. 48, 50.

motions for relief from the automatic stay to pursue state law claims in state courts. *See Noletto v. Nationsbanc Mortg. Corp. (In re Noletto)*, 244 B.R. 845, 850-854 (Bankr. S.D. Ala. 2000); *see also, e.g.*, *Cano v. GMAC Mortg. Corp. (In re Cano)*, 410 B.R. 506 (Bankr. S.D. Tex. 2009) (explaining that a more expansive view of § 1334(e) "would render removal, abstention, and venue provisions meaningless"); *Harker v. Wells Fargo Bank, N.A. (In re Krause)*, 414 B.R. 243, 254-56 (Bankr. S.D. Ohio 2009) (holding that § 1334(e) must be read narrowly to limit the "home court" exclusive jurisdiction strictly to *in rem* matters). Accordingly, the Court should reject Porretto's overly broad interpretation of § 1334(e).

## II.     The Court lacks jurisdiction under 28 U.S.C. § 1334(b).

The proper focus for the jurisdictional analysis here is § 1334(b). The parties appear to agree that § 1334(b) jurisdiction exists only where the outcome of litigation can conceivably affect the estate being administered in bankruptcy. *See, e.g.*, *Arnold v. Garlock, Inc.*, 278 F.3d 426, 434 (5th Cir. 2001); *and see Bass v. Denney (In re Bass)*, 171 F.3d 1016, 1022-23 (5th Cir. 1999).

Porretto cannot identify any conceivable effect this lawsuit will have on the bankruptcy estate and ignores the undisputed fact that the estate is fully administered and the Bankruptcy Case is soon to be closed. Bankruptcy Case Docs. 819, 821. This proceeding cannot and will not increase or decrease the assets to be distributed in the Bankruptcy Case or any distribution to estate creditors. *See In re Bass*, 171 F.3d at 1023 (the fact no resulting recovery accrues to the bankruptcy estate eschews "related to" jurisdiction). In short, nothing that happens in this proceeding can conceivably impact the bankruptcy estate, and each of Porretto's attempts to engineer a potential impact on the bankruptcy estate fails.

3

First, the existence of a creditor with a secured claim against the Porretto Property does not change the fact that this dispute will not impact the bankruptcy estate or the treatment of estate creditors. The secured creditor will receive nothing *from the bankruptcy estate* whether Porretto wins or loses this lawsuit. The key issue under § 1334(b) is whether the outcome of a proceeding affects the administration of the estate or the treatment of creditors in the bankruptcy—not whether a party that was a creditor in the bankruptcy is separately impacted by the proceeding. *See id.* at 1023 ("[I]t is the relation of dispute to estate, and not of party to estate, that establishes jurisdiction."); *see also Elscint, Inc. v. First Wis. Fin. Corp. (In re Xonics, Inc.)*, 813 F.2d 127, 131 (7th Cir. 1987) (same).

Second, while the live Complaint discusses conduct before or during the Bankruptcy Case, that does not mean the outcome of Porretto's related claims will impact the administration of the bankruptcy estate or creditors.[3] Even if bankruptcy jurisdiction could have existed before, it lapsed upon abandonment. *See In re Fort Wayne Telsat, Inc.*, 403 B.R. 590, 594 (Bankr. N.D. Ind. 2009) ("Even if a dispute initially comes within the scope of the court's related to jurisdiction, that jurisdiction does not last forever. It can lapse.").

Third, Porretto's argument that jurisdiction exists because of the jurisdictional reservation in the Abandonment Order is a red herring.[4] As Porretto admits, it is "undisputed that Ms. Porretto owns the property at issue." Doc. 72 at 9. Additionally, "[i]f a court does not have jurisdiction over a dispute, it cannot create that jurisdiction by simply stating it has

---

[3] Porretto also ignores that the Third Amended Complaint does not assert any cause of action against GLO for violations of any provision of the Bankruptcy Code.
[4] GLO is not a party to any of the "agreed orders" referenced by Porretto or the claims related to those orders.

jurisdiction in [an order]." *In re Cont'l Airlines, Inc.*, 236 B.R. 318, 323 (Bankr. D. Del. 1999); *see, e.g.*, *Enterprise Fin. Grp., Inc. v. Curtis Mathes Corp.*, 197 B.R. 40, 46 (E.D. Tex. 1996) (citing *Zerand-Bernal Grp., Inc. v. Cox*, 23 F.3d 159, 164 (7th Cir. 1994) (explaining that a court cannot "write its own jurisdictional ticket")).

## III.   The Court lacks jurisdiction under 28 U.S.C. § 1331.

Porretto's reliance on state court decisions for the proposition that GLO lacks immunity from takings claims is misplaced in this federal action. *See* Doc. 72 at 15 (citing *Koch v. Tex. Gen. Land Off.*, 273 S.W.3d 451 (Tex. App.—Austin 2008, pet. denied), where Eleventh Amendment immunity was not implicated). Indeed, she does not even address the binding Fifth Circuit precedent finding that constitutional takings claims brought against states in federal court are barred by Eleventh Amendment immunity. *See Bay Point Props. Inc. v. Miss. Transp. Comm'n*, 937 F.3d 454, 456 (5th Cir. 2019); *Can. Hockey, L.L.C. v. Tex. A&M Univ. Athletic Dep't*, No. 20-20503, 2022 WL 445172, at *9 (5th Cir. Feb. 14, 2022).

Porretto instead suggests that her "claim for *just compensation* and equitable relief . . . is permitted" because of a fleeting reference to two U.S. Supreme Court cases brought under 42 U.S.C. § 1983—a claim absent in her live Complaint. Doc. 72 at 12 (emphasis added). Porretto is wrong because she seeks a judgment entitling her to *recover just compensation* in an amount as determined by the trier of fact[5] and a *share of unspecified government funding*.[6] Such relief is not authorized by *Knick v. Twp. of Scott*, 139 S. Ct. 2162, 2170 (2019), which concerned claims

---

[5] *See* Pl.'s Third Am. Compl. Prayer, A.
[6] *See id.* ¶ 144.

against a local government lacking Eleventh Amendment immunity,[7] or *Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063, 2072 (2021), where no compensation was sought.

The *Ex parte Young* doctrine avails no exception. Porretto requests compensation from GLO, but an *Ex parte Young* action must seek only equitable relief against state officials that is "declaratory or injunctive in nature and prospective in effect." *Williams ex rel. J.E. v. Reeves*, 954 F.3d 729, 736 (5th Cir. 2020) (quoting *Aguilar v. Tex. Dep't of Crim. Just.*, 160 F.3d 1052, 1054 (5th Cir. 1998)). State law violations also cannot abrogate immunity, as *Ex parte Young* applies only to federal violations. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-02 (1984).

Of course, even viewing Porretto's requested injunctive and declaratory relief in isolation,[8] she has not alleged a waiver of immunity because *Ex parte Young* is only relevant to allegations of *ongoing* violations of federal rights. *Williams ex rel. J.E. v. Reeves*, 954 F.3d 729, 736 (5th Cir. 2020) (citing *NiGen Biotec, L.L.C. v. Paxton*, 804 F.3d 389, 394 (5th Cir. 2015)). Porretto complains of discrete, not ongoing, events. Purported prior removal of sand or

---

[7] The same is true for the case cited on page 16 of Porretto's response, which did not concern a state or Eleventh Amendment immunity. *See* Doc. 72 at 16 (citing *Hudson v. Pot-O-Gold Rentals, LLC*, No. 3:17-CV-00314, 2018 WL 5732081 (S.D. Tex. July 24, 2018)).

[8] The injunctive relief requested against GLO in Count XI of the Third Amended Complaint includes:

- "The Defendants should be permanently enjoined from referring to Porretto Beach as if it is part of the public property." ¶ 146.
- "The Defendants should be enjoined from any further construction or alteration of the Stewart Beach land without an agreement with Porretto Beach." ¶ 148.
- "The Defendants should be enjoined from providing any false erosion and accretion data." ¶ 149.

The sole declaratory relief sought against GLO requests "recognizing her property rights to the property identified in the Abandonment Order includes all mineral interests and seeks a determination of the boundaries for any submerged lands which are alleged to be State owned." *Id.* ¶ 156.

"sandscraping" is not an "ongoing" violation. Nor are allegations about prior construction activities that she claims flooded the property. To the extent Porretto claims flooding allegations support an "ongoing" taking and invasion, it's noteworthy that her requested injunction seeks to "enjoin *any further construction or alteration of the Stewart Beach land* without an agreement with Porretto Beach"—not to address the prior construction that purportedly caused the flooding. She also does not request procedural due process as injunctive relief to remedy that claim, which simply copies her taking allegations.[9] Thus, Porretto seeks relief for *past* conduct and *future* conduct but not to enjoin an ongoing violation of federal law.

Additionally, Porretto's takings theories for actions occurring "prior to the bankruptcy," Doc. 72 at 11, were tried in her state lawsuit in 2009, the year she claimed bankruptcy, and ultimately rejected—including allegations that GLO improperly characterized her property as "public" or nourished "private" property that she opened to public recreation. *Porretto v. Tex. Gen. Land Off.*, 448 S.W.3d 393, 400-02 (Tex. 2014).[10] Allegations from that timeframe were determined to not constitute a taking and, in any event, are barred by res judicata to the extent they were not raised. As for any claims that GLO has provided "false" erosion data, these allegations also do not allege ongoing violations of federal law. Providing erosion data does not, on its face, implicate vested property rights, nor do general statements

---

[9] Porretto fails to adequately brief a response for her due process claim, stating that arguments in support are in an exhibit to her complaint. Doc. 72 at 12. "Due process," however, is not specifically addressed. To the extent she references a desire to dispute government statements regarding erosion and accretion levels, she has not pled a federal violation, a vested property interest in the government's funding, nor a property rights impact. *See also* Doc. 70 at 10-11.
[10] That opinion suggests Porretto herself engages in sand scraping and sand removal from her property—activities she now asserts contribute to flooding and erosion. *See Porretto*, 448 S.W.3d at 402.

or property descriptions without more. And as more fully briefed in Section V, Porretto nevertheless fails to tie any of her allegations to GLO. Her claims under 42 U.S.C. § 1331 should be dismissed.

## IV.     GLO has not waived Eleventh Amendment immunity.

States are sovereign and immune from suit absent consent or valid congressional abrogation. *See, e.g.*, *Alden v. Maine*, 527 U.S. 706, 713 (1999); *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54-55 (1996). Purported immunity waivers "should be narrowly construed." *Zayler v. U.S.D.A. (In re Supreme Beef Processors, Inc.)*, 468 F.3d 248, 253 (5th Cir. 2006).

### a.     Eleventh Amendment immunity was not waived by 11 U.S.C. § 106.

Porretto's argument that § 106 waives Eleventh Amendment immunity is incorrect. First, § 106(a) contains a very limited abrogation of immunity for bankruptcy-created claims (*e.g.*, turnover, preferences, fraudulent transfers) that Porretto did not plead. *See id.* at 254. Importantly, § 106(a) does not apply to non-bankruptcy claims that become estate property under Bankruptcy Code § 541, as asserted by Porretto. *See id.* at 254; *see FSQ, Inc. v. Integrated Health Servs., Inc. (In re Integrated Health Servs, Inc.)*, 303 B.R. 577, 582 (Bankr. D. Del. 2003).

Second, Bankruptcy Code §§ 106(b) and (c) waive Eleventh Amendment immunity in two inapplicable circumstances: (i) compulsory counterclaims to governmental claims and (ii) permissive counterclaims to governmental claims capped by a setoff limitation. *See In re Supreme Beef Processors*, 468 F.3d at 254. These subsections only apply where a governmental unit filed a proof of claim and a debtor-in-possession or trustee asserted a counterclaim that is property of the bankruptcy estate. *See id.* at 255. Here, GLO did not file a proof of claim, and Porretto is not asserting counterclaims in the Bankruptcy Case.

Further, when §§ 106(b) or (c) apply, those provisions are a waiver of immunity against suit in a particular forum only, not a waiver of immunity against liability. To the extent that a debtor could not have sued a governmental unit prepetition, neither §§ 106(b) or (c) give the debtor "a superior right against the government postbankruptcy." *Id.* at 256.

The cases Porretto cites in support of her waiver argument are inapposite because they do not even address the proper application of § 106. *Shelley v. Colo. State Univ.*, No. A-14-CA-516 LY, 2014 WL 4794589, at *2 (W.D. Tex. Sep. 25, 2014) (institution voluntarily removed a case to federal court); *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675-91 (1999) (addressing immunity under the Trademark Remedy Clarification Act).

Porretto's argument that her claims are "core" is both irrelevant and incorrect. Proceedings, like this one, that do not invoke a substantive right *created* by bankruptcy law that exist outside of bankruptcy are not core. *In re Wood*, 825 F.2d 90, 97 (5th Cir. 1987). "A debtor cannot reclassify what is essentially a non-core state law cause of action [as core] by declaring that it affects either 'the liquidation of assets of the estate' or 'the administration of the estate.'" *Hassett v. Bancohio Nat'l Bank (In re CIS Corp.)*, 172 B.R. 748, 757 (S.D.N.Y. 1994).

Finally, Bankruptcy Code § 105 offers Porretto no refuge from the case law interpreting and applying § 106. Because none of the substantive arguments advanced by Porretto support a waiver of sovereign immunity, § 105 cannot be invoked to create a waiver that does not otherwise exist. *See In re Integrated Health Servs., Inc.*, 303 B.R. at 583 (explaining that § 105 is not a "sufficient basis for invoking an abrogation of sovereign immunity").

**b.** **Submitting a Joint Discovery Plan in the adversary proceeding did not waive immunity.**

Porretto's suggestion that GLO waived immunity by filing a Joint Discovery Plan (Adversary Proceeding Doc. 25) where Porretto described anticipated depositions is nonsensical. A waiver of Eleventh Amendment immunity must be unequivocal. *Neinast v. Texas*, 217 F.3d 275, 279 (5th Cir. 2000). GLO's submission of a required discovery plan in a bankruptcy proceeding cannot waive its Eleventh Amendment immunity without more. *Coll. Sav. Bank*, 527 U.S. at 675-77; *Neinast,* 217 F.3d at 279 (observing that "[c]ourts have found waiver in two general varieties of cases: where the state asserted claims of its own or evidenced an intent to defend the suit against it on the merits").

What's more, Porretto's then live pleading alleged jurisdiction only under the Bankruptcy Code. In the Joint Discovery Plan, Defendants repeatedly denied the Court's subject-matter jurisdiction, referenced their pending motions to dismiss, and opposed Porretto's intent to amend. Adversary Proceeding Doc. 25. Such actions do not manifest a waiver of immunity. *See Dansby-Giles v. Jackson State Univ.*, 638 F. Supp. 2d 698, 702 (S.D. Miss. 2009) (waiver must be based on finding that entity "participated in the lawsuit and defended the plaintiff's claims on the merits, thereby implicitly foregoing its defense of immunity").

**c.** **GLO is immune from claims under the Tort Claims Act.**

Porretto summarily states that "there is no immunity for declaratory judgment or tort claims," citing to the Tort Claims Act in its entirety. Doc. 72 at 16. She is incorrect because the Tort Claims Act does not waive Eleventh Amendment immunity, and such claims may not be brought in federal court. *Residents Against Flooding v. Reinvestment Zone No. Seventeen, City of Hous., Tex.*, 260 F. Supp. 3d 738, 772 (S.D. Tex. 2017), *aff'd*, 734 F. App'x 916 (5th Cir. 2018).

### d. Porretto has alleged no federal funding source or legislation providing a waiver of immunity as to her claims.

Porretto's oblique reference to a "gratuity waiver" also misses the mark. Porretto seemingly argues GLO voluntarily waived immunity for every claim in federal court by receiving federal funds "using Porretto Beach as part of the funding applications." *See* Doc. 72 at 16. While Congress may use its spending power to legislate certain conditions on states' receipt of federal money, any such conditions—including an Eleventh Amendment immunity waiver—"must be unambiguous." *Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 278 (5th Cir. 2005); *see also Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981). Thus, a federal spending statute requiring waiver for specified claims does not equate to a waiver of other related claims. *See, e.g., Pace*, 403 F.3d at 280 n.30 (federal statute conditioning funds on waiver of immunity "for a violation of this chapter" or other specified causes limited the waiver).

Porretto's pleadings and response, however, identify no specific funding received, let alone federal legislation conditioning funding on a waiver of immunity.[11] Having failed to identify an alleged waiver, Porretto fails to meet her burden to establish the Court's jurisdiction under this exception. *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) ("[P]laintiff constantly bears the burden of proof that jurisdiction does in fact exist.").

## V. Porretto's Complaint should be dismissed for failure to state a claim.

The thrust of Porretto's response to GLO's 12(b)(6) arguments is an insistence that her Complaint clears the "notice pleading" standard because she provided "detailed factual

---

[11] *See* Pl.'s Third Am. Compl. 27 (referencing unspecified "Federal and State beach renourishment and grant funds"), 29 (stating "Defendants have qualified for at least $20 million in funding for Galveston Beaches").

allegations as well as exhibits that go into even further detail." Doc. 72 at 5. To be sure, Porretto's Complaint contains many pages of allegations and details. The problem is that, for her wealth of words, Porretto does not plead *factual allegations* (as opposed to *conclusory statements*) that can support her claims against GLO.

Porretto entirely ignores *Iqbal*, the relevant legal standard for 12(b)(6) motions,[12] but this seminal case sets the bar for facial plausibility that Porretto must clear. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" to survive dismissal. *Id.* Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Pleadings that are no more than conclusions are not entitled to the assumption of truth. *Id.* Important here, "[d]ismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief." *Rios v. City of Del Rio,* 444 F.3d 417, 421 (5th Cir. 2006).

Porretto's many conclusory statements about the flooding (*e.g.*, "all Defendants took actions deliberately flooding Porretto Beach," or "flooding . . . continues" simply because the Complaint uses the phrase "until remediated") are textbook examples of threadbare conclusions not entitled to an assumption of truth. Doc. 72-1.[13] Such statements are not plausible on their face in any case because GLO does not issue beachfront construction

---

[12] Doc. 72 at 4.
[13] Porretto makes a new factual allegation in her chart; she represents that Paragraph 35 of her live complaint shows "GLO funded excavation." Doc. 72-1. Paragraph 35 does not allege GLO funded excavation or sandmining. Instead, it says the Park Board excavated Porretto Beach in 2013, then obtained funding for a seawall project after "manufacturing a false erosion baseline to get funds for the sand it took." Pl.'s Third Am. Compl. 24. The Complaint alleges that the 2013 seawall project, not the sand excavation, was funded by GLO. The Complaint does not allege the 2013 seawall project caused flooding. Thus, this allegation does not support a claim for takings via flowage easement against GLO.

permits, to the extent acts of construction are even pled to be the cause of flooding. *Tex. Gen. Land Off. v. La Concha Condo. Ass'n*, 2020 WL 2610934, at *9 (Tex. App.—Corpus Christi-Edinburg, May 21, 2020, no pet.) ("the authority for approving beachfront construction rests solely with the applicable local government entity, not GLO or the Land Commissioner.").

The chart Porretto attaches merely cites to her conclusory statements—she makes no effort to show how those allegations support the essential elements of her claims. Doc. 72-1. For example, to support her flowage easement claim against GLO, Porretto must plead that some act of GLO caused flooding on her property. *See, e.g., Ark. Game & Fish Comm'n v. United States*, 568 U.S. 23, 31-33 (2012). Porretto's live complaint includes only two factual allegations about the cause of the May 2021 flooding: "removing Seaweed and sand stockpiles from beachfront," which presumably resulted in "[w]ater trenches/ditches and swales created slanting the [sic] elevation of Stewart towards the west to Porretto Beach." Pl.'s Third Am. Compl. 17. Porretto does not allege that GLO conducted these acts.

Likewise, Porretto's unsupported conclusions that GLO "knew or should have known" that "false data was being used to support Stewart Beach Drainage Project" or that it "allowed the Park Board to use heavy equipment on the wet beach" do not allege sufficient facts that GLO acted to deprive her of a property interest (either by flooding, depriving her of sand, or interfering with erosion data). *Id.* at Ex. A, at 1. Her allegations that GLO acted "in concert" with the Park Board to direct surface runoff are similarly unsupported by factual allegations and cannot support her Texas Water Code Claim. *Id.* at 44. Moreover, her claims

that the Park Board's activities have caused erosion[14] are contradicted by her own pleadings[15] and are thus not entitled to an assumption of truth. *Carter v. Target Corp.*, 541 F. App'x 413, 417 (5th Cir. 2013) (citing *Associated Builders, Inc. v. Ala. Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974) (when conclusory allegations and unwarranted deductions of fact are contradicted by facts incorporated into a party's pleadings, the allegations are not admitted as true)). Even if Porretto had alleged facts showing GLO excavated sand, other elements of her claims are missing, such as any showing that she has a protected interest in coastal erosion data or accretion levels. *See* Doc. 70 at 18-19, 23-24. Thus, Porretto cannot support her federal or state takings claims, her inverse condemnation claim, her due process claim, or her Texas Water Code claim. And she has not attempted to defend her requests for relief that do not belong with any other claims, such as her request for accounting and reimbursement or for injunctive relief and declaratory judgment.

Lastly, any claim reliant on the Tort Claims Act, which does not create a cause of action, must first be based on a viable theory of tort liability, including both the existence and violation of a duty. *Rodriguez v. Christus Spohn Health Sys. Corp.*, 628 F.3d 731, 736 (5th Cir. 2010). Porretto pleads neither a duty on the part of GLO nor a violation of that duty. Moreover, she makes no factual allegations regarding property damage arising from a GLO employee's operation or

---

[14] Pl.'s Third Am. Compl. 39, 41.

[15] *Id.* at 26 ("Over the years, they have asserted in various documents that Porretto Beach and other coastal properties were eroding when they were accreting"), 31 ("Ms. Porretto seeks to have Porretto Beach correctly reflected in the coastal management documents maintained and used by all Defendants showing it is accreting and not eroding."); *see also* Doc. 72-1 ("The facts show Porretto beach is an accreting beach. . . . The facts show Porretto Beach is falsely identified as eroding by the Defendants.").

use of a motor-driven vehicle or motor-driven equipment, a requisite for the Tort Claims Act's waiver of immunity in state court. Tex. Civ. Prac. & Rem. Code § 101.021(1)(A).

## VI.     The Court should not allow Porretto to replead (again).

Porretto should not be permitted to amend. Porretto's grievances concerning conference rules and repleading ignore the docket history, where Defendants have moved to dismiss each of Porretto's three complaints. *See* Docs. 16, 18, 20, 27, 28, 29, 69, 70.

GLO and the Galveston Defendants both opposed Porretto's TRO and PI application (Doc. 55) based on her Second Amended Complaint, explaining the jurisdictional bars to and the absence of facts supporting Porretto's claims. Docs. 58, 59. After denying the applications (Doc. 61), the Court granted Porretto's motion for leave to amend, explicitly stating it "does not anticipate granting further leave to amend," and setting a deadline for any renewed motions to dismiss. Doc. 62. Porretto did not object in response to that order or seek leave to further amend to correct any deficiencies.

Galveston Division Rules' special conference requirement does not apply here since the case was transferred from another court where the pleadings had already been amended and motions to dismiss had already been filed. Regardless, the Court superseded typical conference procedure in its order granting leave to amend, disclaiming further repleading opportunities, and setting a deadline for motions to dismiss. Porretto has pled her best case in an extensive 47-page complaint (without exhibits) after multiple repleading opportunities and should not be permitted to amend again. *See Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999).

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

GRANT DORFMAN
Deputy First Assistant Attorney General

SHAWN COWLES
Deputy Attorney General for Civil Litigation

PRISCILLA M. HUBENAK
Chief, Environmental Protection Division

*/s/ Shelly M. Doggett*
SHELLY M. DOGGETT
Assistant Attorney General
Attorney-in-Charge
State Bar No. 24069619
Southern District No. 3008051
Shelly.Doggett@oag.texas.gov

J. AMBER AHMED
Assistant Attorney General
State Bar No. 24080756
Southern District No. 3135176
Amber.Ahmed@oag.texas.gov

KATIE B. HOBSON
Assistant Attorney General
State Bar No. 24082680
Southern District No. 2917009
Katie.Hobson@oag.texas.gov

JASON B. BINFORD
Assistant Attorney General
State Bar No.: 24045499
Southern District ID: 574720
Jason.Binford@oag.texas.gov

16

AUTUMN D. HIGHSMITH
Assistant Attorney General
State Bar No.: 24048806
Southern District ID: 597383
Autumn.Highsmith@oag.texas.gov

OFFICE OF THE ATTORNEY GENERAL OF TEXAS
ENVIRONMENTAL PROTECTION DIVISION
P.O. Box 12548 (MC-066)
Austin, Texas 78711-2548
Tel: (512) 463-2012
Fax: (512) 320-0911

**Attorneys for Defendants Texas General Land Office and George P. Bush, in his official capacity as Commissioner of the Texas General Land Office**

## CERTIFICATE OF SERVICE

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on June 14, 2022, and that all counsel of record were served by CM/ECF.

*/s/ Shelly M. Doggett*
SHELLY M. DOGGETT