**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

| | | |
|---|---|---|
| SONYA PORRETO,<br>*Plaintiff,*<br><br>vs.<br><br>The GALVESTON PARK BOARD OF TRUSTEES, CITY OF GALVESTON, TEXAS GENERAL LAND OFFICE, and GEORGE P. BUSH, Land Commissioner of the Texas General Land Office,<br>*Defendants.* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. 3:21-cv-00359<br><br>JURY DEMANDED |

**THE GALVESTON PARK BOARD OF TRUSTEES' AND
THE CITY OF GALVESTON'S
REPLY IN SUPPORT OF THEIR RENEWED MOTION TO DISMISS**

Barry Abrams
State Bar No. 00822700
S.D. Tex. Bar No. 2138
Neil F. Young
State Bar No. 24121218
S.D. Tex. Bar No. 3635269
BLANK ROME LLP
717 Texas Avenue, Suite 1400
Houston, Texas 77002
(713) 228-6601
(713) 228-6605 (fax)
barry.abrams@blankrome.com
neil.young@blankrome.com

**ATTORNEYS FOR DEFENDANTS
THE GALVESTON PARK BOARD OF
TRUSTEES AND CITY OF GALVESTON**

The Galveston Park Board of Trustees ("Park Board") and the City of Galveston ("City") reply to Debtor's Amended Objection to Motions to Dismiss Under 12(b)(1) and 12(b)(6) ("Response") and re-urge the Court to dismiss Plaintiff Sonya Porretto's ("Porretto") Third Amended Complaint ("Complaint") pursuant to FED. R. CIV. P. 12(b)(1) and 12(b)(6):

## I.
## Introduction

Porretto purports to assert both direct federal constitutional claims and a variety of state law claims against the Park Board and the City (the "Galveston Defendants").[1] In her Response, Porretto describes her legal theory as having two components, which she characterizes as: (1) a "sand-mining claim";[2] and (2) a "flowage easement claim."[3] As discussed in greater detail in The Galveston Park Board of Trustees' and The City of

---

[1] *See* Complaint, ¶¶95-158 (Counts I, II and IV (U.S. Const. amend. V), Count III (inverse condemnation under Texas law), Count V (Tex. Const. art. I, §17), Count VI (U.S. Const. amend. XIV), Count VII (breach of contract), Count VIII (tortious interference), Count IX (Texas Water Code), Count X (accounting and reimbursement), Count XI (injunctive relief), Counts XII and XIII (declaratory relief), Count XIV (Texas Tort Claims Act)).

[2] "Defendants took actions to remove and mine sand from her property for years, reducing accretion and creating damage." Response at 1. Porretto's purported sand-mining claim concerns conduct allegedly occurring before June 24, 2019 and therefore is barred by the two year statute of limitations applicable to a federal takings claim. Motion to Dismiss at 14-16. *See Yarbrough v. City of La Marque*, No. 3:20-cv-69, 2021 U.S. Dist. LEXIS 196711, at *9-10 (S.D. Tex. Jan. 28, 2021)("[e]ven if [plaintiff's] claims were not fatally infirm on the merits, there is one other glaring problem: at least some of them were filed well past the limitation period.").

[3] "With knowledge of the damage [previously] caused, the Defendants pursued and began construction on a project that was inevitable to flood Porretto Beach when there was heavy rainfall and/or when the City ran fire hydrants to flow onto Porretto Beach" (the "flowage easement claim"). *Id.*

Galveston's Renewed Motion to Dismiss ("Motion to Dismiss") and below, both claims suffer from fatal jurisdictional and substantive defects and should be dismissed.

This Reply will discuss: (1) Porretto's attempt to sidestep the jurisdictional deficiencies in her Complaint; and (2) why, should the Court determine that the federal jurisdiction issue is intertwined with the plaintiff's purported federal causes of action, it should proceed to dismiss them under FED. R. CIV. P. 12(b)(6).

## II.
## Jurisdictional Defects

Although Plaintiff's Complaint only expressly purports to invoke federal jurisdiction under 28 U.S.C. §1334, asserting jurisdiction that "arises from or relates to the main bankruptcy case," in her Response Plaintiff also contends that the Court has jurisdiction under 28 U.S.C. §1331.[4]

---

[4] Response at 11-12. Porretto's attempt to invoke jurisdiction over her purported federal claims under 28 U.S.C. §1331 does not override the fact that the Court lacks jurisdiction over Porretto's purported state-law claims, which are barred by the Park Board's and the City's governmental immunity. *See* Motion to Dismiss at 9-13. "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *USA Promlite Tech., Inc. v. Am. First Nat'l Bank (In re USA Promlite Tech., Inc.),* No. 18-36893, 2020 Bankr. LEXIS 3441, at *9 (Bankr. S.D. Tex. Dec. 9, 2020)(internal citations omitted). "A defendant's correct assertion of governmental immunity is reason to grant a motion to dismiss under Rule 12(b)(1) because the court lacks subject matter jurisdiction to adjudicate the dispute." *Id.*, at *10 (granting 12(b)(1) motion to dismiss breach of contract, unjust enrichment and quantum meruit claims based on city's governmental immunity)(citing *Springboards to Educ., Inc. v. Hous. Indep. Sch. Dist.*, No. H-16-2625, 2017 U.S. Dist. LEXIS 221322, at *5-6 (S.D. Tex. Sept. 20, 2017) (granting the school district's Rule 12(b)(1) motion to dismiss because it was entitled to governmental immunity))."Because a governmental unit is protected from suit by governmental immunity, pleadings in a suit against a governmental unit must affirmatively demonstrate, either by reference to a statute or express legislative permission, that the Legislature has consented to the suit." *Finna Fail, LP v. Moore*, No. H-10-2045, 2010 U.S. Dist. LEXIS 136488, at *13, 2010 WL 5437272

As discussed in the Motion to Dismiss, the Court lacks subject matter jurisdiction over all of Porretto's claims under 28 U.S.C. §1334, the sole jurisdictional basis alleged in her Complaint, because both the sand-mining claim and flowage easement claim (i) concern property that the Bankruptcy Court earlier ordered abandoned, not estate property; and (ii) are not "related to" a bankruptcy proceeding, which has now been fully administered.[5] Similarly, the Court lacks subject matter jurisdiction over all of Porretto's purported state law claims, because they are barred by government immunity and Porretto has not established any applicable waiver of that immunity.[6]

With respect to Porretto's attempt to invoke jurisdiction under 28 U.S.C. §1331, the Galveston Defendants earlier observed that:

> "[t]o the extent that Porretto purports to invoke federal question jurisdiction under 28 U.S.C. §1331, based upon her string citation to various 'Federal and regulatory and statutory provisions governing coastal land and waters,' she has failed to do so because those references 'clearly appear to be immaterial and made solely for the purpose of obtaining jurisdiction' and are 'wholly insubstantial and frivolous.' Complaint, ¶2. *See Suthoff v. Yazoo Cty. Indus. Dev. Corp.*, 637 F.2d 337, 339 (5th Cir. 1981) (quoting *Bell v. Hood*, 327 U.S. 678, 681-82 (1946)). Nowhere else does Porretto reference or discuss the purported applicability of the National Environmental Policy Act, 42 U.S.C. §4201 *et seq*., the Clean Water Act, 33 U.S.C. §1251 *et seq*., or the Coastal Barrier Resources Act, 16 U.S.C. §§3501-3510. Nor does Porretto purport to assert any 'cause of action' based upon those statutes."[7]

In response, Porretto contends that her flowage easement claim alleges a physical

---

(S.D. Tex. Dec. 27, 2010) (quoting *City of Hous. v. Swinerton Builders*, 233 S.W.3d 4, 10 (Tex. App.—Houston [1st Dist.] 2007, no pet.)). "Unless that government unit consents to being sued, the trial court does not have jurisdiction over the case." *Id.*

[5] Motion to Dismiss at 1, 3-8.

[6] *Id.* at 9-14.

[7] Motion to Dismiss at 1 n.2.

taking arising under the United States Constitution that "gives rise to jurisdiction under 28 U.S.C. §1331," even though she did not earlier identify or purport to rely upon that statute as a jurisdictional basis.[8]

The Galveston Defendants acknowledge that "where a complaint fails to cite the statute conferring jurisdiction, the omission will not defeat jurisdiction if the facts alleged in the complaint satisfy the jurisdictional requirements of the statute." *Hildebrand v. Honeywell, Inc.*, 622 F.2d 179, 181 (5th Cir. 1980). Here, however, although Plaintiff purports to allege a direct federal constitutional physical takings claim arising under the United States Constitution, no such direct cause of action exists,[9] and under the controlling

---

[8] Response at 11-12. See Complaint, ¶1 ("This Court has jurisdiction over this Complaint under 28 U.S.C. §1334 as it arises from or relates to the main bankruptcy case.").

[9] The primary United States Supreme Court case Porretto relies upon, *Knick v. Township of Scott,* 139 S. Ct. 2162 (2019), repeatedly states that the proper vehicle for asserting a federal constitutional takings claim against a local government entity is a statutory claim under 42 U.S.C. §1983, not a direct claim under the United States Constitution. *See, e.g.*, *Knick*, 139 S. Ct. at 2168 (the "property owner [who] has suffered a violation of Fifth Amendment rights when the government takes his property without just compensation . . . may bring his claim in federal court under §1983"); *id*. at 2169-70 ("Plaintiffs asserting any other constitutional claim are guaranteed a federal forum under §1983"); *id*. at 2171 ("[I]t is the existence of the Fifth Amendment right that allows the owner to proceed directly under §1983"); *id*. at 2172 ("someone whose property has been taken by a local government has a claim under §1983 for a 'deprivation of [a] right . . . secured by the Constitution' that he may bring upon the taking in federal court"); *id.* at 2177 n.8 ("the Civil Rights Act of 1871 [is] part of 'judicial federalism' . . . [with] the availability of a federal cause of action when a local government violates the Constitution. 42 U.S.C. §1983."); *id*. at 2179 ("A property owner may bring a takings claim under §1983 upon the taking of his property without just compensation by a local government.").

No direct takings cause of action against a local government entity exists under the federal constitution. *See, e.g., Hearth, Inc. v. Dep't of Public Welfare*, 617 F.2d 381, 382-83 (5th Cir. 1980); *Valco Instruments Co., L.P. v. Spring Branch Mgmt. Dist.*, No. 4:08-cv-01055, 2009 U.S. Dist. LEXIS 152970, at *4-5 (S.D. Tex. Jan. 27, 2009) (granting Rule 12(b)(6) motion dismissing direct federal takings claim) (Ellison, J.); *Morin v. Mental Health Mental Retardation Auth.*, No. H-05-2520, 2006 U.S. Dist. LEXIS 40653, at *4-7 (S.D.

authorities Porretto cannot state any such claim.[10] Dismissal under Rule 12(b)(1) therefore is appropriate, and Porretto should not be afforded a *fourth* opportunity to amend.[11]

---

Tex. June 19, 2006) (Ellison, J.); *Janik v. City of Dallas*, No. 3:95-CV-2594-D, 1998 U.S. Dist. LEXIS 5827, at *8-9 (N.D. Tex. Apr. 16, 1998) ("It is settled that plaintiffs cannot bring a civil action against the City except through the remedial device of 42 U.S.C. §1983," dismissing direct federal takings claim), *aff'd without op.*, 226 F.3d 641 (5th Cir. 1998).

[10] Porretto has not alleged – and, consistent with counsel's obligations under FED. R. CIV. P. 11, she cannot allege facts sufficient to state – an actionable §1983 claim against the Galveston Defendants, which requires pleading and proof of "(1) an official policy (2) promulgated by the [governmental] policymaker (3) was the moving force behind the violation of a constitutional right" and that such a policy to violate constitutional rights was adopted "with deliberate indifference to the known or obvious fact that such constitutional violations would result." *Estate of Chapa v. City of Alvin*, No. 3:20-cv-00362, 2021 U.S. Dist, LEXIS 135741, at *13-14 (S.D. Tex. July 21, 2021)(citing and quoting *Trammell v. Fruge,* 868 F.3d 332, 344 (5th Cir. 2017) (quoting *Peterson v. City of Fort Worth,* 588 F.3d 838, 847 (5th Cir. 2009), *James v. Harris Cty.,* 577 F.3d 612, 617 (5th Cir. 2009) (quoting *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force,* 379 F.3d 293, 309 (5th Cir. 2004)). Nor has Porretto purported to identify the requisite particular governmental policymaker, since a plaintiff must distinguish acts attributed to a government entity through its final policymaker from isolated acts by individual employees. *Estate of Chapa*, 2021 U.S. Dist. LEXIS 135741, at *14 (citing *Zarnow v. City of Wichita Falls,* 614 F.3d 161, 168 (5th Cir. 2010)).

[11] Although district courts should generally give a plaintiff at least one chance to amend her complaint, here Porretto has already had three such opportunities, and her most recent pleading remains "a haphazard combination of repetitious factual allegations, scattered arguments, and conclusory statements punctuated with legal buzz words." *Harris v. Wal-Mart Stores Tex.*, No. 3:19-cv-000248, 2020 U.S. Dist. LEXIS 148236, at *8 (S.D. Tex. May 6, 2020). Porretto also has disregarded multiple admonitions that the proper mechanism for asserting any purported constitutional claim against the Galveston Defendants is through a §1983 action, and she should not now be allowed to amend for a fourth time, to include such a claim. *See* Motion to Dismiss/Abstain by the Galveston Park Board of Trustees and the City of Galveston [Doc. No. 18], p. 7 & n. 10; Response and Opposition of The Galveston Park Board of Trustees and the City of Galveston to Plaintiff's Verified Emergency Motion for Temporary Restraining Order and Request for Order to Show Cause [Bankr. Doc. No. 58], pp. 3-4. *Cf. Esparza v. Galveston Coll.*, No. 3:21-cv-176, 2021 U.S. Dist. LEXIS 238293, at *7, *7 n.2 (S.D. Tex. Dec. 1, 2021)(amendment futile where sufficient facts not plead to bring claim within statute and waiver found where plaintiff "repeatedly disclaimed" any attempt to plead claim).

Alternatively, if the Court should "determine[] that the basis of federal jurisdiction is in fact 'intertwined with the plaintiff's federal cause of action'" and that Porretto's alleged federal claims do not "appear[] to be immaterial and made solely for the purpose of obtaining jurisdiction or . . . wholly insubstantial and frivolous," then "the court should assume jurisdiction over the case and decide the case on the merits" of the Galveston Defendants' Rule 12(b)(6) motion. *Sheffield v. Bush*, No. 3:21-cv-122, 2022 U.S. Dist. LEXIS 92787, at *10-15 (S.D. Tex. May 24, 2022)(quoting and citing *Clark v. Tarrant Cty., Tex.*, 798 F.2d 736, 742 (5th Cir. 1986) and *Williamson v. Tucker*, 645 F.2d 404, 415 (5th Cir. 1981)). Because no direct federal constitutional cause of action exists that can be asserted against the Galveston Defendants, and because Porretto has not stated, and cannot state, a viable federal claim against them under 42 U.S.C. §1983, for those reasons alone the Court should dismiss her federal claims.[12]

## III.
## The Galveston Defendants Remain Immune from Porretto's State Law Claims.

The Park Board is a local government entity formed pursuant to TEX. LOC. GOV'T CODE ANN. §306.011 *et seq*.; GALVESTON, TEX. CODE §26-47 (1982). The City is an

---

[12] In addition, Porretto has failed to state a claim upon which can be granted against the Galveston Defendants under any theory because: (1) Porretto has not stated a viable federal constitutional claim against the City, Motion to Dismiss at 15 & n. 23; (2) all of Porretto's purported federal constitutional claims arising before June 24, 2019 are barred by limitations, Motion to Dismiss at 15-16; (3) all of Porretto's state law claims are barred by immunity against liability, Motion to Dismiss at 17; (4) no "settlement agreement" continued to exist after December 19, 2011 and any purported breach is barred by the applicable four-year limitations period, Motion to Dismiss at 18; (5) Porretto has not stated a viable accounting and reimbursement claim, Motion to Dismiss at 19-20; (6) Porretto has not alleged a viable State constitutional inverse condemnation claim, Motion to Dismiss at 20-22).

incorporated Texas "home rule" city. CITY OF GALVESTON, TEX. CHARTER art. I, §4.[13]

Porretto is mistaken in her belief that it is incumbent on the Galveston Defendants to establish a basis for their governmental immunity.[14] Because the Galveston Defendants are government units under Texas law, Porretto has the burden affirmatively to demonstrate a valid immunity waiver. *Alamo Forensic Servs., LLC v. Bexar Cty*., 861 F. App'x 564, 568 (5th Cir. 2021)(citing *Rusk State Hosp. v. Black*, 392 S.W.3d 89, 96 (Tex. 2012)); *Bryant v. Dayton Indep. Sch. Dist.*, No. H-21-1547, 2021 U.S. Dist. LEXIS 150788, at *26 (S.D. Tex. Aug. 11, 2021).

As discussed in greater detail in the Motion to Dismiss, [15] the Park Board and the City possess governmental immunity from both suit and from liability with respect to all

---

[13] The Park Board and the City request that the Court take judicial notice of the relevant statute and portions of the City Code and City Charter per FED. R. EVID. 201; *Demos v. City of Indianapolis*, 302 F.3d 698, 706 (7th Cir. 2002) (observing that "a district court can always rely on public statutes" and concluding that "matters of public record such as state statutes, city charters, and city ordinances fall within the category of 'common knowledge' and are therefore proper subjects of judicial notice")(quotation and citation omitted)); *see also Overton v. City of Austin*, 748 F.2d 941, 954, 955 n.15 (5th Cir. 1984) (citing Texas cases which permit courts to take judicial notice of city charters and the incorporated status of home rule cities).

[14] Response at 16 ("The Defendants have not established a basis for immunity.").

[15] *See* Motion to Dismiss at 9-13, 17. *See USA Promlite Tech.,* 2020 Bankr. LEXIS 3441, at *9-10("A defendant's correct assertion of governmental immunity is reason to grant a motion to dismiss under Rule 12(b)(1) because the court lacks subject matter jurisdiction to adjudicate the dispute." *Id.*, at *10 (granting 12(b)(1) motion to dismiss breach of contract, unjust enrichment and quantum meruit claims based on city's governmental immunity) (citing *Springboards to Educ., Inc.*, 2017 U.S. Dist. LEXIS 221322, at *5-6 (granting school district's Rule 12(b)(1) motion to dismiss because it was entitled to governmental immunity)).

of Porretto's state law claims, and none of Porretto's few immunity waiver arguments have any merit, because:

- Porretto has not pled, and Texas law does not provide, a waiver of governmental immunity for Porretto's alleged tort claims.[16] *See* TEX. CIV. PRAC. & REM. CODE ANN. §§101.001 *et seq.* (preserving governmental immunity except in limited circumstances involving motor-driven vehicles or equipment or involving personal injury or death, which are not present here). Porretto's invocation of the Texas Tort Claims Act does not impact the Park Board's or the City's governmental immunity.[17] To the contrary, the Texas Tort Claims Act explicitly "does not apply to a claim arising out of . . . [an] intentional tort" like tortious interference. *Id.* §101.057(2); *Holloway v. Skinner*, 898 S.W.2d 793, 795-96 (Tex. 1995) (stating that tortious interference is an intentional tort); *see also City of Hous. v. Guthrie*, 332 S.W.3d 578, 593 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (holding that the Act "does not waive sovereign immunity for intentional torts," including tortious interference with contract); *Ethio Express Shuttle Serv. v. City of Hous.*, 164 S.W.3d 751, 758 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (same).

  Porretto's passing reference to a potential immunity waiver for proprietary acts (Response at 16) is irrelevant and inapplicable because: (i) Porretto has not pleaded that the Galveston Defendants engaged in any so-called proprietary conduct; (ii) the proprietary function doctrine is inapplicable to the Park Board, which is not a municipality;[18] and (iii) the conduct about which Porretto complains is statutorily-defined governmental activity to which the proprietary function doctrine is inapplicable.[19]

---

[16] *See* Complaint, ¶¶133-135 (state-law tort claim), 157-59 (Texas Tort Claims Act claim).

[17] Porretto specifically invokes TEX. CIV. PRAC. & REM. CODE ANN. §101.0215(a)(33), *see* Complaint, ¶159, which deals with a municipality's animal control functions and is wholly irrelevant.

[18] The distinction between governmental and proprietary functions only applies to municipalities; it is inapplicable to other government entities such as the Park Board. *See, e.g.*, *Wasson Interests, Ltd. v. City of Jacksonville*, 489 S.W.3d 427, 430 (Tex. 2016).

[19] Governmental flood control measures are "governmental functions." The Texas Legislature has determined that they are. *See* TEX. CIV. PRAC. & REM. CODE §§101.0215(a)(4), (a)(9), (11), (19), (30) & (32). Where, as here, challenged municipal conduct falls within one of the specific statutorily-designated activities listed in §101.0215, a court has no discretion to ignore that legislative determination and instead treat the conduct as if it were proprietary. *City of Hous. v. Downstream Envtl., L.L.C.,* 444 S.W.3d 24, 34 (Tex. App.—Houston [1st Dist.] 2014, no pet.). Consistent with the Legislature's

- Porretto has not pled, and Texas law does not provide, a waiver of governmental immunity for Porretto's alleged breach-of-contract claim.[20] *See* TEX. LOC. GOV'T CODE ANN. §271.156 (preserving governmental immunity for contract actions brought against local government entities in federal court).[21]

  Porretto does not mention, much less address, the statutory exemption which provides that even the limited immunity waiver in the Texas Local Government Code is inapplicable in federal court, and the single case cited regarding a potential immunity waiver, *City of Corinth v. Nu Rock Dev., Inc.*, 293 S.W.3d 360 (Tex. 2009), is likewise inapplicable because that doctrine is implicated only when a governmental entity has settled a claim for which immunity from suit has been waived, and no such immunity waiver existed with respect to the 2010 agreements between the Park Board, the City, and Porretto and the 2015 agreement between the

---

determination, Texas courts have held that municipal actions "in furtherance of flood control . . . are governmental functions as a matter of law." *City of Friendswood v. Horn*, 489 S.W.3d 515, 523 (Tex. App.—Houston [1st Dist.] 2016, no pet.) ("Because the Legislature has designated these activities to be governmental functions, their character as governmental functions is conclusively established."); *see also City of New Braunfels v. Carowest Land, Ltd.*, 432 S.W.3d 501, 520 (Tex. App.—Austin 2014, no pet.).

[20] *See* Complaint, ¶¶129-32 (state-law breach-of-contract claim).

[21] *USA Promlite Tech.*, 2020 Bankr. LEXIS 3441, at *21-22, *22 n.109 (citing *Smith v. Hous. Ind. Sch. Dist.*, 229 F. Supp. 3d 571, 576, 582 (S.D. Tex. 2017) (dismissing breach of contract claim based on finding that school district was entitled to governmental immunity and section 271.156 of the Texas Local Government Code "explicitly exempts suits in federal court from [limited] waiver found in section 271.152")); *Nationwide Pub. Ins. Adjusters Inc. v. Edcouch-Elsa I.S.D.*, 913 F. Supp. 2d 305, 310-12 (S.D. Tex. 2012) (dismissing breach of contract claim based on finding that school district was acting in its governmental capacity and plaintiff had not shown that the school district waived that immunity, particularly because immunity could not be waived in federal court pursuant to Texas Local Government Code section 271.156); *Olford v. City of Hous.*, No. H-17-3421, 2018 U.S. Dist. LEXIS 108965, at *18 (S.D. Tex. June 29, 2018) (dismissing breach of contract claim based on finding that "[t]he Texas Local Government Code makes it clear that immunity is not waived for breach of contract claims in federal court"); *Scherff v. S. Tex. Coll.*, No. 7:16-CV-658, 2017 U.S. Dist. LEXIS 141458, at *25, *56 (S.D. Tex. Aug. 31, 2017) (dismissing breach of contract claim based on finding that plaintiff did not show that a statutory waiver of immunity applied to the college, but stating that "even if [plaintiff] had, the [c]ourt independently notes that the waiver set forth by §271.152 'does not waive sovereign immunity in suit in federal court'") (citing TEX. LOC. GOV'T CODE ANN. §271.156); *Alamo Forensic Servs., LLC v. Bexar Cty.*, No. SA-20-CV-38-XR, 2020 U.S. Dist. LEXIS 88317, at *7 (W.D. Tex. May 19, 2020) (dismissing breach of contract and quantum meruit claim based on a finding that governmental immunity cannot be waived in federal court under Texas Local Government Code section 271.156)).

Park Board and the bankruptcy trustee, none of which give rise to Porretto's sand-mining or flowage easement claims.[22]

- Porretto has not pled, and Texas law does not provide, a waiver of governmental immunity for Porretto's alleged claim under the Texas Water Code.[23] *See City of Midlothian v. Black*, 271 S.W.3d 791, 795-98 (Tex. App.—Waco 2008, no pet.) (holding that the Legislature did not clearly and unambiguously waive immunity for a violation of TEX. WATER CODE ANN. §11.086(a)); *Konark Ltd. P'ship v. BTX Sch., Inc*., 580 S.W.3d 194, 201 n.2 (Tex. App.—San Antonio 2018, pet. denied); *City of Leon Valley v. WM. Ranchere States Joint Venture*, No. 04-14-00542-CV, 2015 Tex. App. LEXIS 5124, at *8 (Tex. App.—San Antonio May 20, 2015, no pet.).

- Porretto has not pled a viable claim for inverse condemnation or takings under the Texas Constitution sufficient to invoke a waiver of the City's governmental immunity.[24] *See Five Corners Improvement Dist. v. JKO Enters., LLC*, No. 14-20-00116-CV, 2021 Tex. App. LEXIS 3398, at *5, 2021 WL 1745351 (Tex. App.—Houston [14th Dist.] May 4, 2021, pet. denied) (stating that a plaintiff must plead a viable claim, not simply invoke the constitution, to invoke a waiver of immunity over state constitutional claims); *City of Dallas v. Blanton*, 200 S.W.3d 266, 272 (Tex. App.—Dallas 2006, no pet.) ("When a plaintiff does not allege a valid inverse condemnation claim, governmental immunity applies."). None of the conduct Porretto attributes to the Park Board or the City states a viable takings or inverse condemnation claim.[25]

---

[22] *See* Response at 3 n.1; Bankr. Doc. No. 168 (authorizing *Porretto* to obtain an annual permit to scrape sand from Porretto Beach, which terminated when the Trustee was appointed on December 19, 2011); Bankr. Doc. No. 195 (obligating *Porretto* to perform shoreline cleanup and providing that the Park Board would perform designated lifeguard services and trash pickup, which terminated when the Trustee was appointed on December 19, 2011); Bankr. Doc. No. 553 (relieving the Park Board of any obligation to perform shoreline cleanup adjacent to Porretto Properties, and providing Park Board would perform designated trach pickup and beach patrol, not allow concessionaires on the Porretto Properties, and engage a surveyor with the Trustee to locate the then-current Mean Higher High Tide line for Porretto Beach West, which terminated when Porretto Beach was abandoned to Porretto on June 25, 2020). *See also* Motion to Dismiss at 18.

[23] *See* Complaint, ¶¶136-41 (Texas Water Code claim).

[24] *See* Complaint, ¶¶111-13 (state-law inverse condemnation claim), 119-24 (Texas Constitution takings claim); *see also* discussion in Motion to Dismiss Part III(F)(3).

[25] *See* discussion in Motion to Dismiss Part III(F)(3). With respect to the City, Porretto variously complains that the City sent correspondence rejecting her purported objections to the Stewart Beach Drainage Project (Complaint, ¶¶24-25), appoints Park Board members, which it is statutorily-authorized to do (*id*., ¶¶39, 53), approved a Park Board

- No government immunity waiver occurred under 11 U.S.C. §106.[26] The provision Porretto cites is irrelevant here because: (i) Section 106(a) only abrogates sovereign immunity with respect to specific enumerated bankruptcy code sections, 2 COLLIER ON BANKRUPTCY ¶106.04 (16th ed. 2022) (citing *Sindram v. U.S. Marshals Serv. (In re Sindram)*, No. 08-00559, 2010 Bankr. LEXIS 1297, at *10 (Bankr. D.D.C. Apr. 20, 2010) (finding that because no Bankruptcy Code sections applicable to waiver under §106(a) were alleged in the complaint sovereign immunity was not waived)); *see also Lankford v. State (In re Lankford)*, 261 B.R. 410, 413 (Bankr. N.D. Tex. 2001) (noting that §106(a) abrogates sovereign immunity for core bankruptcy matters); (ii) Porretto has not alleged a claim in her Complaint under any of the enumerated sections; and (iii) any resulting relevant waiver would only apply to the enumerated section. Section 106(b) similarly effects a limited immunity waiver if a proof of claim were filed, but only to the extent of compulsory counterclaims that constitute property of the estate.[27]

---

request for a city permit for the Stewart Beach Drainage Project (*id*., ¶44), did not provide adequate oversight over the Park Board (*id*., ¶54), asserts on information and belief the City has had Porretto Beach surveyed (*id*., ¶56), knew or should have known of the misconduct Porretto alleges about the Park Board and failed to cause it to rectify her complaints (*id*., ¶57), asserts on information and belief there may be unspecified sewage leaks from City pipes (that are not alleged to have contaminated Porretto's property) (*id*., ¶69), claims the City has monitored Porretto's compliance with City regulations (*id*., ¶¶73-75), claims the City purportedly denied Porretto a water hookup at some unspecified date in the past (*id*., ¶82), sent Porretto a violation notice regarding the City's sign ordinance (*id*., ¶84), has not been responsive to her complaints about past allegations of sand theft (*id*., ¶85), ran a fire hydrant during inclement weather that caused water to run down a Porretto Beach ramp in violation of fire code provisions (*id*., ¶87), and sent a utility shut off notice to Porretto's mother for a water bill (*id*., ¶88). None of this purported conduct, taken individually or collectively, constitutes a taking or damaging of property actionable under the Texas Constitution.

[26] *See* Response at 13-14.

[27] Any such claim must also meet the standards of a compulsory counterclaim under Federal Rule of Civil Procedure 13(a) and must arise out of the same transaction or occurrence. *Orion Ref. Corp. v. Dep't of Revenue (In re Orion Ref. Corp.)*, No. 03-11483, 2004 Bankr. LEXIS 2312, at *7 (Bankr. M.D. La. May 28, 2004); *see also* 2 COLLIER ON BANKRUPTCY ¶106.05 (16th ed. 2022). In deciding whether a counterclaim is compulsory, courts should inquire: (1) whether the issues of fact and law raised by the claim and counterclaim largely are the same; (2) whether *res judicata* would bar a subsequent suit on defendant's claim absent the compulsory counterclaim rule; (3) whether substantially the same evidence will support or refute plaintiff's claim as well as defendant's counterclaim; and (4) whether there is any logical relationship between the claim and the counterclaim. *Tank Insulation Int'l, Inc. v. Insultherm, Inc.,* 104 F.3d 83, 85-86 (5th Cir. 1997) (citations omitted). Here, Porretto cannot credibly allege that any of these criteria are satisfied,

Porretto's claims here are not property of the estate, the bankruptcy estate has been fully administered, and no relevant counterclaim, therefore, is at issue. Although the City previously filed a proof of claim (which was later withdrawn), any claims later asserted against the City based upon a Section 106(b) immunity waiver *must* be property of the estate. 11 U.S.C. §106(b) ("that is property of the estate"); *see also In re Supreme Beef Processors, Inc.*, 468 F.3d 248, 256 (5th Cir. 2006) (noting that if a government unit files a proof of claim it is subject to any compulsory counterclaims that the estate may hold that are property of the estate). "Because counterclaims or offset claims against governmental entities must be 'property of the estate,' they are not freestanding and divorced from the substantive limitations that would be imposed outside of bankruptcy." *Id.* And because Porretto is the party asserting claims against the Galveston Defendants, not the Trustee, the Trustee abandoned the Property, *and* the acts alleged in the Complaint that are not barred by limitations occurred after abandonment, Porretto cannot legitimately contend that her claims are property of the estate and thus implicate a limited government immunity waiver under Section 106(b). *Id.* (finding sovereign immunity not waived because Supreme Beef held no claim that was property of the estate).

- <u>No government immunity waiver occurred due to the submission of the Joint Discovery Plan/Case Management Plan</u>.[28] Setting aside the specious nature of Porretto's contention that a government entity can effect a waiver of its governmental immunity simply by participating in the filing of a joint discovery/case management plan, Porretto's representation that "[n]one of the defendants made any assertion of governmental immunity" in that document is incorrect. Two such documents were filed: one when the case was pending in bankruptcy court and another when the case was transferred to this Court. In the first document, Defendants stated that they denied and disputed Porretto's allegations, denied that the Bankruptcy Court had jurisdiction over Porretto's claims, and proposed that various obligations be deferred pending resolution of the then "pending jurisdictional and abstention motions."[29] In the document filed in this Court, the Galveston Defendants specifically, expressly, and unambiguously stated their position that: "The Court . . . lacks federal question jurisdiction over the Galveston Defendants *due to their governmental immunity and other defenses justifying dismissal*, including that Porretto fails to state a claim."[30]

---

because her claims have nothing to do with the payment of taxes that was earlier the subject of the City's proof of claim.

[28] Response at 14-15.

[29] *See, e.g.*, Doc. No. 25 at ¶¶3, 5, 8, 9(A), 10, 14, 15.

[30] Doc. No. 64 at ¶5 (emphasis added).

- The so-called "gratuity waiver" doctrine is factually and legally inapplicable. The immunity waiver doctrine Porretto attempts to invoke is inapplicable.[31] The doctrine discussed in the cases Porretto cites (*Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 277-79 (5th Cir. 2005)(en banc) and *Islander E. Pipeline Co., LLC v. Conn. Dep't of Envtl. Prot.*, 482 F.3d 79 (2d Cir. 2006)) is that "[a] state may waive its immunity by voluntarily participating in federal spending programs when Congress expresses a clear intent to condition participation in the programs … on a State's consent to waive its constitutional immunity" and that "a non-verbal voluntary waiver of a state's Eleventh Amendment immunity [may be obtained], if the waiver can be inferred from the state's conduct in accepting a gratuity after being given clear and unambiguous statutory notice that it was conditioned on waiver of immunity." *Pace*, 403 F.3d at 280 n.33 (quoting *AT&T Comm. v. BellSouth Telecom. Inc.*, 238 F.3d 636, 645 (5th Cir.), *reh'g en banc denied*, 252 F.3d 437 (2001)). That doctrine is factually inapplicable here because Porretto has not alleged that the Galveston Defendants voluntarily participated in any federal spending program where Congress expressly conditioned participation on waiver of their governmental immunity or that they accepted any such "gratuity" after being given clear and unambiguous notice that participation was conditioned on any such immunity waiver. Moreover, the doctrine is legally inapplicable here because it concerns a waiver of a state's Eleventh Amendment immunity, an immunity inapplicable to the Galveston Defendants. The cited cases say nothing about the potential applicability of the "gratuity waiver" doctrine to the governmental immunity the Galveston Defendants possess.

* * *

The Park Board and the City again respectfully request that the Court grant their Motion to Dismiss, dismiss Porretto's claims against them, and grant them such other and further relief, at law or in equity, to which they may show themselves to be justly entitled.

[31] Response at 16.

Respectfully submitted,

By: */s/ Barry Abrams*

Barry Abrams
Attorney-in-Charge
State Bar No. 00822700
S.D. Tex. Bar No. 2138
Neil F. Young
State Bar No. 24121218
S.D. Tex. Bar No. 3635269
BLANK ROME LLP
717 Texas Avenue, Suite 1400
Houston, Texas 77002
(713) 228-6601
(713) 228-6605 (fax)
barry.abrams@blankrome.com
neil.young@blankrome.com

**ATTORNEYS FOR DEFENDANTS THE GALVESTON PARK BOARD OF TRUSTEES AND CITY OF GALVESTON**

## CERTIFICATE OF SERVICE

I certify that on June 14, 2022, a true and correct copy of the foregoing and/or attached instrument was served via the Court's Electronic Filing System on all parties requesting notice in this Proceeding.

*/s/ Barry Abrams*
Barry Abrams