IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| Sonya Porretto, § | |
|     Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. 3:21-cv-00359 |
| § | |
| The City of Galveston Park Board of § | |
| Trustees, *et al.,* § | |
|     Defendant. § | |

**NOTICE OF RESERVATION OF RIGHTS,
OBJECTION, AND PRESERVING ALL CLAIMS
<u>RELATED TO PENDING LITIGATION</u>**

    Since this litigation has been filed, the Defendants continue to take actions related to the pending causes of action and allegations in the Third Amended Complaint. Ms. Porretto has already removed one case related to this proceeding which is styled *City of Galveston v. Sonya Porretto,* Civil Action No. 3:22-CV-00256.

    Despite this pending litigation and numerous specific allegations in the Third Amended Complaint regarding the Defendants' use of false erosion ratings and improper scraping of the beachfront, the Defendants are participating in further actions to perpetuate the false and/or misleading information in order to obtain Federal funding.

    Ms. Porretto recently learned the U.S. Army Corps of Engineers Galveston District ("COE"), in partnership with the Defendant, the City of Galveston, has prepared a *Draft Detailed Project Report and Environmental Assessment (DDPR-EA) and Finding of No Significant Impact (FONSI) for the Galveston Island Coastal Erosion, Galveston, Texas, continuing authorities study as authorized by Section 204 of the Water Resources Development Act of 2016* ("Joint Public Notice") which was open for public comment with such comments due on August 15, 2022.

In addition, the materials for the Joint Public Notice show that other defendants are also involved and that the Joint Public Notice is inadequate.[1] While the Joint Public Notice states that it is on behalf of the COE and City of Galveston, that is inconsistent with the documents linked in the Joint Public Notice. The documents linked with the Joint Public Notice are inconsistent:

1) One document states the Non-Federal Sponsor is the City of Galveston *in partnership with* the Texas General Land Office ("GLO") (emphasis added) https://www.swg.usace.army.mil/Portals/26/DDPR204Galv8Jul22%20-%20DRAFT_1.pdf (p. ES-4); and,

2) Another document shows that the Galveston Park Board of Trustees ("Park Board") was the original Non-Federal Sponsor, despite the fact that the Park Board owns no beach property. https://www.swg.usace.army.mil/Portals/26/REPGalvDDPR204AppdxD27May22%20-%20DRAFT_1.pdf ) (p. 11). That document states the Non-Federal Sponsor is solely the City of Galveston and suggests the GLO participated only in the feasibility portion of the project.

The Joint Public Notice documents include a letter dated November 23, 2020[2] from the Park Board specifically noting that the proposed project has an impact on the Seawall area. Ms. Porretto's beachfront property which is the subject of this case is along the Seawall. The Park Board states "Although the Seawall was designed to stand alone, it is susceptible to flanking. The presence of a wide beach seaward of the Seawall helps protect this infrastructure and preserve the residential, commercial, environmental and other assets located behind the structure." The Park Board did not provide anything to support these conclusory allegations and the letter is cited to merely to show that the Park Board acknowledges a project on the west side impacts the property on the Seawall.

The Joint Public Notice includes environmental assessments ("EA's") and findings of no significant impact ("FONSI") which Ms. Porretto asserts fails to comply with the requirements for a joint public notice, EA or FONSI.

---

[1] In a letter dated May 3, 2022, the Galveston City Manager represented that the City "remains willing and able to facilitate the funding of incremental cost which may arise through future approvals by our Industrial Development Corporation" ("IDC"). https://www.swg.usace.army.mil/Portals/26/DDPR204Galv8Jul22%20-%20DRAFT_1.pdf (p.65). A quick search of the Galveston City Council meeting agenda action items and IDC meeting agenda action items did not find where this position was approved if it was approved. The majority of the IDC Board members are councilmembers, including Galveston Mayor Brown, Councilmember Collins, Councilmember Robb, and Councilmember John Listowski. Notably, the August 16, 2022 Agenda for the IDC includes an agenda item to support the extension of a 4b Sales Tax which, in part, funds beach nourishment and according to the materials does not currently expire until April 1, **2029.** https://galvestontx.gov/AgendaCenter/ViewFile/Agenda/4410?html=true

[2] The full letter is not included in the Joint Public Notice. https://www.swg.usace.army.mil/Portals/26/DDPR204Galv8Jul22%20-%20DRAFT_1.pdf (See, p. 61 *et seq.*)

For example, the Joint Public Notice documents fail to disclose the manmade alterations by scraping and excavation which altered the topography and created erroneous erosion/accretion rates as acknowledged by a 2015 Judgment in Ms. Porretto's favor where it was decided by final judgment that Porretto's property was accreting for the 24 years prior to the judgment. The continued use of uncorrected data after the 2015 Judgment shows a lack of good faith, especially given this pending litigation where the Third Amended Complaint specifically raises concerns with erosion data.

In an abundance of caution, Ms. Porretto is submitting the attached preliminary objection to the Joint Public Notice without waiving any rights, specific objections, and claims in the pending litigation with a full reservation of rights. A copy of the objection is attached as **Exhibit A**.

## RESERVATION OF RIGHTS

Ms. Porretto reserves all rights to amend or supplement the objection to the Joint Public Notice in all respects, as may be necessary or appropriate, but shall be under no obligation to do so. Nothing contained in this Notice or attached objection shall constitute a waiver or release of any claims or rights. Further, nothing in the objection shall be deemed an admission or denial related to the pending litigation and all responses related to the pending litigation are reserved, preserved, and shall not be prejudiced.

/s/Deirdre Carey Brown

Deirdre Carey Brown, pllc
Texas Bar No. 24049116
FORSHEY & PROSTOK, LLP
1990 Post Oak Blvd., Suite 2400
Houston, Texas 77056
Ph 832-536-6910
Fax 832-310-1172
dbrown@forsheyprostok.com
Counsel for Ms. Porretto

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of this Notice with attached Preliminary Objection was served via ECF to the parties identified below and via email to the parties listed below on August 15, 2022:

**Via ECF**
Autumn Dawn Highsmith     autumn.highsmith@oag.texas.gov

Barry Abrams     babrams@BlankRome.com, mhindman@blankrome.com, pljohnson@BlankRome.com

Catherine Bennett Hobson     katie.hobson@oag.texas.gov

Deirdre Carey Brown     dbrown@forsheyprostok.com, brown.hsllp@gmail.com, calendar@forsheyprostok.com, dcbfirm@gmail.com, deirdrecbrown@yahoo.com

Jason Bradley Binford     jason.binford@oag.texas.gov

Jessica Amber Ahmed     amber.ahmed@oag.texas.gov, erynn.campesi@oag.texas.gov, laura.courtney@oag.texas.gov

Shelly Magan Doggett     shelly.doggett@oag.texas.gov, david.laurent@oag.texas.gov, laura.courtney@oag.texas.gov

**Via E-Mail**

Raven Blakeway,
Regional Planning and Environmental Center
2000 Fort Point Rd
Galveston, TX 77550
Raven.Blakeway@usace.army.mil

Federal Emergency Management Agency
Mitigation Division – Region 6
Attn: Charles Cook, Floodplain Mgmt. & Ins. Branch Chief
800 North Loop 288
Denton, TX  76209
Charles.Cook4@fema.dhs.gov

National Oceanic and Atmospheric Administration
Office for Coastal Management
Attn: Heidi Stiller, South Regional Director
2234 South Hobson Ave.
Charleston, SC  29405-2413
Heidi.Stiller@noaa.gov

U.S. Army Corps of Engineers
Galveston District, Regulatory Division
Attn:  Joseph McMahan, Chief
P.O. Box 1229
Galveston, TX  77553-1229
Joseph.A.Mcmahan@usace.army.mil

U.S. Fish and Wildlife Services
Clear Lake Ecological Services Field Office
Attn:  Amber Bearb
17629 El Camino Real #211
Houston, TX  77058
amber_bearb@fws.gov

U.S. Fish and Wildlife Services
Clear Lake Ecological Services Field Office
Attn:  Amber Bearb
17629 El Camino Real #211
Houston, TX  77058
amber_bearb@fws.gov

Texas Commission on Environmental Quality
Attn:  NEPA Coordinator
P.O. Box 13087
Austin, TX  78711-3087
NEPA@tceq.texas.gov

Ms. Marie Archambeault
Texas Historical Commission
P.O. Box 12276
Austin, Texas 78711
reviews@thc.state.tx.us

Texas Parks and Wildlife Department
Attn:  Laura Zebehazy
4200 Smith School Rd.
Austin, TX  78744
WHAB@tpwd.texas.gov


IDC Board Member Bill Coltzer bill@z6consulting.com> and bcoltzer@zgconsulting.com>;

IDC Board Member Terrilyn Tarlton-Shannon <terrilyn@sbcglobal.net>;

       / s/ Deirdre Carey Brown
       Deirdre Carey Brown

# EXHIBIT A



**Galveston Island, Texas**
**(6th to 10th, 11th to 12th, 14th to 16th, 26th to 27th 'On the Beach')**

August 15, 2022

Sonya M. Porretto c/o                                                                                           **VIA: Email** (10 Pages)
Porretto Beaches
Mailing Address:
7 East Dansby Drive
Galveston, Texas 77551
(281) 808-3431
smpbeach@aol.com


Dr. Raven Blakeway, Biologist,
Environmental Branch
Regional Planning and Environmental Center
2000 Fort Point Rd,
Galveston, TX 77550,
Raven.Blakeway@usace.army.mil.


Re:   **OBJECTION TO JULY 15, 2022 , JOINT PUBLIC NOTICE DRAFT DETAILED PROJECT REPORT AND ENVIRONMENTAL ASSESSMENT FOR THE PROPOSED U.S. ARMY CORPS OF ENGINEERS GALVESTON ISLAND COASTAL EROSION, GALVESTON, TEXAS STUDY**

Dear Dr. Raven Blakeway,

Please allow this communication to serve as:

> An **Objection** to the project identified in July 15, 2022, Public Notice of the "Draft Detailed Project Report and Environmental Assessment for the Proposed US Army Corps of Engineers Galveston Island Coastal Erosion Galveston Texas Study"

1. *Establishing Timely Response For Objection*
This objection has been delivered by email to your posted email address and copy mailed to your office located at 2000 Fort Point Rd Galveston, TX 77550, on August 15, 2022.

2. *Establishing "Standing" and "Stakeholder" For Objection*
The Law Dictionary defines a *Stakeholder* as, "A group organization ***or person*** who has a stake that can be affected by the organizations objective – policies and actions."

1

- I am a U.S. citizen, fourth generation resident of Galveston Island, Texas, and one of the largest historical accreting, dry, stable private beachfront real property owners along the east end of the original planned Galveston Island.
- My properties, rights, uses, characteristics, factual data, and ability to protect are required by local, state, and federal law thus, this objection serves as such exercised right.
- My historical properties and business operations upon these properties are located south of the original Seawall. The "legal" property descriptions as filed in Galveston County real estate records for over 100 years are attached in Exhibit 'A'.
- The Galveston County Central Appraisal District property identification numbers *and* Galveston County Tax Accessor Property identification numbers are also on record with Galveston County for over 60 years.

3. My Objection is based on one or more of the following omitted, contradicting, inconsistent and missing information required within the Public Notice therefore, the proposed project cannot be considered complete for comment until necessary data, documents and information is provided within the Public Notice. Until the necessary information is included complete within the Public Notice my objection stands based on the following:

## 33 CFR § 325.3 Public notice.

(a) *General.* The public notice is the primary method of advising all interested parties of the proposed activity for which a permit is sought and of soliciting comments and information necessary to evaluate the probable impact on the public interest. The notice must, therefore, include sufficient information to give a clear understanding of the nature and magnitude of the activity to generate meaningful comment. The notice should include the following items of information:

(1) Applicable statutory authority or authorities;

(2) The name and address of the applicant;

(3) The name or title, address and telephone number of the Corps employee from whom additional information concerning the application may be obtained;

(4) The location of the proposed activity;

(5) A brief description of the proposed activity, its purpose and intended use, so as to provide sufficient information concerning the nature of the activity to generate meaningful comments, including a description of the type of structures, if any, to be erected on fills or pile or float-supported platforms, and a description of the type, composition, and quantity of materials to be discharged or disposed of in the ocean;

(6) A plan and elevation drawing showing the general and specific site location and character of all proposed activities, including the size

2

relationship of the proposed structures to the size of the impacted waterway and depth of water in the area;

(7) If the proposed activity would occur in the territorial seas or ocean waters, a description of the activity's relationship to the baseline from which the territorial sea is measured;

(8) A list of other government authorizations obtained or requested by the applicant, including required certifications relative to water quality, coastal zone management, or marine sanctuaries;

(9) If appropriate, a statement that the activity is a categorical exclusion for purposes of NEPA (see paragraph 7 of Appendix B to 33 CFR part 230);

(10) A statement of the district engineer's current knowledge on historic properties;

(11) A statement of the district engineer's current knowledge on endangered species (see § 325.2(b)(5));

(12) A statement(s) on evaluation factors (see § 325.3(c));

(13) Any other available information which may assist interested parties in evaluating the likely impact of the proposed activity, if any, on factors affecting the public interest;

(14) The comment period based on § 325.2(d)(2);

(15) A statement that any person may request, in writing, within the comment period specified in the notice, that a public hearing be held to consider the application. Requests for public hearings shall state, with particularity, the reasons for holding a public hearing;

(16) For non-federal applications in states with an approved CZM Plan, a statement on compliance with the approved Plan; and

(17) In addition, for section 103 (ocean dumping) activities:

   (i) The specific location of the proposed disposal site and its physical boundaries;

   (ii) A statement as to whether the proposed disposal site has been designated for use by the Administrator, EPA, pursuant to section 102(c) of the Act;

   (iii) If the proposed disposal site has not been designated by the Administrator, EPA, a description of the characteristics of the proposed disposal site and an explanation as to why no previously designated disposal site is feasible;

3

(iv) A brief description of known dredged material discharges at the proposed disposal site;

(v) Existence and documented effects of other authorized disposals that have been made in the disposal area (e.g., heavy metal background reading and organic carbon content);

(vi) An estimate of the length of time during which disposal would continue at the proposed site; and

(vii) Information on the characteristics and composition of the dredged material.

(b) *Public notice for general permits.* District engineers will publish a public notice for all proposed regional general permits and for significant modifications to, or reissuance of, existing regional permits within their area of jurisdiction. Public notices for statewide regional permits may be issued jointly by the affected Corps districts. The notice will include all applicable information necessary to provide a clear understanding of the proposal. In addition, the notice will state the availability of information at the district office which reveals the Corps' provisional determination that the proposed activities comply with the requirements for issuance of general permits. District engineers will publish a public notice for nationwide permits in accordance with 33 CFR 330.4.

(c) *Evaluation factors.* A paragraph describing the various evaluation factors on which decisions are based shall be included in every public notice.

(1) Except as provided in paragraph (c)(3) of this section, the following will be included:

"The decision whether to issue a permit will be based on an evaluation of the probable impact including cumulative impacts of the proposed activity on the public interest. That decision will reflect the national concern for both protection and utilization of important resources. The benefit which reasonably may be expected to accrue from the proposal must be balanced against its reasonably foreseeable detriments. All factors which may be relevant to the proposal will be considered including the cumulative effects thereof; among those are conservation, economics, aesthetics, general environmental concerns, wetlands, historic properties, fish and wildlife values, flood hazards, floodplain values, land use, navigation, shoreline erosion and accretion, recreation, water supply and conservation, water quality, energy needs, safety, food and fiber production, mineral needs, considerations of property ownership and, in general, the needs and welfare of the people."

(2) If the activity would involve the discharge of dredged or fill material into the waters of the United States or the transportation of dredged material for the purpose of disposing of it in ocean waters, the public notice shall also indicate that the evaluation of the impact of the activity on the public interest will include application of the guidelines promulgated by the Administrator, EPA, (40 CFR part 230) or of the criteria established under authority of section 102(a) of the Marine Protection, Research and Sanctuaries Act of 1972, as amended (40 CFR parts 220 to 229), as appropriate. (See 33 CFR parts 323 and 324).

(3) In cases involving construction of artificial islands, installations and other devices on outer continental shelf lands which are under mineral lease from the Department of the Interior, the notice will contain the following statement: "The decision as to whether a permit will be issued will be based on an evaluation of the impact of the proposed work on navigation and national security."

(d) *Distribution of public notices.*

(1) Public notices will be distributed for posting in post offices or other appropriate public places in the vicinity of the site of the proposed work and will be

sent to the applicant, to appropriate city and county officials, to adjoining property owners, to appropriate state agencies, to appropriate Indian Tribes or tribal representatives, to concerned Federal agencies, to local, regional and national shipping and other concerned business and conservation organizations, to appropriate River Basin Commissions, to appropriate state and areawide clearing houses as prescribed by OMB Circular A-95, to local news media and to any other interested party. Copies of public notices will be sent to all parties who have specifically requested copies of public notices, to the U.S. Senators and Representatives for the area where the work is to be performed, the field representative of the Secretary of the Interior, the Regional Director of the Fish and Wildlife Service, the Regional Director of the National Park Service, the Regional Administrator of the Environmental Protection Agency (EPA), the Regional Director of the National Marine Fisheries Service of the National Oceanic and Atmospheric Administration (NOAA), the head of the state agency responsible for fish and wildlife resources, the State Historic Preservation Officer, and the District Commander, U.S. Coast Guard.

(2) In addition to the general distribution of public notices cited above, notices will be sent to other addressees in appropriate cases as follows:

5

(i) If the activity would involve structures or dredging along the shores of the seas or Great Lakes, to the Coastal Engineering Research Center, Washington, DC 20016.

(ii) If the activity would involve construction of fixed structures or artificial islands on the outer continental shelf or in the territorial seas, to the Assistant Secretary of Defense (Manpower, Installations, and Logistics (ASD(MI&L)), Washington, DC 20310; the Director, Defense Mapping Agency (Hydrographic Center) Washington, DC 20390, Attention, Code NS12; and the National Ocean Service, Office of Coast Survey, N/CS261, 1315 East West Highway, Silver Spring, Maryland 20910-3282, and to affected military installations and activities.

(iii) If the activity involves the construction of structures to enhance fish propagation (e.g., fishing reefs) along the coasts of the United States, to the Director, Office of Marine Recreational Fisheries, National Marine Fisheries Service, Washington, DC 20235.

(iv) If the activity involves the construction of structures which may affect aircraft operations or for purposes associated with seaplane operations, to the Regional Director of the Federal Aviation Administration.

(v) If the activity would be in connection with a foreign-trade zone, to the Executive Secretary, Foreign-Trade Zones Board, Department of Commerce, Washington, DC 20230 and to the appropriate District Director of Customs as Resident Representative, Foreign-Trade Zones Board.

(3) It is presumed that all interested parties and agencies will wish to respond to public notices; therefore, a lack of response will be interpreted as meaning Regional Director of the Federal Aviation Administration.

(v) If the activity would be in connection with a foreign-trade zone, to the Executive Secretary, Foreign-Trade Zones Board, Department of Commerce, Washington, DC 20230 and to the appropriate District Director of Customs as Resident Representative, Foreign-Trade Zones Board.

(3) It is presumed that all interested parties and agencies will wish to respond to public notices; therefore, a lack of response will be interpreted as meaning that there is no objection to the proposed project. A copy of the public notice with the list of the addresses to whom the notice was sent will be included in the record. If a question develops with respect to an activity for which another agency has responsibility and that other agency has not responded to the public notice, the district engineer may

6

request its comments. Whenever a response to a public notice has been received from a member of Congress, either in behalf of a constitutent or himself, the district engineer will inform the member of Congress of the final decision.

(4) District engineers will update public notice mailing lists at least once every two years.

Thank you for your attention to this matter and please add me to your list of further public notices regarding this and other Galveston beach permitting applications submitted by the City of Galveston and Park Board of Trustees.

Regards,

Sonya M. Porretto

cc: db, an, nn

7

# EXHIBIT A
## Porretto Properties
### (3 Pages)

Tract B:
Lots Eight (8), Nine (9), Ten (10), Eleven (11), Twelve (12), Thirteen (13), and Fourteen (14), in Block Six (6), in the City and County of Galveston County, Texas and only being all of those portions of the subject property lying South of the Seawall, together with that portion of the adjacent Street(s) and Alleys abandoned as set forth in Ordinance No. 78-46.

Tract C:
The Southerly portion of Lot Ten (10) of Block Sixty-seven (67), all in the City and County of Galveston, Texas and only being all of those portions of the subject property lying South of the Seawall.

Tract D:
Lots One (1), Two (2), Three (3), in Block Seven (7), in the City and County of Galveston, Texas, and only being all of those portions of the subject property lying South of the Seawall.

Tract E:
Lots Eight (8), Nine (9), and Ten (10), in Block Seven (7), in the City and County of Galveston, Texas and only being all of those portions on the subject property lying South of the Seawall.

Tract F:
Lots Eight (8), Nine (9), Ten (10) and Eleven (11), in Block Eight (8), in the City and County of Galveston, Texas, Lots Seven (7), Eight (8), Nine (9), Ten (10), Eleven (11) and Twelve (12), in the Northeast Quarter of Out Lot Twenty-four(24), One (1) through Fourteen (14), inclusive, in the Southeast Quarter of Out Lot Twenty-four (24), Lots One (1), an interest in Lot Two (2), Three (3) through Fourteen (14), inclusive, in the Northwest Quarter of Out Lot Twenty-Five (25), Lots One(1), Through Fourteen (14), inclusive in the Northeast Quarter of Out Lot Twenty-five (25), Lots One (1), Through Fourteen (14), inclusive, in the Southwest Quarter of Out Lot Twenty-five (25) and Lots One (1), Through Fourteen (14), inclusive, in the Southeast Quarter of Out Lot Twenty-five (25), Lots One (1) through Fourteen (14) in the Northwest Quarter of Out Lot Fifty (50) and the entire Northeast Quarter of Out Lot Fifty (50), all in the City and County of Galveston, Texas, and only being all of those portions of the subject property lying South of the Seawall, together with that portion of the adjacent Street(s) and Alleys abandoned as set forth in Ordinance No. 78-46.

8

Tract G:
The Southeast Quarter, of Out Lot Forty-nine (49), all in the City and County of Galveston only being all of those portions of the subject property lying South of the Seawall.

Tract H:
The Southwest Quarter of Out Lot Forty-nine (49), all in the City and County of Galveston only being all of those portions of the subject property lying South of the Seawall.

Tract I:
Lots Eight (8), through Ten (10), inclusive, and the East one-half (1/2) of Lot Eleven (11), in the Northeast Quarter of Out Lot Forty-eight (48) all in the City and County of Galveston and only being all of those portions of the subject property lying South of the Seawall.

Tract J:
The Northwest Quarter of Out Lot Seventy-two (72), all in the City and County of Galveston and only being all of those portions of the subject property lying South of the Seawall, based on the Map of the City of Galveston in common use.

Tract K:
The Southwest Quarter of Out Lot Seventy-two (72), all in the City and County of Galveston and only being all of those portions of the subject property lying South of the Seawall, based on the Map of the City of Galveston in common use.

Tract L:
The Southeast Quarter, of Out Lot Seventy-One (71), all in the City and County of Galveston and only being all of those portions of the subject property lying South of the Seawall, based on the Map of the City of Galveston in common use.

Tract M:
The Northeast Quarter of Out Lot One hundred-nineteen (119), all in the City and County of Galveston and only being all of those portions of the subject property lying South of the Seawall, based on the Map of the City of Galveston in common use.

Tract N:
The Southeast Quarter, of Out Lot One hundred-nineteen (119), all in the City and County of Galveston and only being all of those portions of the subject property lying South of the Seawall, based on the Map of the City of Galveston in common use.

Tract O:
Part of Lots Eight (8) through Thirteen (13), inclusive, of the Northwest Quarter of Out Lot One hundred forty-one (141), all in the City and County of Galveston

and only being all of those portions of the subject property lying South of the Seawall, based on the Map of the City of Galveston in common use.

Tract P:
Lots One (1) through seven (7), inclusive, of the Southwest Quarter of Out Lot One hundred forty-one (141), all in the City and County of Galveston and only being all of those portions of the subject property lying South of the Seawall, based on the Map of the City of Galveston in common use.

Tract Q:
Lots Eight (8) through Fourteen (14), inclusive, of the Southwest Quarter of Out Lot One hundred forty-one (141), all in the City and County of Galveston and only being all of those portions of the subject property lying South of the Seawall, based on the Map of the City of Galveston in common use.

10