United States District Court
Southern District of Texas
**ENTERED**
December 07, 2022
Nathan Ochsner, Clerk

# In the United States District Court for the Southern District of Texas

## GALVESTON DIVISION

No. 3:21-cv-359

SONYA PORRETTO, *PLAINTIFF*,

v.

THE CITY OF GALVESTON PARK BOARD OF TRUSTEES, *ET AL.*, *DEFENDANTS*.

## MEMORANDUM OPINION AND ORDER

JEFFREY VINCENT BROWN, *UNITED STATES DISTRICT JUDGE*:

The defendants have moved to dismiss under Federal Rule of Civil Procedure 12(b)(1). Dkts. 69; 70. The court grants the motions.

## I.   BACKGROUND

This is an adversarial proceeding arising out of the bankruptcy of the debtor and plaintiff, Sonya Porretto. *See In re Porretto*, No. 09-35324 (S.D. Tex. Bankr.). Porretto alleges she initially filed bankruptcy due to the multi-year contested litigation with the defendants in which she defended her ownership rights over the subject property and other "skirmishes" with the defendants due to their interference and attempts to limit her use, control, and operation of Porretto Beach. Dkt. 39 at 1.

## A. History of Porretto Beach

Porretto Beach is generally identified as the beach along the Galveston seawall from 6th to 10th (sometimes referred to as "Porretto Beach Classic"), 11th to 12th, 14th to 16th, 19th to 21st, and 26th to 27th streets. Dkt. 39 ¶ 10. Sonya Porretto is the owner and part of a fourth generation of Porretto family members working at the beach. *Id.* Porretto Beach is one of the rare privately owned and operated sections of the Texas coastline. *Id.* ¶ 15.

Porretto alleges that she took up the torch when her father passed and has fought against the claim by the Texas General Land Office (GLO) that the State of Texas owns Porretto Beach. *Id.* ¶ 17. After years of litigation, the Texas Supreme Court affirmed that the "Porrettos own the property conveyed to them that lies landward of the [Mean Higher High Tide] line," but otherwise held that the GLO had not committed a compensable taking. *Porretto v. Texas Gen. Land Off.*, 448 S.W.3d 393, 400, 402 (Tex. 2014); Dkt. 39 ¶ 17.

Since then, Porretto contends the defendants have allegedly taken actions resulting in:

> (1) flooding Porretto Beach Classic's parking lot; (2) receiving funds from various sources using Porretto Beach without authority as part of their requests without providing any benefit to the beach; (3) refusing to honor the settlement agreement entered into with Sonya Porretto during the bankruptcy which was approved by order of this court; (4) damaged Porretto Beach

including but not limited to actions taken in 2013, 2015, and a 2017 renourishment project; (5) continued efforts to assert control over the property without authority; (6) continued actions moving and/or removing sand from Porretto Beach; and (7) currently seeking approval of a Stewart Beach Drainage Project which the defendants allegedly know is anticipated to further damage Porretto Beach.

*Id.* ¶ 18. Porretto further alleges that the City of Galveston's Stewart Beach Project is supported with a "Finding of No Significant Impact" and a draft environmental assessment which contain material omissions and misrepresentations. *Id.*



Graphic 1: Porretto Beach identified by red triangles



Graphic 2: Porretto Beach Classic area

## B.    Factual Background

Porretto alleges she has spent years preserving and maintaining Porretto Beach. Dkt. 39 ¶ 21. According to Porretto, the bankruptcy process was supposed to help provide her a fresh start. *Id.* Porretto alleges that the Chapter 7 trustees not only abandoned the beach property,[1] but that now they are trying to shield themselves from any of the wrongs they committed during the bankruptcy which affect the property today. *Id.* Specifically, Porretto alleges the defendants' actions have amounted to deliberately

---

[1] The Chapter 7 trustee's abandonment of the Porretto Beach property was approved by the Bankruptcy Court on June 25, 2020. Dkt. 39 ¶ 92. Afterward, control of Porretto Beach reverted to Porretto. *Id.* Included in the abandonment order was language of the court retaining exclusive jurisdiction to adjudicate any and all disputes concerning or in any way relating to the abandonment. *Id.*

flooding the most useful and valuable section of Porretto Beach—the parking area. *Id.*

Porretto alleges that as soon as she attempted to open Porretto Beach Classic to beachgoers, the defendants commenced to disrupt her use, enjoyment, and "alienation" of the property. *Id.* ¶ 22. In response, Porretto states she personally served the city and the Park Board with a cease-and-desist letter. *Id.* ¶ 24. The letter included an objection to the Stewart Beach Drainage Project and the 2021 Seawall Beach Renourishment Project. *Id.*

On April 28, 2021, Porretto alleges the Galveston city attorney responded to her letter with "numerous non-sequiturs, gaslighting, and patronizing misrepresentations" such as questioning Porretto's objection to Stewart Beach given that it was a half mile to the east of her property. *Id.* ¶ 25. Porretto found the city attorney's lack of knowledge of Porretto Beach's actual location and the fact that it is adjacent to Stewart Beach "disconcerting at best." *Id.*

In May 2021, the Park Board began work on the Stewart Beach Drainage Project. *Id.* ¶ 26. Porretto alleges the Park Board and city asserted in public meetings they had the right to move sand under existing permits to Stewart Beach before getting full approval to start work on the Drainage Project. *Id.* Porretto alleges that the Park Board of Trustees was on notice,

because of an engineering report from 2017, that the parking lot at Stewart Beach experiences flooding even during light storm events and that daily use, driving and parking, and the harvesting of sand at Stewart Beach had compacted and removed enough sand to create low areas that easily become saturated and could result in flooding and ponding water. *Id.* ¶ 27.

Porretto further alleges that the report makes clear that the parking area is at a lower elevation than the adjacent beach, thereby creating a bowl-like condition and requiring maintenance crews to manage flooding conditions by cutting trenches into the vegetated seaweed berms facing the Gulf of Mexico in order to drain the parking lot. *Id.*

As support, Porretto has included in her complaint a series of photos ostensibly showing maintenance crews filling in the Stewart Beach parking lot with sand and creating water trenches and ditches which directed escaping flood waters toward Porretto Beach. *Id.* ¶ 29. Porretto includes pictures and descriptions alleging that the work done at Stewart Beach caused serious flooding at Porretto Beach, requiring Porretto to construct an emergency dam to prevent further damage and erosion from the Stewart Beach flood waters. *Id.* Porretto alleges the appearance of flood water in the parking lot at Porretto Beach deterred customers from parking onsite and diminished Porretto Beach's revenues. *Id.*



Graphic 3: Visual depiction of the water flow from Stewart Beach to Porretto Beach

Porretto also alleges that during the bankruptcy and after the Chapter 7 trustee abandoned the property, the Park Board wrongfully excavated sand from Porretto Beach. *Id.* ¶¶ 31, 35. Porretto alleges other beachfront-property owners also raised concerns regarding the theft of sand from their beaches. *Id.* Porretto claims these actions have caused false erosion data for years. Porretto alleges that during the bankruptcy, the Park Board was leasing Porretto Beach to concessionaires without authority in violation of the automatic stay. *Id.* ¶ 33. Porretto likewise alleges that the Park Board recently sought applications for concessionaires and referred to Porretto Beach property in the public notices as if it had the authority to lease Porretto Beach. *Id.*

As support, Porretto alleges that in 2012, the Park Board resumed excavating the shoreline of Porretto Beach, including the area along the shore known as the "wet beach." *Id.* ¶ 34. In addition, Porretto states the Park Board applied and obtained local, state, and federal permits based on material omissions or misrepresentations. *Id.* Specifically, the permits included Porretto Beach by misrepresenting the ownership of the property. *Id.* The Park Board allegedly did so without authority, without bankruptcy approval, and in violation of the automatic stay. *Id.*

Porretto further contends that the Park Board was leasing Porretto Beach, from 26th to 27th Street, to Park Board Trustee Jason Worthen without bankruptcy-court authority. *Id.* ¶ 36. She also charges the Park Board with occupying Porretto Beach without authority from March to May, 2015, and that the defendants used Porretto Beach in 2017 while engaging in a renourishment project causing significant damage, improper moving of sand, and sand mining. *Id.* ¶¶ 37–38.

Porretto similarly alleges that the Park Board and the city engaged in harassment, retaliation, and the denial of public services as she attempted to restore the beach from 6th to 10th Street, near Stewart Beach. *Id.* ¶¶ 71–77. Porretto alleges such harassment included a letter from the Park Board threatening Porretto with legal and law-enforcement action if she persisted

in putting bagged trash near the Park Board's trash cans. *Id*. This action, Porretto alleges, was in violation of a settlement filed in bankruptcy court between the Park Board and Porretto Beach. *Id*. Further harassment includes a violation notice Porretto alleges she received after repairing the large Porretto Beach sign in preparation for its reopening in 2021. *Id*. ¶ 84. Porretto states the sign issue was previously discussed and resolved, in her understanding, in bankruptcy court in 2017. *Id*.

Porretto alleges she has also not received equal treatment from city agencies, including the police and fire departments. *Id*. ¶ 85. The police allegedly did not act when Porretto reported the theft of sand, and the fire department discharged water from a fire hydrant during inclement weather and allowed the water to flow down the Porretto Beach ramp, in violation of fire-code provisions. *Id*. ¶¶ 85, 87. The city also allegedly sent a shutoff notice to Porretto's elderly mother for an "overstated" unpaid water bill knowing that Porretto lived at the same address. *Id*. ¶ 88. Also among Porretto's grievances is the Park Board refusing to pick up trash on Porretto Beach and a city councilmember visiting Porretto Beach, verbally disparaging the property, and cursing Porretto's adult son. *Id*. ¶¶ 89–91.

Porretto sued the Galveston Park Board of Trustees, the City of Galveston, the Texas General Land Office, and George P. Bush as the

Commissioner of the General Land Office on June 25, 2021, in Bankruptcy Court. Dkt. 1. On December 21, 2021, United States Bankruptcy Judge David R. Jones transferred her case to this court. Dkt. 50. In the live complaint, Porretto alleges 14 causes of action:

> (1) taking of a flowage easement without just compensation in violation of the Fifth Amendment; (2) the taking of other property interests without just compensation (Fifth Amendment); (3) inverse condemnation (Texas common law); (4) interference with accretion levels without just compensation (Fifth Amendment); (5) violation of Article I, § 17 of the Texas Constitution for the public taking, damaging, or destruction of private property; (6) deprivation of property interests without due process (Fourteenth Amendment); (7) breach of settlement agreement; (8) tortious interference, harassment, and retaliation; (9) violations of Texas Water Code; (10) accounting and reimbursement; (11) injunctive relief; (12) declaratory judgment that rights of way have already been abandoned; (13) declaratory judgment regarding mineral interests and boundaries; and (14) violation under the Tort Claims Act.

Dkt. 39 ¶¶ 96–159. The defendants have moved to dismiss. Dkts. 69, 70.

## II.   LEGAL STANDARD

A motion to dismiss for lack of subject-matter jurisdiction requires dismissal if the court "lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). The party asserting jurisdiction bears the burden of proof. *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir.

2001). Federal courts have jurisdiction over a claim between parties only if the plaintiff presents an actual case or controversy. U.S. Const. art. III, § 2, cl. 1; *Okpalobi v. Foster*, 244 F.3d 405, 425 (5th Cir. 2001). "The many doctrines that have fleshed out that 'actual controversy' requirement—standing, mootness, ripeness, political question, and the like—are 'founded in concern about the proper—and properly limited—role of the courts in a democratic society.'" *Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 541–42 (5th Cir. 2008) (quoting *Allen v. Wright*, 468 U.S. 737, 750 (1984)).

To test whether the party asserting jurisdiction has met its burden, a court may rely on: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996). When a motion to dismiss challenges standing, the court "must accept as true all material allegations of the complaint and . . . construe the complaint in favor of the complaining party." *Ass'n of Am. Physicians & Surgeons v. Tex. Med. Bd.*, 627 F.3d 547, 550 (5th Cir. 2010) (quotations omitted).

## III.   ANALYSIS

The GLO and Commissioner Bush (hereafter "GLO") argue that the court lacks subject-matter jurisdiction because Porretto lacks standing for her claims against them. Dkt. 70 at 15. The Park Board and the city argue that Porretto cannot show that federal jurisdiction exists under either 28 U.S.C § 1334 or § 1331. Dkt. 69 at 5, 8. The court addresses each argument in turn.

### A. Standing

#### 1. Applicable Law

"Federal courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986). Article III of the Constitution confines the judicial power of the federal courts to deciding cases or controversies. *See* U.S. Const. art. III, § 2, cl. 1. The standing doctrine is derived directly from this constitutional provision. *See Raines v. Byrd*, 521 U.S. 811, 818 (1997) ("No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies.") (quotations marks and citation omitted).

"Standing" is a jurisdictional requirement. In fact, Article III standing represents "perhaps the most important" of all jurisdictional requirements.

12/26

*FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990) (internal quotation marks and citation omitted). This doctrine "requires federal courts to satisfy themselves that the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant [her] invocation of federal-court jurisdiction." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (internal quotation marks, emphasis, and citation omitted). *See also Warth v. Seldin*, 422 U.S. 490, 498 (1975) ("[T]he question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues.").

To meet the constitutional minimum for standing, a plaintiff has the burden to establish the following:

> First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (cleaned up).

"To establish injury in fact, a plaintiff must show . . . 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S.

330, 340 (2016) (quoting *Lujan*, 504 U.S. at 560). "An allegation of future injury may suffice if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (internal quotation marks and citation omitted).

"Causation requires a 'traceable connection' between the plaintiff's injury and the defendant's conduct." *Aransas Project v. Shaw*, 775 F.3d 641, 648 (5th Cir. 2014). "Redressability requires 'a likelihood that the requested relief will redress the alleged injury.'" *Id. "*Relief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court; that is the very essence of the redressability requirement." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998).

The GLO contends Porretto lacks Article III standing to pursue her claims because she cannot satisfy the requirements of causation and injury in fact. Dkt. 70 at 15–16. Assuming without deciding that Porretto satisfies the injury-in-fact requirement, the court addresses Porretto's standing for each cause of action and finds there is no causal connection between Porretto's alleged injuries and GLO's alleged conduct.[2]

---

[2] Counts VII (breach of settlement agreement), VIII (tortious interference), and XII (declaratory judgment that rights of way have been abandoned) are not alleged against GLO. Dkt. 72-1.

### 2. Porretto's GLO Claims

Count I alleges that the Park Board's activities at Stewart Beach caused the taking of a flowage easement on Porretto Beach. Dkt. 39 ¶¶ 96–103. But Porretto does not allege what role, if any, the GLO played in the Stewart Beach Drainage Project. Without a causal connection between a GLO act and her alleged injury, Porretto lacks standing to bring this claim. *Lujan*, 504 U.S. at 560.

Counts II and IV are federal takings claims arising from the Park Board's alleged removal of sand from Porretto Beach and the supposed interference with accretion and erosion this removal caused. Dkt. 39 ¶¶ 104–110, 114–118. Again, Porretto does not allege GLO took part in these activities. That Porretto alleges GLO "knew" of the Park Board's sand removal from Porretto Beach is immaterial. *Id.* ¶ 66. Because she cannot trace her alleged injury to a GLO action, she again lacks standing. *Lujan*, 504 U.S. at 560.

Porretto's state takings claim (Count V), based on the same allegations as her federal takings claims, does not involve any alleged action by GLO. Dkt. 39 ¶¶ 119–124. Similarly, Porretto's inverse-condemnation claim (Count III) is simply another takings claim supported only by a conclusory statement that the defendants "surreptitiously ente[red]" her property. *Id.*

¶¶ 111–113. But Porretto pleads no facts alleging any entry by GLO. Her only related factual allegation is her claim that "[o]n information and belief," GLO "improperly had Porretto Beach surveyed." *Id.* ¶ 56. But surveys can be performed outside a property boundary, and Porretto does not include any factual allegations about when or how the survey was performed. Porretto's due-process claim (Count VI), which alleges the same conduct as her takings claims, suffers from the same lack of traceability to GLO. *Id.* ¶¶ 125–128.

For Count IX (violation of the Texas Water Code), Porretto alleges no facts in support of her conclusion that the "[d]efendants acted in concert to approve modifications to public property to divert and impound the natural flow of surface waters from and around the ground . . . to Porretto Beach." *Id.* ¶¶ 136–141. So again, she has alleged no act committed specifically by GLO. Likewise, Porretto's Tort Claims Act claim (Count XIV) is based on a negligence theory, seemingly borrowing factual allegations from her other claims. *Id.* ¶¶ 157–159. She fails to trace her denial of use and enjoyment, diminution in market value, and property damage to any GLO act.

Because she has no standing to sue GLO under any of her claims, Porretto also cannot succeed in her requests for relief for these claims—Count X (Accounting and Reimbursement), Count XI (Injunctive Relief), or Count XIII (Declaratory Judgment Regarding Mineral Interests and

Boundaries). *Id.* ¶¶ 142–149, 155–156.

Because Porretto lacks standing for her claims against the GLO and Commissioner Bush, this court does not possess subject-matter jurisdiction to adjudicate them. These claims, as well as the defendants GLO and Commissioner Bush, are dismissed.

### B. Section 1334

The remaining defendants—the Park Board and the City of Galveston—argue that the sole jurisdictional basis Porretto alleges is "related to" jurisdiction under 28 U.S.C § 1334(b). Dkt. 69 at 3–4. The defendants contend all these claims relate to property that the Chapter 7 trustee abandoned on June 25, 2020, and none relate to the bankruptcy case. *Id.* Specifically, Porretto complains about alleged interference with her "right to use, enjoy and alienate" the abandoned property and damages caused thereto. *Id.* These claims, however, do not concern bankruptcy-estate property because the abandoned property is no longer part of the estate nor will the claims affect the bankruptcy case because each of the claims is personal to Porretto, and her bankruptcy case has now been fully

administered. *Id.*; *see In re Skuna River Lumber, L.L.C.*, 564 F.3d 353, 355 (5th Cir. 2009) (finding no jurisdiction over property sold by the estate).[3]

The defendants also argue that contrary to Porretto's assertion that "[t]his is a core proceeding," Dkt. 39 ¶ 2, none of her claims are "arising in" or "arising under" Title 11. Dkt. 69 at 6. A proceeding is core "if it invokes a substantive right provided by Title 11 or if it is a proceeding that, by nature, could only arise in the context of a bankruptcy case." *Id.* (quoting *In re Wood*, 825 F.2d 90, 97 (5th Cir. 1987)). None of Porretto's claims invoke a substantive bankruptcy right or are proceedings that could arise only in the context of a bankruptcy case. *See In re Burch*, 835 F. App'x 741, 748 (5th Cir. 2021).

Finally, the defendants argue that the bankruptcy court's abandonment order does not confer jurisdiction over Porretto's claims. A court's retained authority and subject-matter jurisdiction to interpret its own orders does not empower a court to "manufacture" jurisdiction over disputes which arise independent of, and are separate from, an order's subject matter. Dkt. 69 at 8 (citing *Burch*, 835 F. App'x at 748); *see also In re TMT*

---

[3] Upon abandonment, the estate holds no interest in the property, the property reverts to the debtor, and "the debtor's rights to the property are treated as if no bankruptcy petition was filed." 1 *Collier on Bankruptcy* § 3.01 (Alan N. Resnick & Henry J. Sommer eds., 2008).

*Procurement Corp.*, 764 F.3d 512, 525 (5th Cir. 2014) (holding that a bankruptcy court cannot use its orders to manufacture jurisdiction over property it lacked jurisdiction over). Because Porretto's suit does not require interpretation of the abandonment order, the order conveys no jurisdiction over this action. Dkt. 69 at 8.

Porretto responds that § 1334(e) provides the court with jurisdiction over all of the debtor's property in which a bankruptcy case is commenced or pending. Dkt. 72 at 7. This includes, she insists, property of the bankruptcy estate that has been abandoned back to the debtor. *Id.* Porretto argues that the statute's plain language says that the property was still subject to the bankruptcy court's jurisdiction. *Id.* (citing *In re Fong*, No. 01-00242, 2005 WL 3964429, at *3 (Bankr. D. Haw. Nov. 18, 2005)). Porretto likewise argues that the plain language of § 1334(b) provides the court with jurisdiction. Dkt. 72 at 9. Section 1334(b), she maintains, grants subject-matter jurisdiction over any debtor claims that fall within the court's "related to," "arising in," or "arising under" jurisdiction. *Id.* (citing *In re Cano*, 410 B.R. 506, 551 (Bankr. S.D. Tex. 2009)).

Porretto's argument directly contradicts a plethora of case law—some binding, some just persuasive—emphasizing that "[b]ankruptcy jurisdiction at its core, is *in rem.*" *Cent. Va. Cmty. Coll. v. Katz*, 546 U.S. 356, 362 (2006).

"*In rem* jurisdiction is a court's jurisdiction to determine rights in property in the court's possession, known as the *res*." *In re Brown*, 521 B.R. 205, 216 (Bankr. S.D. Tex. 2014) (citing *Alderwoods Grp., Inc. v. Garcia* , 682 F.3d 958, 969 (11th Cir. 2012)).

"When a trustee abandons property to the debtor, there is no remaining basis for bankruptcy court jurisdiction." *In re Green*, 241 B.R. 187, 197 (Bankr. N.D. Ill. 1999); *see In re Bray*, 288 B.R. 305, 307—08 (Bankr. S.D. Ga. 2001) (bankruptcy court lacked jurisdiction over property abandoned to a debtor). Porretto ignores statutory language limiting § 1334(e)(1) to "property . . . of the debtor as of the commencement of such case." 28 U.S.C. § 1334(e)(1). Once debtor property becomes estate property, § 1334(e)(1) no longer applies, and § 1334(e)(2) governs estate property.

When estate property is then abandoned, § 1334(e)(1) does not revive exclusive jurisdiction. Even absent that limitation, common sense dictates that there must be some temporal limit on the duration of exclusive jurisdiction under § 1334(e)(1). *See In re Sindram*, No. 08-00559, 2010 WL 434341, at *2 (Bankr. D.D.C. Jan. 28, 2010) (having been a debtor does not create bankruptcy jurisdiction in perpetuity). Here, where the bankruptcy estate was fully administered and the estate retains no interest in the property, § 1334(e) no longer applies. A reading of the statute in line with

Porretto's view would unnecessarily broaden bankruptcy jurisdiction past other provisions of Title 28[4] and encompass wholesale *in personam* remedies generally unavailable under the bankruptcy court's *in rem* jurisdiction.

As for § 1334(b), Porretto's arguments are likewise unpersuasive as the statute's conferral of jurisdiction depends on the outcome of the litigation affecting the estate being administered in bankruptcy. *See, e.g.*, *Arnold v. Garlock, Inc.*, 278 F.3d 426, 434 (5th Cir. 2001); *see In re Bass*, 171 F.3d 1016, 1022–23 (5th Cir. 1999). Porretto cannot identify any conceivable effect this lawsuit will have on the bankruptcy estate and ignores the undisputed fact that the estate has  been fully administered. *In re Porretto*, No. 09-35324, ECF Nos. 819, 821. This proceeding cannot and will not increase or decrease the assets to be distributed in the bankruptcy case or any distribution to estate creditors. *See In re Bass*, 171 F.3d at 1023 (the fact

---

[4] Porretto's expansive interpretation is inconsistent with several other provisions of Title 28—specifically 28 U.S.C. §§ 1334(c) (abstention), 1409 (venue), and 1452 (removal)—and would even prevent a bankruptcy court from granting widely accepted motions for relief from the automatic stay to pursue state law claims in state courts. *See In re Noletto*, 244 B.R. 845, 850–854 (Bankr. S.D. Ala. 2000); *see also, e.g.*, *In re Cano*, 410 B.R. 506 (Bankr. S.D. Tex. 2009) (explaining that a more expansive view of § 1334(e) "would render removal, abstention, and venue provisions meaningless"); *In re Krause*, 414 B.R. 243, 254–56 (Bankr. S.D. Ohio 2009) (holding that § 1334(e) must be read narrowly to limit the "home court" exclusive jurisdiction strictly to *in rem* matters).

that no resulting recovery accrues to the bankruptcy estate omits "related to" jurisdiction). In short, nothing that happens in this proceeding can conceivably affect the bankruptcy estate, and each of Porretto's attempts to engineer a potential effect on the bankruptcy estate fails.

Given the above, the court finds that § 1334 does not confer federal jurisdiction here.

### C. Section 1331

Porretto argues in the alternative that this court has federal-question jurisdiction, 28 U.S.C § 1331, because the appropriation of a flowage easement or other property of the plaintiff is a physical taking. Dkt. 72 at 11. Porretto contends it is unconstitutional to burden private property like Porretto Beach with a public easement without due process, compensation, or reasonable procedures. *Id.* These burdens include the defendants' ongoing violation of the plaintiff's private-property rights which occurred before the bankruptcy, during the bankruptcy, and after the abandonment of the property in June 2020. *Id.* Porretto specifically asserts claims under the Fifth Amendment's Taking Clause and the Fourteenth Amendment's Due Process Clause, and requests both injunctive and declarative relief. *Id.*

The defendants respond that though Porretto purports to allege a direct takings claim arising under the Constitution, no such direct cause of

action exists,[5] and under the controlling authorities Porretto cannot state any such claim. Dkt. 76 at 4–5. Because no direct takings cause of action against a local governmental entity exists under the Constitution, dismissal is appropriate. *Valco Instruments Co., L.P. v. Spring Branch Mgmt. Dist.*, No. 4:08-CV-01055, 2009 WL 10698299, at *2 (S.D. Tex. Jan. 28, 2009) (dismissing direct federal takings claim); *Burns-Toole v. Byrne*, 11 F.3d 1270, 1273 n.3 (5th Cir. 1994) (finding that when a plaintiff seeks redress for constitutional violations against municipalities or government actors, the "proper vehicle for these allegations is § 1983").

Porretto also appears to rely on the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq.*, but that statute "is procedural only and is not an

---

[5] The primary case Porretto relies on, *Knick v. Township of Scott,* 139 S. Ct. 2162 (2019), repeatedly states that the proper vehicle for asserting a federal constitutional takings claim against a local governmental entity is a statutory claim under 42 U.S.C. § 1983, not a direct claim under the Constitution. *See, e.g.*, *Knick*, 139 S. Ct. at 2168 ("[T]he property owner [who] has suffered a violation of Fifth Amendment rights when the government takes his property without just compensation . . . may bring his claim in federal court under § 1983."); *id.* at 2169–70 ("Plaintiffs asserting any other constitutional claim are guaranteed a federal forum under § 1983."); *id.* at 2171 ("[I]t is the existence of the Fifth Amendment right that allows the owner to proceed directly under § 1983."); *id.* at 2172 ("[S]omeone whose property has been taken by a local government has a claim under § 1983 for a 'deprivation of [a] right . . . secured by the Constitution' that he may bring upon the taking in federal court."); *id.* at 2177 n.8 ("[T]he Civil Rights Act of 1871 [is] part of 'judicial federalism' . . . [with] the availability of a federal cause of action when a local government violates the Constitution 42 U.S.C. § 1983."); *id.* at 2179 ("A property owner may bring a takings claim under § 1983 upon the taking of his property without just compensation by a local government.").

independent basis of jurisdiction in federal courts." *M.L. v. Frisco Indep. Sch. Dist.*, 451 F. App'x 424, 426 (5th Cir. 2011) (citing *Vaden v. Discover Bank*, 556 U.S. 49, 70 n.19 (2009)); *Jolly v. United States*, 488 F.2d 35, 36 (5th Cir. 1974) (per curiam) ("The Declaratory Judgment Act . . . does not of itself confer jurisdiction on the federal courts.").

Porretto's reliance on her request for injunctive relief is likewise misplaced because "a court has no authority to grant an injunction without some independent basis of federal jurisdiction." *Higareda v. U.S. Postal Serv.*, 5 F.3d 1495 (5th Cir. 1993); *see also Garcia v. Limon*, No. 1:19-CV-120, 2019 WL 7494398, at *6 (S.D. Tex. Nov. 4, 2019) ("A request for injunctive relief is not an independent basis for subject matter jurisdiction.").

Because Porretto has failed to demonstrate that this court has subject-matter jurisdiction under either § 1334 or § 1331, the court is without power to hear her claims.

### D. Amendment

If the court dismisses her claims, Porretto argues that it should also grant her leave to amend because the defendants never alleged factual deficiencies and failed to confer in accordance with Rule 6 of the Galveston District Court Rules of Practice. Dkt. 72 at 6. Porretto's grievances concerning Rule 6 and repleading ignore the docket history, where the GLO,

the Park Board, and the city moved to dismiss Porretto's previous complaints. *See* Dkts. 16, 18, 20, 27, 28, 29, 69, 70.

The defendants opposed Porretto's applications for a TRO and a preliminary injunction, Dkt. 55, based on her Second Amended Complaint, explaining the jurisdictional bars to and the absence of facts supporting Porretto's claims. Dkts. 58, 59. After denying the applications, Dkt. 61, the court granted Porretto's motion for leave to amend, stating it "does not anticipate granting further leave to amend" and setting a deadline for any renewed motions to dismiss. Dkt. 62. Porretto did not object in response to that order or seek leave to further amend to correct any deficiencies. Neither the Galveston District Court Rules of Practice nor the Federal Rules of Civil Procedure contemplate a bottomless right to amend.

After multiple repleading opportunities, Porretto has pleaded her best case, such as it is, in an extensive complaint comprising 47 pages (not including exhibits). She will not be permitted to amend again.[6] *Stripling v.*

---

[6] Although district courts should generally give a plaintiff at least one chance to amend her complaint, here Porretto has already had three such opportunities, and her most recent pleading remains "a haphazard combination of repetitious factual allegations, scattered arguments, and conclusory statements punctuated with legal buzz words." *Harris v. Wal-Mart Stores Tex.*, No. 3:19-cv-000248, 2020 WL 4726757, at *3 (S.D. Tex. May 6, 2020). Porretto also has disregarded multiple admonitions that the proper mechanism for asserting any purported constitutional claim against the Park Board and the city is through a § 1983 action, and she will not now be allowed to amend for a fourth time to include such a claim.

*Jordan Prod. Co., LLC*, 234 F.3d 863, 872 (5th Cir. 2000) ("It is within the district court's discretion to deny a motion to amend if it is futile."); *Marucci Sports, L.L.C. v. NCAA*, 751 F.3d 368, 378 (5th Cir. 2014) (same).

\*     \*     \*

For the reasons stated above, the court grants the motions to dismiss. Dkts. 69; 70.

Signed on Galveston Island this 7th day of December, 2022.

_____

JEFFREY VINCENT BROWN
UNITED STATES DISTRICT JUDGE

---

*See* Dkts. 18 at 7 & n.10; 58 at 3–4. *Cf. Esparza v. Galveston Coll.*, No. 3:21-CV-176, 2021 WL 5830043, at \*3 & n.2 (S.D. Tex. Dec. 1, 2021) (amendment futile where sufficient facts not pleaded to bring claim within statute and waiver found where plaintiff "repeatedly disclaimed" any attempt to plead claim).