United States District Court
Southern District of Texas
**ENTERED**
June 05, 2026
Nathan Ochsner, Clerk

# In the United States District Court for the Southern District of Texas

### GALVESTON DIVISION

No. 3:21-cv-359

SONYA PORRETTO, *PLAINTIFF*,

v.

THE CITY OF GALVESTON PARK BOARD OF TRUSTEES, *ET AL.*, *DEFENDANTS*.

## MEMORANDUM OPINION AND ORDER

JEFFREY VINCENT BROWN, *UNITED STATES DISTRICT JUDGE*:

In three separate motions, the defendants have moved to dismiss Porretto's fourth amended complaint. Dkts. 130, 131, 133. The court will grant one motion in its entirety, Dkt. 133, and grant in part and deny in part the other two. Dkts. 130, 131.

## I. Background[1]

Porretto has sued the City of Galveston, the City of Galveston Park Board of Trustees ("Park Board"), the Texas General Land Office ("the

---

[1] The parties are familiar with the facts of the case and with its journey through the courts; therefore, the court recounts only the facts and procedural history necessary to resolve the pending motions to dismiss. For a complete factual recount, see Dkts. 84 and 128.

GLO"), and GLO Commissioner Dawn Buckingham ("Commissioner Buckingham"). Dkt. 129 ¶¶ 25–28. In the fourth amended complaint ("the complaint"), Porretto sues:

a. the City and the Park Board for physical and regulatory takings under 42 U.S.C. § 1983 and the U.S. Constitution, *Monell* liability under § 1983, inverse condemnation under the Texas Constitution, and— under state tort law—for trespass, private nuisance, tortious interference with prospective business relations, tortious interference with contract, and punitive damages;

b. the GLO for takings under the Texas Private Real Property Rights Preservation Act ("PRA"), inverse condemnation under the Texas Constitution, and physical and regulatory takings under the U.S. Constitution; and

c. Commissioner Buckingham under *Ex Parte Young*.

Dkt. 129 ¶¶ 174–501.

The City and the GLO have moved to dismiss Porretto's complaint under Rules 12(b)(1) and 12(b)(6), and the Park Board has moved to dismiss it only under Rule 12(b)(6). Dkts. 130, 131, 133.[2] For the reasons below, the court (1) denies the City's Rule 12(b)(1) motion as to Porretto's regulatory-takings

---

[2] Porretto notes that Fed. R. Civ. P. 15(a)(3) provided the GLO 14 days to respond to the amended complaint, making the GLO's motion to dismiss untimely. Dkt. 137 at 5–6. But this untimeliness was the result of an error by the court, which miscalculated the GLO's response deadline. The GLO should not be penalized for following the court's error. Moreover, Porretto does not cite any potential prejudice arising from the GLO's late-filed response. Accordingly, the court declines to deny the GLO's motion on untimeliness grounds. Fed. R. Civ. P. 15(a)(3).

claim under § 1983 and the U.S. Constitution, Dkt. 131; (2) grants the GLO's Rule 12(b)(1) motion as to Porretto's claims under the PRA, Texas Constitution, U.S. Constitution, and *Ex Parte Young*, Dkt. 133; (3) denies the City's and Park Board's Rule 12(b)(6) motions to dismiss Porretto's federal takings claims under § 1983 and the U.S. Constitution, and inverse-condemnation claim under the Texas Constitution, Dkts. 130, 131; (4) denies the Park Board's Rule 12(b)(6) motion to dismiss Porretto's *Monell* liability claim, Dkt. 130; and (5) grants the City's and the Park Board's Rule 12(b)(6) motions to dismiss Porretto's state-law tort claims and request for punitive damages, Dkts. 130, 131.

## II.    Legal Standards

### A. Rule 12(b)(1)

A court should grant a motion to dismiss for lack of subject-matter jurisdiction if the court "lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). "[T]he burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). Federal courts have jurisdiction over a claim between parties only if the plaintiff presents an actual case or controversy. U.S. CONST. art. III, § 2, cl. 1; *Okpalobi v. Foster*, 244 F.3d 405, 425 (5th Cir. 2001) (en banc). "The many doctrines that have fleshed out that

'actual controversy' requirement—standing, mootness, ripeness, political question, and the like—are 'founded in concern about the proper—and properly limited—role of the courts in a democratic society.'" *Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 541–42 (5th Cir. 2008) (quoting *Allen v. Wright*, 468 U.S. 737, 750 (1984)).

To test whether the party asserting jurisdiction has met its burden, a court may rely upon: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996). "When standing is challenged on the basis of the pleadings, [a court] must accept as true all material allegations of the complaint and construe the complaint in favor of the complaining party." *Ass'n of Am. Physicians & Surgeons, Inc. v. Texas Med. Bd.*, 627 F.3d 547, 550 (5th Cir. 2010).

### B. Rule 12(b)(6)

To survive a motion to dismiss for failure to state a claim, a plaintiff must plead facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the pleaded facts allow the court to reasonably infer that the defendant is liable for

the alleged conduct. *Id.* In reviewing the pleadings, a court accepts all well-pleaded facts as true, "construing all reasonable inferences in the complaint in the light most favorable to the plaintiff." *White v. U.S. Corr., L.L.C.*, 996 F.3d 302, 306–07 (5th Cir. 2021). But the court does not accept "[c]onclusory allegations, unwarranted factual inferences, or legal conclusions" as true. *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005).

### C. Section 1983

"To state a claim under [42 U.S.C.] § 1983, a plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Piotrowski v. City of Houston*, 51 F.3d 512, 515 (5th Cir. 1995) (citation omitted). A plaintiff bringing a § 1983 claim must also allege that the constitutional or statutory deprivation was intentional or due to deliberate indifference and not the result of mere negligence. *Farmer v. Brennan*, 511 U.S. 825, 826 (1994). A claim under § 1983 may be brought against government employees in their individual or official capacities or against a governmental entity. *Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009).

A plaintiff may sue a municipality under § 1983—commonly called a *Monell* claim. *Edwards v. City of Balch Springs*, 70 F.4th 302, 307 (5th Cir. 2023). To state a *Monell* claim, a plaintiff must plead facts that plausibly

establish "(1) an official policy (2) promulgated by the municipal policymaker (3) [that] was the moving force behind the violation of a constitutional right." *Id.* (citation omitted). "[T]he unconstitutional conduct must be *directly* attributable to the municipality through some sort of official action" or ratification. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (emphasis added). Municipalities "cannot be found liable on a theory of vicarious liability or respondeat superior." *St. Maron Props., L.L.C. v. City of Houston*, 78 F.4th 754, 759–60 (5th Cir. 2023).

"To get past the pleading stage, a [*Monell*] complaint's description of a policy or custom and its relationship to the underlying constitutional violation cannot be conclusory; it must contain specific facts." *Henderson v. Harris Cnty.*, 51 F.4th 125, 130 (5th Cir. 2022) (quotations and citation omitted).

## III.   Analysis

### A. Jurisdiction

As a threshold matter, both the City and the GLO move to dismiss Porretto's complaint, or portions thereof, under Rule 12(b)(1). Dkts. 131, 133. The City challenges whether Porretto has standing to bring her regulatory-takings claim under § 1983 and the U.S. Constitution and whether the claim is ripe. Dkts. 131 ¶¶ 23–32; 139 ¶¶ 3–5. The GLO argues that all of Porretto's

claims against it are "barred in this federal forum." Dkt. 133 at 6 (emphasis omitted). The court will take each in turn.

### 1. The City

To show standing requires alleging "injury in fact, causation, and redressability." *Stringer v. Whitley*, 942 F.3d 715, 720 (5th Cir. 2019). The City attempts to undermine the first two elements by misconstruing Porretto's claim. First, the City seeks to reframe Porretto's regulatory-takings claim as one seeking to vindicate injuries sustained by third parties—not Porretto. Dkt. 131 ¶ 27. But that is not the case. Porretto's injury in fact must be "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (citation modified). Porretto alleges that by arbitrarily denying third-party vendors the ability to operate on her property, the City— through the Park Board—has deprived her of income and value generated through the presence of those vendors. Dkt. 129 ¶¶ 145–57. That allegation sufficiently pleads the requisite injury to Porretto.

Second, the City seeks to undermine the causation element by ignoring the City's role in enacting the alleged offending ordinances and by shifting focus entirely to the Park Board. Dkt. 131 ¶ 25. Causation requires that "the injury has to be fairly traceable to the challenged action of the defendant and

not the result of the independent action of some third party." *Lujan*, 504 U.S. at 560 (quotation omitted). Porretto asserts the City enacted the ordinances that Porretto alleges have infringed on her rights. Dkt. 129 ¶¶ 141–44. Contrary to the City's arguments, Porretto's allegations involve more than the Park Board's denial of one vendor's permit. Dkt. 131 ¶¶ 25–26. Viewing Porretto's allegations in the light most favorable to her, the court finds Porretto has sufficiently pleaded a cognizable injury fairly traceable to the City. Accordingly, Porretto has standing to pursue her regulatory-takings claim against the City.

The City's ripeness arguments also fail. Ripeness is a prerequisite to subject-matter jurisdiction meant to ensure that "the harm asserted has matured sufficiently to warrant judicial intervention." *Contender Farms, L.L.P. v. U.S. Dep't of Agric.*, 779 F.3d 258, 267 (5th Cir. 2015). Generally, a case is ripe if the "remaining questions are purely legal ones" and unripe if "further factual development is required." *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 833 F.2d 583, 587 (5th Cir. 1987). For a regulatory-takings claim, the government must have reached a final decision, meaning there must be no question about how the regulations apply to the property in question. *Pakdel v. City of San Francisco*, 594 U.S. 474, 475 (2021).

Porretto's regulatory-takings claim against the City is ripe. First, the City incorrectly argues that Porretto has not exhausted administrative remedies regarding the single alleged denied permit. Dkt. 131 ¶¶ 29–32. Porretto does not allege injury arising from any individual permit's denial. Rather, she alleges injury arising from the City's ordinances themselves and how the City and the Park Board have implemented them. Dkt. 129 ¶¶ 141–57. Second, the City fails to identify any procedure Porretto must exhaust or decision the City must finalize regarding the ordinances at issue. Dkt. 131 ¶¶ 29–32.

Accordingly, the court has jurisdiction over the regulatory-takings claim as to the City. The court denies the City's Rule 12(b)(1) motion to dismiss as to Porretto's regulatory-takings claim.

### 2. The GLO

The GLO makes several arguments that the court lacks jurisdiction over Porretto's claims: (1) Porretto cannot establish standing; (2) sovereign immunity bars federal jurisdiction over Porretto's claims under the PRA, Texas Constitution, and U.S. Constitution; and (3) no ongoing violation exists that would strip immunity from Commissioner Buckingham via the *Ex Parte Young* exception. Dkt. 133. The court will address each in turn.

### a. Standing

The GLO argues that Porretto cannot establish standing because her allegations indicate that the alleged injury resulted from a third party, as opposed to the GLO. *Id.* at 22. This argument fails.

Porretto alleges there is a connection between the GLO's compliance requirements in the grant agreement—which the parties executed before the preliminary work at Stewart Beach began—and the preliminary work itself. Dkt. 129 ¶¶ 50–64, 71, 79–80, 442–47. Nowhere does Porretto allege that *only* the preliminary work caused the injury. In fact, she alleges the opposite: "[W]ork continues, is contingent upon the GLO funding and oversight, and the continuation of the work and resulting improvements to Stewart Beach will continue to effect takings of Porretto Beach Classic at minimum through flooding and erosion." *Id.* ¶ 501.

Accordingly, Porretto has standing for her takings claims against the GLO.

### b. Sovereign Immunity

The U.S. Constitution affords states two types of immunities. The first, Eleventh Amendment immunity, "applies to suits between a State and a citizen of another State." *See* U.S. CONST. amend. XI. The other, state sovereign immunity, "prohibits a broader range of suits against States."

10/36

*McWilliams v. City of Houston*, No. 21-20369, 2022 WL 17337820, at \*2 (5th Cir. Nov. 30, 2022). A state cannot be sued in federal court "unless the state consents to suit or Congress has clearly and validly abrogated the state's sovereign immunity." *U.S. Oil Recovery Site Potentially Responsible Parties Grp. v. R.R. Comm'n*, 898 F.3d 497, 501 (5th Cir. 2018).

Further, state sovereign immunity protects not only states from suit in federal court, but also "arms of the state." *Id.* The Fifth Circuit has established that the GLO is an arm of the state. *See id.* at 502. An arm of the state waives sovereign immunity only if it "voluntarily invokes federal court jurisdiction, or . . . makes a clear declaration that it intends to submit itself to federal court jurisdiction." *Meyers ex rel Benzing v. Texas*, 410 F.3d 236, 241 (5th Cir. 2005) (quotations omitted). A clear declaration that an arm of the state intends to submit itself to federal court "cannot be implied but must be unequivocally expressed." *United States v. King*, 395 U.S. 1, 4 (1969).

The GLO claims sovereign immunity from suit in federal court under the PRA, Texas Constitution, and U.S. Constitution. Dkt. 133 at 13–18. The court addresses each claim in turn.

### i. PRA

The GLO argues that Porretto's claims under the PRA are barred by Eleventh Amendment immunity from suit in federal court. *Id.* at 10–11.

Porretto responds that the Texas Legislature waived every facet of Texas's sovereign immunity, "without qualification," under the PRA. Dkt. 137 at 6.

As a preliminary matter, the PRA states that "[s]overeign immunity to suit and liability is waived and abolished to the extent of liability created by this chapter." Tex. Gov't. Code § 2007.004(a). To the extent that the PRA waives immunity from suit in *state* court, the court agrees.

The question here is whether the PRA waives immunity from suit in *federal* court. Porretto argues that it does for two reasons. First, Porretto avers that Eleventh Amendment immunity does not apply because the Eleventh Amendment is limited to prohibiting citizens of "another state" from suing a state in federal court. Dkt. 137 at 6. Because Porretto is a citizen of Texas, the argument goes, Eleventh Amendment immunity is not triggered by the facts of this case. *Id.* Second, Porretto argues that the Eleventh Amendment "is not the source of legal authority for the doctrine that precludes states from being sued in federal court." *Id.* Given that the PRA provides "an unqualified waiver of sovereign immunity," Porretto argues, the GLO's immunity from suit in federal court is waived. *Id.* at 8. The court disagrees with Porretto on both counts.

With regard to Porretto's citizenship, her argument ignores Supreme Court precedent. In short, Porretto's citizenship does not nullify the GLO's

12/36

sovereign immunity under the Eleventh Amendment. The Supreme Court has established that "[a]lthough the Eleventh Amendment is not literally applicable," when the plaintiff is a citizen of the defendant state, "it is established that an unconsenting State is immune from suits brought in federal courts by *her own citizens* as well as by citizens of another State." *Emps. of Dep't of Pub. Health & Welfare v. Dep't of Pub. Health & Welfare*, 411 U.S. 279, 280 (1973) (emphasis added); *see also Lapides v. Bd. of Regents*, 535 U.S. 613, 616 (2002) ("The Eleventh Amendment grants a State immunity from suit in federal court by citizens of other States, and by its own citizens as well." (citation omitted)). Thus, the fact that Porretto is a citizen of Texas does not bear on the GLO's Eleventh Amendment immunity.

Porretto's argument that the Eleventh Amendment is not the source of legal authority that precludes the GLO from being sued in federal court is also wrong. "Waiver of sovereign immunity in state courts *does not* waive Eleventh Amendment immunity from suit in federal court." *Canada Hockey, L.L.C. v. Texas A&M Univ. Athletic Dep't*, No. 20-20503, 2022 WL 445172, at *3 (5th Cir. 2022 Feb. 14, 2022) (emphasis added). Thus, even though the PRA waives the GLO's immunity in Texas state court, the GLO does not waive its Eleventh Amendment immunity by consenting to suit in Texas state courts. *See Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 305

(1990); *Guetersloh v. State of Texas*, 25 F.3d 1044, 1044 (5th Cir. 1994) ("Waiver of sovereign immunity in state courts does not waive Eleventh Amendment immunity from suit in federal court.").

Instead, a state must specifically "subject itself to suit in *federal* court." *Port Auth. Trans-Hudson Corp*, 495 U.S. at 306. A waiver may not be implied. Rather, a state must make a "clear declaration" that it intends to submit itself to suit in federal court. *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 676 (1999); *Shah v. Maple Energy Holdings, LLC*, No. A:23-cv-00819, 2024 WL 5185362, at *3 (S.D. Tex. Aug. 18, 2024) (finding that the Eleventh Amendment barred the plaintiff's federal and state takings claims in federal court because the PRA offered the plaintiff's a remedy in state court). Here, nothing in the PRA's language indicates a "clear declaration" that the GLO intends to submit itself to suit in federal court. Absent a clear waiver of immunity, the GLO is immune from suit in federal court for a PRA claim.

Accordingly, the court grants the GLO's Rule 12(b)(1) motion to dismiss as to Porretto's PRA claims.

### ii. Texas Constitution

Porretto asserts an inverse-condemnation claim against the GLO under Article 1, Section 17 of the Texas Constitution. Dkt. 129 ¶¶ 475–84. the

GLO does not dispute that Section 17 waives sovereign immunity for takings claims; it does, however, dispute the existence of the "clear declaration" waiving immunity from suit in federal court. Dkt. 133 at 14–15. Porretto appears to agree. Dkt. 137 at 15 ("Ms. Porretto has not averred, and never has contended 'Article I, Section 17 of the Texas Constitution waives sovereign immunity[]' against suit in federal court."). Thus, the dispute turns on Congressional abrogation.

Abrogation of state sovereign immunity requires "a clear legislative statement." *Seminole Tribe of Florida. v. Florida*, 517 U.S. 44, 55 (1996) (citation omitted). Porretto argues that supplemental jurisdiction—28 U.S.C. § 1367—accomplishes the necessary abrogation. Dkt. 137 at 16–17. The GLO disagrees. Dkt. 133 at 17. The court agrees with the GLO. The Supreme Court has established that § 1367(a) is "a general grant of jurisdiction" that is "insufficient to constitute a clear statement of an intent to abrogate state sovereign immunity." *Raygor v. Regents of Univ. of Minn.*, 534 U.S. 533, 541 (2002). Thus, "§ 1367(a)'s grant of jurisdiction does not extend to claims against nonconsenting state defendants." *Id.* at 542. Further, the Fifth Circuit in *Bay Point Properties, Inc. v. Mississippi Transportation Commission*, held that recognition of rights under the Takings Clause does not require "reconsideration of longstanding sovereign immunity principles

protecting states from suit in federal court." 937 F.3d 454, 456 (5th Cir. 2019).

Accordingly, because Texas has not waived its sovereign immunity for suits in federal court has and Congress has not abrogated it, the court cannot exercise jurisdiction over Porretto's inverse-condemnation claim against the GLO. The court dismisses this claim against the GLO for lack of jurisdiction.

### iii. U.S. Constitution

Porretto asserts federal-question jurisdiction under 28 U.S.C. § 1331 for her direct action for physical takings under the U.S. Constitution against the GLO. Dkt. 129¶¶ 29–30, 485–90.

Even though a "federal claim appears on the face of the complaint," federal-question jurisdiction does not exist when there is a "frivolous or insubstantial claim, i.e., a claim which has no plausible foundation or which is clearly foreclosed by a prior Supreme Court decision." *Young v. Hosemann*, 598 F.3d 184, 188 (5th Cir. 2010) (quotation omitted). Instead, federal-question jurisdiction exists when "a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 27–28 (1983).

The Supreme Court in *DeVillier v. Texas* held that "constitutional concerns do not arise when property owners have other ways to seek just compensation." 601 U.S. 285, 292 (2024). Because "Texas state law provides a cause of action by which property owners may seek just compensation against the State," the Court instructed the plaintiffs in *DeVillier* to "pursue their claims under the Takings Clause through the cause of action available under Texas law." *Id.* at 293. In other words, the Court found that the state court system is capable of handling cases in which property owners, like Porretto, advance a state cause of action to vindicate their rights under the U.S. Constitution. The same holds true here. Porretto can vindicate her rights under the Takings Clause through a state cause of action—like the state-law inverse-condemnation claim or under the PRA—in state court.

Accordingly, the court dismisses this claim as to the GLO for lack of jurisdiction.

### c. *Ex Parte Young*

The GLO argues that the *Ex Parte Young* exception does not apply here, leaving Commissioner Buckingham's sovereign immunity intact and depriving the court of jurisdiction. Dkt. 133 at 19–22. Porretto responds that *Ex Parte Young* applies due to the GLO's ongoing involvement. Dkt. 137 at 19.

Under *Ex Parte Young*, a plaintiff may bring suit against an individual state officer in her official capacity if the complaint alleges an ongoing violation of federal law and the plaintiff seeks prospective relief. *See Texas Democratic Party v. Abbott*, 961 F.3d 389, 400 (5th Cir. 2020) (quoting *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004)). Permissible suits under *Ex Parte Young* are confined to cases where the relief sought is "declaratory or injunctive in nature and *prospective* in effect." *Saltz v. Tennessee Dep't of Emp. Sec.*, 976 F.2d 966, 968 (5th Cir. 1992) (emphasis added). But the Supreme Court has "refused to extend the reasoning of *Young* . . . to claims for retrospective relief." *Green v. Mansour*, 474 U.S. 64, 68 (1985). In determining whether the *Ex Parte Young* exception applies to a lawsuit, "a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002).

The GLO argues that *Ex Parte Young* does not apply because there is no ongoing GLO act to be enjoined. Dkt. 133 at 19. In support, the GLO refers to the GOMESA grant agreement attached as Exhibit A to the GLO's motion. *Id.* at 20. Porretto, in turn, argues that fact disputes are not appropriate at this

stage. Dkt. 137 at 19. The court need not resolve this dispute because the court can make its jurisdictional determination on the face of Porretto's complaint.

As previously established, Porretto cannot maintain her claims against the GLO in federal court absent the state's consent. *Tindal v. Wesley*, 167 U.S. 204, 223 (1897). In addition, the injunctive relief that Porretto seeks is equivalent to just compensation. Porretto alleges that "in the event the GLO declines to rescind the GOMESA Grant Agreement, [she] alternatively seeks to recover just compensation for the flooding, erosion, and sand excavation at Porretto Beach Classic . . . as well as out[-]of[-]pocket expenses . . . that derive from the damage to Porretto Beach Classic and Porretto Beach generally." Dkt. 129 ¶ 453; *see also id.* ¶¶ 483–84, 493–94. *Ex Parte Young* does not apply in this situation. *See Papasan v. Allain*, 478 U.S. 265, 277–78 (1986) (finding that *Ex Parte Young* does not apply to "cases in which [the] relief is intended indirectly to encourage compliance with federal law through deterrence or directly to meet third-party interests such as compensation").

Further, the Supreme Court has established that, in determining whether *Ex Parte Young* applies, "a careful balancing and accommodation of state interests" is required. *Idaho v. Coeur d'Arlene Tribe of Idaho*, 521 U.S. 261, 278 (1997). In *Coeur d'Arlene*, a case that involved a land dispute between Idaho and an Indian tribe, the Court held that "there [was] neither warrant nor

necessity to adopt the *Young* device to provide an adequate judicial forum for resolving the dispute. . . . [Because] Idaho's courts are open to hear the case." *Id.* at 274. The same holds true here.

Accordingly, the GLO's motion to dismiss this claim under Rule 12(b)(1) is granted.

### B. Federal Takings Claims

Because the City and the Park Board do not differentiate between their arguments challenging Porretto's takings claims under § 1983 and the U.S. Constitution, the court does not differentiate its analysis either. Accordingly, the court's federal-takings analysis applies to Porretto's claims brought under both § 1983 and the Fifth Amendment.

### 1. Physical Takings

"The Fifth Amendment's guarantee that private property shall not be taken for a public use without just compensation was designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Armstrong v. United States*, 364 U.S. 40, 49 (1960). "When the government physically takes possession of an interest in property for some public purpose, it has a categorical duty to compensate the former owner." *Tahoe-*

*Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 535 U.S. 302, 322 (2002) (citation omitted).

Porretto has premised her physical-takings claims on flooding, erosion caused by the flooding, and sand excavation. Dkt. 129 ¶¶ 14–18. Because Porretto's physical-takings claims premised on flooding and erosion are intertwined, the court addresses them together as to the City and the Park Board. *See* Dkt. 129 ¶ 104 ("[R]esultant flooding from Stewart Beach continues to inundate Porretto Beach Classic and cause erosion."). The court addresses Porretto's physical-takings claim premised on sand excavation separately from flooding and erosion. As the City addresses only flooding in its motion, it has waived any challenge to Porretto's sand-excavation claim. Dkt. 131 ¶¶ 43–46. The Park Board, on the other hand, has made no such waiver as to the sand-excavation claim. Dkt 130 at 12–21.

### a. Flooding and Erosion

First, the parties dispute whether the flooding-and-erosion-based physical takings is "temporary"—as the City and Park Board argue—or "recurring"—as Porretto alleges. Dkts. 130 at 12–14; 131 ¶ 46; 134 at 11–24.

When a takings is "temporary," courts conduct a balancing test to evaluate the duration, causation, intent and foreseeability, character of the land, and level of interference. *Arkansas Game & Fish Comm'n v. United*

*States*, 568 U.S. 23, 38–39 (2012). In contrast, the "recurring" analysis poses just one question: Did the government effect a physical taking by occupying property? *See United States v. Cress*, 243 U.S. 316, 328 (1917); *see also Cedar Point Nursery v. Hassid*, 594 U.S. 139, 148 (2021) ("[T]he government . . . effects a physical taking when it occupies property—say, by recurring flooding. . . . These sorts of physical appropriations constitute the clearest sort of taking, and we assess them using a simple, *per se* rule: The government must pay for what it takes." (quotations and citations omitted)).

Porretto argues that the work conducted on Stewart Beach has led to recurring flooding and erosion events. In support, Porretto alleges that "the effects of the grading and elevation [on Stewart Beach] has inundated, and continues to routinely inundate Porretto Beach Classic with floodwater . . . and the flooding in turn causes erosion at Porretto Beach Classic." Dkt. 129 ¶ 14. She also alleges that the flooding-and-erosion injury "*continues* to occur since the City and Park Board began formal implementation of what they refer to as the 'Stewart Beach Parking Area Drainage Improvement Project.'" *Id.* ¶ 92. Further, Porretto documented specific dates when flooding occurred from 2022 through 2024 and alleged that the "flooding continues to this day after rain events, and water takes days to stop flowing from Stewart Beach to Porretto Beach Classic." *Id.*

¶¶ 104–05. For these reasons, the court finds Porretto has stated a claim for physical takings premised on recurring flooding and erosion. Because the court finds Porretto alleges a physical taking of the "recurring" variety, the court does not address the Park Board's "temporary" factors or the City's discussion of causation and intent. *See* Dkts. 130 at 14–20; 131 ¶¶ 45–46.

Accordingly, the Park Board's and the City's motions to dismiss the flooding-and-erosion-based physical-takings claim are denied.

### b. Sand Excavation

The Park Board argues that the statute of limitations precludes Porretto's sand-excavation takings claim arising under § 1983. Dkt. 130 at 20–21. Porretto responds that her sand-excavation claim is not time-barred. Dkt. 134 at 24–25.

Section 1983 claims borrow the relevant state's statute of limitations for personal injury, which is two years in Texas. *Redburn v. City of Victoria*, 898 F.3d 486, 496 (5th Cir. 2018). "Federal law governs when a cause of action under § 1983 accrues," and "the limitations period begins to run when the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured." *Id.* (quotations and citation omitted). This requires awareness of "*both* the existence of an injury and its cause." *Weeks v. Collier*, No. 22-10126, 2023 WL 7703823, at *2 (5th Cir.

Nov. 15, 2023) (citing *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 646 F.3d 185, 190 (5th Cir. 2011), *abrogated on other grounds by United States v. Wong*, 575 U.S. 402 (2015)).

Limitations do not bar Porretto's sand-excavation physical-takings claim. Accepting Porretto's allegations as true, the limitations period did not begin to run until June 2020, when Porretto first "learned the City and Park Board had entered the property during a 'bankruptcy stay' in order to excavate sand." Dkt. 129 ¶ 117. Because Porretto filed suit in June 2021, her sand-excavation takings claim falls within the two-year limitations period. Dkt. 1. Further, because the Park Board cites no authority to support its contention that Porretto was not the property owner before June 2020, the court does not consider this argument. Dkt. 130 at 20; *Broadleaf IT, LLC v. Walley*, No. 4:24-cv-00303, 2024 WL 4329145, at *3 (S.D. Tex. Aug. 17, 2024) ("A party may waive its arguments by failing to adequately brief its arguments, and support them with . . . applicable authority." (quotations and citation omitted)).

Accordingly, the Park Board's motion to dismiss the sand-excavation physical-takings claim is denied.

### 2. Regulatory Takings

The general rule regarding regulatory takings is that "while a property may be regulated to a certain extent, if regulation goes too far it will be

recognized as a taking." *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 415 (1922). Regulatory takings fall under two discrete categories. The first, a categorical taking, requires compensation "when a regulation deprives an owner of *all* economically beneficial uses of his land." *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1015 (1992). The second, a non-categorical taking, evaluates whether the regulation has gone "too far" by "engag[ing] in essentially ad hoc, factual inquiries." *Id.* (citation omitted).

The first dispute is whether Porretto has alleged a categorical or non-categorical taking. The Park Board and the City contend that because the complaint details existing economic opportunity, *i.e.*, charging for parking, concessions, and rentals, Porretto has not alleged a categorical taking. Dkts. 130 at 22–23; 131 ¶ 37; *see* Dkt. 129 ¶ 5. Porretto argues that "a categorical taking can occur even if economical beneficial uses *technically* remain, but are made *nonviable* by the regulatory interference." Dkt. 134 at 28 (citing *DM Arbor Court, Ltd. v. City of Houston*, 150 F.4th 418, 424–26 (5th Cir. 2025)).

This is a close call. In *DM Arbor*, the Fifth Circuit rejected the district court's finding that economic benefit remained when that benefit arose from some speculative future use or from a sale. *DM Arbor Ct., Ltd.*, 150 F.4th at 424–26. Porretto notes that although some economic opportunity remains at Porretto Beach, the way the Park Board enforces the City's ordinances

relative to her property makes those opportunities nonviable. Dkt. 134 at 28–30; *see* Dkt. 129 ¶¶ 151–56, 260–62. The difference here is Porretto's allegation that "these regulations *risk* economic harm," whereas in *DM Arbor* there was no dispute the property lost "most of its value" and sat "economically idle." Dkt. 129 ¶ 259 (emphasis added); *DM Arbor Ct., Ltd.,* 150 F.4th at 424 (citation omitted). Furthermore, the Supreme Court has held that a regulation does not qualify as a categorical taking even when the regulation takes 95% of a property's value. *Lucas v. South Carolina Coastal Council,* 505 U.S. 1003, 1020 n.8 (1992). Thus, because economic opportunity remains in some form and Porretto endures only the "risk of economic harm," the court finds Porretto does not allege a categorical taking.

Analyzing Porretto's alleged regulatory taking as non-categorical, the court's inquiry avoids "*per se* rules" and instead "examine[s] a number of factors, rather than a simple mathematically precise formula." *Tahoe-Sierra Pres. Council Inc. v. Tahoe Reg'l Plan. Agency,* 535 U.S. 302, 326 (2002). The most significant factors include "[t]he economic impact of the regulation on the claimant and, particularly, the extent to which the regulation has interfered with distinct investment-backed expectations[,] . . . [and] the character of the governmental action." *Penn Cent. Transp. Co. v. City of New York,* 438 U.S. 104, 124 (1978). Here, Porretto alleges economic harm,

Dkt. 129 ¶ 274–75, significant interference with the economic opportunities afforded by a unique, beachfront property, *id.* ¶¶ 142–44, 152, 155, 258, 260, and specific application to Porretto Beach in "a calculated attempt to deny Ms. Porretto the economic benefits" available in owning that property, *id.* ¶¶ 260–61. At the pleading stage, these allegations are enough to state a claim for a non-categorical regulatory taking.

Accordingly, the court denies the City's and the Park Board's motions to dismiss this claim.

### C. *Monell* Liability

To the extent Porretto alleges municipal liability under the *Monell* doctrine, the Park Board challenges this claim. Dkt. 130 at 27–30. To plead *Monell* liability requires alleging three elements: "a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)).

Regarding the physical-takings claim, the Park Board argues that (1) Porretto has not alleged a constitutional violation for which it could be liable, and (2) she has not identified a Park Board policy or custom causing the violation. Dkt. 130 at 27. The court disagrees and finds Porretto has alleged both. As the court analyzed above, Porretto states a claim for a

27/36

physical-takings violation. As to policy, the complaint discusses at length the activities implemented by the City and the Park Board to improve drainage at Stewart Beach. *See* Dkt. 129 ¶¶ 224–43. Further, as to the policymaker, Porretto points to specific sections of the Galveston City Code and the Texas Local Government Code granting the City and the Park Board policymaking authority over Stewart Beach. *Id.* ¶¶ 26, 233. These allegations are sufficient to state a claim for *Monell* liability.

The Park Board's regulatory-takings argument fares no better. As discussed above, Porretto pleads a regulatory-takings violation. As to policy, the complaint discusses formal ordinances enacted by the City and the manner in which the City and the Park Board apply the ordinances to Porretto Beach. *See id.* ¶¶ 142–44, 152, 155, 258, 260. Finally, as to the policymaker, Porretto avers three City ordinances as well as the City's delegation to the Park Board to implement them. *Id.* ¶ 265–68. These assertions are also sufficient.

Accordingly, Porretto has stated a claim for *Monell* liability against the City and the Park Board, and the Park Board's motion to dismiss this claim is denied.

### D. Inverse Condemnation

The Park Board and the City challenge Porretto's inverse-condemnation claim under the Texas Constitution. Dkts. 130 at 30–32; 131 ¶¶ 47–50. The Texas Constitution provides that "[n]o person's

property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person." TEX. CONST. art. I, § 17. "To plead inverse condemnation, a plaintiff must allege an intentional government act that resulted in the uncompensated taking of private property." *City of Houston v. Carlson*, 451 S.W.3d 828, 831 (Tex. 2014).

Both the Park Board and the City rely on the intent prong. Dkts. 130 at 31; 131 ¶¶ 48–50. To plead intent, a plaintiff must show the government entity "(1) knows that a specific act is causing identifiable harm; or (2) knows that the specific property damage is substantially certain to result from an authorized government action—that is, that the damage is necessarily an incident to, or necessarily a consequential result of the government's action." *City of Dallas v. Jennings*, 142 S.W.3d 310, 314 (Tex. 2004) (quotations and citation omitted).

The complaint alleges Porretto warned the Park Board and the City that flooding would occur when she objected to the project that has since allegedly damaged her property. Dkt. 129 ¶¶ 66–82, 93–103. Porretto also alleges she predicted the flooding based on "her review of a design document for the work at Stewart Beach," which contained "obvious features . . . that made flooding of Porretto Beach Classic highly probable." *Id.* ¶ 75. At the pleading stage, these assertions are enough to show that the Park Board and

the City knew flooding was "substantially certain to result" from the work on Stewart Beach. *Jennings*, 142 S.W.3d at 314.

Accordingly, the court denies the Park Board's and the City's motions to dismiss Porretto's inverse-condemnation claim.

### E. Tort Claims

Porretto raises a series of state-law tort claims against the Park Board and the City, including trespass, private nuisance, tortious interference with prospective business relations, and tortious interference with contract. Dkt. 129 ¶¶ 326–418. Under Texas law, a governmental unit is immune from tort liability unless the legislature has waived immunity. *Forgan v. Howard Cnty.*, 494 F.3d 518, 520 (5th Cir. 2007). The plaintiff has the burden of "alleging a valid waiver of immunity" to establish subject-matter jurisdiction over state-law claims brought against a governmental unit. *Chavez v. Alvarado*, 550 F. Supp. 3d 439, 453 (S.D. Tex. 2021).

Here, the Park Board and the City rely on the Texas Tort Claims Act ("TTCA") to claim immunity. Dkts. 130 at 32–34; 131 ¶¶ 51–60. Porretto argues that her claims are exempted from the TTCA because the Park Board's officials acted ultra vires and the Park Board and the City acted in their proprietary function. Dkts. 129 ¶¶ 329–35; 134 at 36–38. The court will address each argument in turn.

### 1. Ultra Vires

Porretto argues that officials, "like those who constitute the Park Board," acted ultra vires, exempting them from immunity for their acts. Dkts. 129 ¶ 334; 134 at 37 & n.6. "[W]hen a government officer acts ultra vires, immunity does not protect his acts. . . . That is because acts done without legal authority are not done as a branch of the state. . . . By definition, they fail to derive their authority from the root of our state's immunity." *Wasson Ints., Ltd. v. City of Jacksonville (Wasson I)*, 489 S.W.3d 427, 433 (Tex. 2016) (quotations and citation omitted). To trigger the ultra vires exception, the plaintiff "must not complain of a government officer's exercise of discretion, but rather must allege . . . that the officer acted without legal authority or failed to perform a purely ministerial act." *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009).

Porretto fails to do this. In her complaint, she does not allege that an officer acted "without legal authority or failed to perform a purely ministerial act." *Id.* Instead, Porretto cites *Wasson Interests* for the definition of the ultra vires doctrine, and in her response to the Park Board's and the City's motions to dismiss, she simply claims that the ultra vires doctrine applies to officials from the Park Board. *See* Dkts. 129 ¶ 334; 134 at 37. This is not enough to overcome immunity, even at the motion-to-dismiss stage.

Accordingly, Porretto's ultra vires argument fails.

## 2. Proprietary Function

Municipalities exercise their broad powers in two different roles: proprietary and governmental. *See Wasson Ints., Ltd. v. City of Jacksonville (Wasson II)*, 559 S.W.3d 142, 146 (Tex. 2018). Immunity protects a governmental unit from suits based on its performance of a governmental function, but not a proprietary function. *Id.* A proprietary function is a function performed by the city primarily "for the benefit only of those within its corporate limits, and not as an arm of the government, while its government functions are in the performance of purely governmental matters solely for the public benefit." *Tooke v. Mexia*, 197 S.W.3d 325, 343 (Tex. 2006). Further, proprietary functions "can be, and often are, provided by private persons." *City of League City v. Jimmy Changas, Inc.*, 670 S.W.3d 494, 499 (Tex. 2023) (quoting *Wasson II*, 559 S.W.3d at 147). Government functions, in contrast, involve the exercise of powers conferred by the state for the public benefit and are ordinarily performed by government entities. *See id.* This dichotomy applies both to tort and contract claims. *See Wasson I*, 489 S.W.3d 427, 439 (Tex. 2016).

Porretto avers that the Park Board and the City acted in their proprietary capacity because they "engaged in a persistent, and coordinated pattern of harassment and annoyance," which Porretto concludes "is

retributive, punitive, and intentionally disruptive in nature" and falls outside of their government functions. Dkt. 129 ¶ 331. These allegations are vague, conclusory, and argumentative.

Moreover, Porretto concedes that the GLO—a state agency—"approved, oversees, and is funding, the work at Stewart Beach," which weighs in favor of the Park Board and the City acting under their government function. Dkt. 129 ¶ 21; *see e.g.*, *Hays Street Bridge Restoration Grp. v. City of San Antonio*, 570 S.W.3d 697, 706 (Tex. 2019) (holding that the city acted through its governmental function because the state provided most of the necessary funding for the project). Further, the Park Board and the City's project to address "ponding" in Stewart Beach is ultimately within the Park Board's and the City's governmental functions. Dkt. 129 ¶¶ 11–12; *see, e.g.*, *City of Dallas v. Block*, No. 05-24-00463-cv, 2026 WL 1024878, at *8 (Tex. App.—Dallas Apr. 15, 2026) (holding that a city's flood-management actions "fall within its police powers, remain governmental in nature, and are protected by governmental immunity").

Accordingly, the Park Board and the City acted in their governmental capacity and are immune from Porretto's tort claims. Therefore, the court grants the Park Board's and the City's motions to dismiss Porretto's state-law tort claims.

**F. Punitive Damages**

Porretto seeks punitive damages against the Park Board and the City pursuant to her state-law tort claims, claims arising under 42 U.S.C. § 1983, and Fifth Amendment takings claims. Dkt. 129 ¶¶ 424–25.

First, because the court has dismissed Porretto's state-law tort claims, it need not address whether they provide for punitive damages.

Second, the Supreme Court has established that "a municipality is immune from punitive damages under 42 U.S.C. § 1983." *City of Newport v. Fact Concerts, Inc.* 453 U.S. 247, 271 (1981); *see also Robinson v. Hunt Cnty.*, 921 F.3d 440, 451 n.6 (5th Cir. 2019). To the extent that Porretto seeks to recover punitive damages against the Park Board's officials, *see* Dkts. 129 ¶ 421; 134 at 38, she cannot do so because she does not allege a § 1983 claim against the Park Board's officials in their individual capacity. *See* Dkt. 129 ¶¶ 174–278 (alleging a § 1983 claim against the City and the Park Board, generally, but not against the Park Board officers in their *individual capacity*); *see also Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002) (finding that a plaintiff states a § 1983 claim against a government official in his individual capacity by "alleg[ing] specific conduct giving rise to a constitutional violation").

Third, the Fifth Amendment requires only that the government "pay just compensation—normally measured by fair market value—whenever it takes

private property for public use"—not punitive damages. *United States v. 50 Acres of Land*, 469 U.S. 24, 25–26 (1984) (quotations omitted); U.S. CONST. amend. V ("[N]or shall private property be taken for public use, without just compensation"). Therefore, Porretto cannot recover punitive damages under her Fifth Amendment takings claim.

Accordingly, Porretto can recover punitive damages from neither the Park Board nor the City.

*                *                *

For the foregoing reasons, the court dismisses the following claims:

- All of Porretto's claims against the GLO;

- Porretto's *Ex Parte Young* claim against Commissioner Buckingham;

- Porretto's state-law tort claims against the Park Board and the City; and

- Porretto's request for punitive damages against the Park Board and the City.

The following claims survive:

- Porretto's physical-takings claim against the Park Board and the City under § 1983 and the U.S. Constitution;

- Porretto's regulatory-takings claim against the Park Board and the City under § 1983 and the U.S. Constitution;

- Porretto's municipal-liability claim under § 1983 against the Park Board and the City; and

- Porretto's inverse-condemnation claim under the Texas Constitution against the Park Board and the City.

Signed on Galveston Island this 5th day of June, 2026.

_____

JEFFREY VINCENT BROWN
UNITED STATES DISTRICT JUDGE